# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOGAN N. MILLS** | **CIVIL ACTION NO. 13-5477** |
| **VERSUS** | **SECTION "C"** |
| **CITY OF BOGALUSA, ET AL** | **MAGISTRATE (3)** |

## CONSOLIDATED WITH

| | |
|---|---|
| **DOUGLAS L. DENDINGER** | **CIVIL ACTION NO. 14-1837** |
| **VERSUS** | **SECTION "C"** |
| **CITY OF BOGALUSA, ET AL** | **MAGISTRATE (3)** |

*<u>This Pleading Pertains to No. 14-1837</u>*

## <u>MEMORANDUM OF JULIE M. KNIGHT, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56(B)</u>

This Memorandum is submitted on behalf of defendant, Julie M. Knight ("Knight"), individually, and in her capacity as a former Assistant District Attorney (an "ADA") for the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana, in support of her Motion for Summary Judgment filed together herewith, wherein Knight seeks summary judgment in her favor, and against plaintiff, Douglas L. Dendinger ("Plaintiff" or "Dendinger"), dismissing, with prejudice, all remaining causes of action set forth against her in the Complaint filed herein by Dendinger, Docket No. 14-CA-1837 on the docket of this Court, ("Dendinger's Complaint").

## STATEMENT OF THE CASE

Dendinger's Complaint (Rec. Doc. # 1 ), as it relates to Knight, both individually and in her capacity as a former ADA, stems from the arrest and prosecution of Dendinger by the Washington Parish Sheriff's Office and the Washington Parish District Attorney's Office, in conjunction with an alleged battery on a former Bogalusa police officer and then current Bogalusa reserve officer, Chad Cassard (the "Incident") on the evening of August 20, 2012. The Incident is alleged to have occurred on the steps of the Washington Parish Courthouse, which is located in Franklinton, Louisiana, immediately after Dendinger's cousin, Logan Nestor Mills ("Mills"), was convicted of armed robbery, illegal use of a firearm in the commission of an armed robbery, aggravated obstruction of a highway of commerce, and two (2) counts of attempted first degree murder. Mills was remanded to jail with no bond to await sentencing. Mills was subsequently sentenced to 65 years as an habitual offender. Knight, who was one of the ADAs who prosecuted Mills, together with several other individuals, who were also named as defendants by Dendinger, was present at the time of the Incident and witnessed Dendinger's conduct.

At the time of the Incident, Dendinger alleges that he was attempting to serve Officer Cassard with process in conjunction with a federal lawsuit that Mills had filed against Officer Cassard and others (U.S.D.C. Eastern District of Louisiana Docket No. No. 13-5477, entitled *Logan N. Mills v. City of Bogalusa, et al.* ( "Mills' Complaint") accusing them of, among

other things, violating his civil rights in conjunction with his apprehension and arrest.  Knight was **NOT** named as a defendant in Mills' Complaint.

Dendinger was ultimately arrested on the night of August 20, 2012 – the night of the Incident and Mills' conviction.  He was charged with violations of the Louisiana criminal laws, specifically, LSA-R.S. 14:130.1 (obstruction of justice), LSA-R.S. 14:129.1 (intimidation of a witness); and LSA-R.S. 14:34.2 (battery on a police officer).   Dendinger filed the instant Complaint on August 12, 2014 against Knight and others, asserting federal and state law claims stemming from his arrest and  subsequent prosecution.

As to Knight, Dendinger asserted federal claims under 42 U.S.C. § 1983, including claims for false arrest and false imprisonment, as well as state law tort claims for malicious prosecution and abuse of process. By Order and Reasons filed on July 13, 2015 (Rec. Doc. #67), this Court granted Knight's Motion to Dismiss Dendinger's Section 1983 federal law claims for false arrest and false imprisonment.  The Court denied Knight's Motion to Dismiss Dendinger's state law tort claims of malicious prosecution and abuse of process.  Those are now the only claims by Dendinger that remain pending against Knight and it is to those claims that the instant Motion for Summary Judgment is directed.

Attached to Knight's Motion for Summary Judgment are affidavits of Knight (Ex. 1), Bogalusa Police Officer Kendall Bullen (Ex. 2), Lewis Murray, the Supervisor of the Washington Parish District Attorney's Office (Ex. 3), Knight's husband, Scott (Ex. 4), Washington Parish ADA, Leigh Ann Wall, (Ex. 5), and excerpts of the Deposition of

Douglas Dendinger, taken on October 27, 2015 (Ex. 6), all of which, together with the entire record of this proceeding, demonstrate that there are no material facts in dispute with respect to Dendinger's state law claims against her and that she is entitled to judgment dismissing Dendiger's remaining claims, as a matter of law.

## STATEMENT OF MATERIAL FACTS THAT ARE BEYOND DISPUTE

The undisputed and undisputable material facts relevant to this Motion are all set forth in the Affidavits Knight ("Knight Aff."), together with the exhibits thereto, Officer Bullen ("Bullen Aff."), Mr. Murray ("Murray Aff."),  Scott Knight ("S. Knight Aff."), Ms. Wall ("Wall Affidavit") and the Dendinger deposition ("Dendinger Depo."), taken on October 27, 2015, as well as the entire record of this proceeding.  They are as follows:

Knight worked as an ADA in St. Tammany Parish, Louisiana for more than 18 years and was so employed at the time of the Incident and at all other times material.  Knight Aff. ¶ 3.  Washington and St. Tammany Parishes are both in the 22nd Judicial District and a single District Attorney serves both parishes.  At all times material, the District Attorney for Washington and St. Tammany Parishes was Walter Reed.  *Id.,* ¶ 4.

Although Knight was assigned to the St. Tammany Parish District Attorney's Office, in 2011, District Attorney Reed assigned Knight to assist ADA, Leigh Ann Wall, of the Washington Parish District Attorney's Office, in the prosecution of Mills.  Mills was charged with several violations of the Louisiana criminal laws as a result of incidents which occurred on April 20, 2011, when Mills and an accomplice robbed the Capital One Bank in Bogalusa,

Louisiana, at gunpoint, thereafter fleeing in a stolen vehicle and leading police on a high-speed chase during which gunfire was exchanged between Mills and police, and which ended with the apprehension of Mills and his accomplice near just over the Mississippi state line. Ms. Wall was the lead prosecutor in the Mills prosecution, which occurred in Washington Parish. *Id.,* ¶ 5.

 Mills' trial occurred in August, 2012 in the Washington Parish Courthouse, which is located in Franklinton, Louisiana. On the evening of August 20, 2012, after some seven (7) days of testimony, a twelve-person jury convicted Mills of armed robbery, illegal use of a firearm in committing an armed robbery, aggravated obstruction of a highway of commerce and two (2) counts of attempted first degree murder. *Id.,* ¶ 6.

During the preparation for Mills' trial, it became generally known that Mills had filed a federal civil lawsuit against three (3) of the Bogalusa police officers involved in his apprehension – the very three (3) officers he was charged with attempting to kill – and others, accusing them, among other things, of violating his civil rights in conjunction with his apprehension and arrest. Knight was not named as a defendant in Mills' civil lawsuit and had no particular knowledge of the specific allegations leveled at the defendants in that lawsuit by Mills. *Id.,* ¶ 7.

On August 16, 2012, with the Mills' trial well underway and the witnesses having been sequestered, Mills' mother, the sister of Dendinger, approached a witness, Officer Scott Seals of the Bogalusa police department – one of the officers Mills was accused of

attempting to murder – inside the courthouse where the trial was taking place, and handed him an envelope of papers.   Without opening the envelope, Officer Seals brought the envelope of papers to Ms. Wall and informed her of the incident. Ms. Wall reported the incident regarding Ms. Mills' contact with Officer Seals to the presiding judge, who then issued a protective order preventing any further contact between the defendant and anyone acting on his behalf and any sequestered witness.  *Id.,* ¶ 8 and Exhibit A thereto.   Prior to that time, Knight had never seen the complaint in Mills' suit.  She did not read the complaint at that time or at any other, until after she was served with Dendinger's Complaint in the instant action.  *Id.*

Knight's perception and observation of the atmosphere in the courtroom surrounding the rendition of the jury's verdict against Mills is that it was extremely tense, volatile and highly-charged. *Id.,* ¶ 9.  Following the rendition of the jury's verdict, the polling of the jury and the completion of some housekeeping issues, Mills' request for bond was denied and he was remanded to prison to await sentencing. The court adjourned shortly after 7:15 p.m. on August 20, 2012. *Id.,* ¶ 10 and Exhibit B thereto.

Mills' family members left the courtroom soon after court was adjourned. Shortly thereafter, Knight and several other individuals, including Officer Chad Cassard, were leaving the courthouse together.  At the time, dusk had begun to settle.  The weather conditions were very cloudy and the ground was wet, as it had been raining.   Knight was behind Officer Cassard, but still inside the glass doors to the courthouse, when she observed

an unidentified man in shorts approach Officer Cassard with his hands raised.  Knight observed what she perceived to be  the unidentified man having hit Officer Cassard in the chest with an envelope that the unidentified man was holding in his open hand.  Knight heard the unidentified man say words to the effect of "served, brother,"  simultaneously with the envelope hitting Officer Cassard's chest, and then, saw the man turn and leave.   *Id.,* ¶ 11.

The man who approached Officer Cassard did not identify himself and did not give any indication that he was there to serve process on Officer Cassard.  *Id.,* ¶ 12.  Knight was startled and frightened by the encounter between the unidentified man and Officer Cassard, particularly in light of the fact that it came at the conclusion of a very high-profile prosecution, in which the courtroom atmosphere was, as stated above, extremely highly charged and further, after there had been a prior encounter involving Mills' mother, the sister of Dendinger, and one of the victims/witnesses in the case.  In the ensuing chaos,  Knight and the others who were near Officer Cassard at the time of the Incident were  instructed by a Washington Parish Sheriff's deputy to proceed to the Sheriff's Office/Jail to provide  written statements setting out what they had witnessed.  *Id.,* ¶ 13.

 At that point, Knight phoned her husband to let him know that she would be delayed coming home because she had to go and provide a witness statement.  She then proceeded to the Washington Parish Sheriff's Office, as instructed, and wrote her  witness statement (hereinafter, her "Written Witness Statement").  *Id.,* ¶ 14.  S. Knight Aff., ¶ 6.  According to Dendinger's testimony, the Incident occurred at approximately 7:30 p.m. on the night of

August 20, 2012.[1]  Knight's Written Witness Statement, a true and correct copy of which is attached as Exhibit C to her Affidavit, is dated 8/20/12 at 8:00 p.m.

Prior to giving her Written Witness Statement, Knight did not discuss the Incident with any of the other witnesses to the Incident.  Nor did Knight coordinate, or attempt to coordinate her Written Witness Statement with that of any other witness to the Incident. *Knight Aff.,* ¶s 14, 15.  Knight did not discuss the outcome of the Mills trial, the Incident or her Written Witness Statement with District Attorney Reed or anyone in District Attorney Reed's office, either prior to, or after, giving her Written Witness Statement, right up to the time she was served with Dendinger's Complaint. *Id.,* ¶ 15.  Knight also did not provide any information whatsoever – other than her Written  Witness Statement – to any law enforcement official, including but not limited to, ADA Wall, District Attorney Reed, any member of the Bogalusa Police Department, the Washington Parish Sheriff or any Washington Parish Sheriff's Deputy, or anyone else, either on the night of the Incident or thereafter, regarding any crimes with which she thought the unidentified man could be charged.  Nor did Knight provide any other advice to anyone regarding how to proceed in the matter. *Id.,* at 18.  Dendinger has not produced and cannot produce one shred of evidence to the contrary, other than his uninformed "belief."[2]

---

[1]Exhibit 6, page 4, Dendinger Depo., Vol. I, p. 65:0155:4-10.

[2]Exhibit 6, pages 11 and 12, Dendinger Depo., *e.g.,* Vol. II, p. 85:317:5-20, p.86:317:21 - 23.

The *only* action ever taken by Knight in regards to the unidentified man whom she now knows to be Dendinger, was to provide her Written Witness Statement, as instructed by the Washington Parish Sheriff's Deputy. *Id.* She did not even identify Dendinger in her Written Witness Statement because she had no idea who he was. Knight maintains that her Written Witness Statement was a true and accurate account of her observation and impressions of the Incident as she had observed and perceived it at the time. *Id.,* ¶s 14, 25.

Appearing in the record of these proceedings at Case: 2-13-CV-05477-HGB-DEK-DOC 24-3, Filed 7/6/15, at pages 1-8 of 8, are the Arrest Records relating to Dendinger's arrest on the night in question. They show that Washington Parish Sheriff's Deputy Vallaire arrived at the Washington Parish Jail with Dendinger shortly before 8:50 p.m. that night. [3]

Immediately after Knight completed her Written Witness Statement, she left the Washington Parish Sheriff's Office/Jail. Officer Bullen walked her to her car with his umbrella because it was raining and Knight did not have an umbrella. Knight then got in her car and drove to her home in Madisonville, a distance of approximately forth (40) miles. *Id.,* ¶ 14*;* Bullen Aff., ¶ 2. Knight arrived her home at approximately 9:00 p.m. Knight Aff., ¶ 14; S. Knight Aff., ¶ 7. Thus, Knight was not present at the Washington Parish Sheriff's Office when Dendinger was arrested or when he was brought into the Washington Parish Jail for booking, but was, instead, either already at home or on her way home, and she flatly

---

[3] Exhibit 6, page 14, Dendinger Depo., Vol. II, p. 104:337;19-24, where he testified that he was arrested at approximately 8:30 and got to the jail at approximately 9:00.

denies that she participated in any way, shape, or form in any taunting of him at the jail or anywhere else.  Knight Aff. ¶s 14, 19; Bullen Aff., ¶ 4; S. Knight Aff., ¶ 7; Wall Affidavit.

At the time of the Incident and the giving of her Written Witness Statement, Knight had never seen Dendinger, did not know who Dendinger was, and did not know that he was related to Mills in any way.  Knight Aff. ¶s 25, 26.  Knight did not learn of Dendinger's identity or that he was related to Mills until she was served with Dendinger's Complaint naming her as a defendant.  *Id.*

Knight did not participate in any manner whatsoever in the decision to charge or to prosecute Dendinger.  *Id.*, ¶ 21; Murray Aff., ¶s 2, 3 and 4; Wall Affidavit.  She did not contact, nor was she contacted by, anyone in the District Attorney's Office when Dendinger's case  was screened, nor did she participate in the screening of the case.  Knight Aff., ¶ 20; Murray Aff. ¶s 2, 3 and 4; Wall Affidavit.  Knight was not contacted by anyone in the District Attorney's Office or the Washington Parish Sheriff's Office regarding Dendinger's prosecution, nor did she ever discuss Dendinger's prosecution with anyone. Knight Aff. ¶ 22; Murray Aff. ¶s 2, 3 and 4; Wall Affidavit.  She did not appear in court as a prosecutor or as a witness or at all in connection with Dendinger's prosecution.  Knight Aff., ¶ 23; Murray Aff., ¶s 2, 3 and 4; Wall Affidavit.  In fact, the sole and only action Knight ever took relative to Dendinger was to give her Written Statement.  Knight Aff., ¶ 27.

Officer Bullen's Affidavit, Exhibit 2 to the Motion for Summary Judgment, fully corroborates that Knight was not present when Dendinger was arrested or booked.  Officer

Bullen's Affidavit attests to the facts that: (i)  he walked Knight to her car just after she finished her Written Witness Statement; (ii)  Knight was the first of all of the other witnesses to the Incident to leave the Sheriff's Office on that night; and, (iii)  Knight was not present at the Sheriff's Office/Jail later than evening when Dendinger was brought in for booking.. Bullen Aff.  ¶s 2, 3 and 4.  Ms. Wall's Affidavit, Exhibit 5 to the Motion for Summary Judgment, also attests to the fact that Knight was not present when Dendinger was brought into the Washington Parish Jail for booking.  Dendinger has not produced one iota of evidence proving that Knight was at the Washington Parish Jail when he was brought in for booking and/or that she taunted him in any way, other than his "belief" that she was there.[4] Nor can he produce any such evidence.

The Affidavit of Lewis Murray, Supervisor for the Washington Parish District Attorney's Office, attached to the Motion for Summary Judgment as Exhibit 3, corroborates that Knight did not participate in Dendinger's prosecution.  Mr. Murray's Affidavit attests to the facts that: (i) Knight never contacted him regarding her Written Witness Statement; (ii) Knight had no part in any discussions, plans to prosecute Dendinger or the screening of the charges filed against him; and (iii) Knight did not have access to Dendinger's case file and did not review anything regarding Dendinger's case while it was being prosecuted by the

---

[4] Exhibit 6, page 13, Dendinger Depo. Vol. II, p. 103 336:17-25.  Dendinger can produce no other witness  who has testified or will testify that Knight was present when he was brought to the Washington Parish Jail for booking.   Dendinger just "believes," as a general proposition, that everyone who witnessed the Incident and gave a written statement was present and "taunting" him when he was brought into the jail.  He is, quite simply, mistaken, as Knight was not there.

Washington Parish District Attorney's Office.    Murray Aff., ¶s 2, 3 and 4.  Ms. Wall's Affidavit also corroborates that Knight had no role in the decision to arrest or charge Dendinger and did not participate in his prosecution.

*Dendinger's own testimony* corroborates that Knight did not participate in his prosecution.  Dendinger testified that: (i) he has never met Knight; (ii) he has not ever seen Knight in the courtroom; (iii) he has no knowledge that Knight had anything to do with an attachment being issued for him for non-appearance at an arraignment; (iv) he has no knowledge of Knight giving any advice to the District Attorney, the Bogalusa Police or Washington Parish Sheriff's Deputies that caused his arrest; and, (v) to his knowledge, Knight's only role in his arrest and prosecution was the giving of her Written Witness Statement.[5]

Based on the foregoing material facts that are beyond dispute, Knight is entitled to judgment as a matter of law on Dendinger's claims of abuse of process and malicious prosecution for all of the reasons set forth below.

## LAW AND ARGUMENT

### A.    Standard for Granting Summary Judgment

Federal Rule of Civil Procedure, Rule 56, authorizes the court to grant a motion for summary judgment where there is no genuine dispute as to any material fact and the movant

---

[5]  Exhibit 6, page 15 - 17, Dendinger Depo., Vol. II, p. 103:336:1-5; p. 122:356:21-25, 123:357:19; p. 123:358:1-8, 124:359:1-4.

in entitled to judgment of matter of law.  In *Hahn v. City of Kenner,* 984 F. Supp. 436, 439,

the Court set forth the standards for granting a summary judgment as follows:

> Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law...'Rule 56 mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial.'...If the movant demonstrates the absence of a genuine issue of material fact, 'the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.'... '[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'

Quoting*, Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

"The burden of demonstrating the existence of a genuine issue is not met by

'metaphysical doubt' or 'unsubstantiated assertions.'" *Id.,* citing *Little v. Liquid Air Corp.,*

37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio,* 475

U.S. 574, 586 (1986).)   Further, although Rule 56 requires the Court to resolve factual

disputes in favor of the nonmoving party, this rule applies "'only when there is an actual

controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Id.*

If the nonmoving party does not come forward with proof of material facts as to which there

is a genuine dispute, the Court is not required to "'assume that the nonmoving party could

or would prove the necessary facts.'" *Id.*  "If the record taken as a whole could not lead a

rational trier of fact to find for the nonmoving party, no genuine issue exists for trial." *Id.,* quoting *Matsushita,* 475 U.S. at 588.

Thus, when a motion for summary judgment is properly supported, it is incumbent on the opposing party to go beyond pleadings and, through affidavit or some other allowable, means designate specific facts showing that there is a genuine issue for trial. Conclusionary allegations and unsubstantiated assertions unsupported by any specific fact or evidence are insufficient to defeat a properly supported motion for summary judgment. *See Whitt v. Stephens County*, 529 F.3d 278, 283 (5th Cir. 2008).

It is against this backdrop that this Court must determine whether there is any genuine issue of material fact remaining for trial as to Dendinger's state law claims against Knight for malicious prosecution and/or abuse of process.

### B.   Knight is Entitled to Judgment as a Matter of Law on Dendinger's Claim of Malicious Prosecution

In order to prevail on a claim for malicious prosecution under Louisiana law, a plaintiff must prove the following six elements:

1.   The commencement or continuance of an original criminal or civil judicial proceeding [by the present defendant].

2.   Its legal causation by the present defendant [*i.e.,* Knight] against plaintiff.

3.   Its bona fide termination in favor of present plaintiff.

4.   The absence of probable cause for such proceeding.

14

5.      The presence of malice therein.

6.      Damage conforming to legal standards resulting to plaintiff.

*Aucoin v. Aetna Casualty & Surety Co.,* 520 So.2d 795, 797.  *See* also this Court's Rec. Doc. # 67, p. 13 and *Miller v. East Baton Rouge Parish Sheriff's Office,* 511 So. 2nd Cir. 446, 452 (La. 1987).

"Louisiana courts do not favor actions for malicious prosecution and for such an action to exist, 'a clear case must be established where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent.'" *Aucoin,* 520 So.2d at 797-98, quoting *Johnson v. Pearce,* 313 So.2d 812, 816 (La. 1975).

Here, it is true that a criminal action was commenced against Dendinger in Washington Parish and  that the action was ultimately terminated in favor of Dendinger, giving rise to the presumption that probable cause for the proceeding was lacking.  Those facts, however, do not prevent summary judgment in favor of Knight, for Dendinger cannot prove that Knight was the ***legal cause*** of the prosecution being instituted against Dendinger.

Officer Cassard, not Knight, was the complainant against Dendinger.  For her part, Knight did not consult with, provide any advice or information (other than her Written Witness Statement) to anyone – not District Attorney Reed, Ms. Wall, the Washington Parish Sheriff or any of his deputies, any member of the Bogalusa police department, or anyone else regarding whether there was probable cause to arrest Dendinger or what charges might be brought against Dendinger.  Those decisions were, apparently, made after Knight had left

Franklinton and was well on her way home to Madisonville.  Indeed, Dendinger's arrest

documents that appear in the record of these proceedings clearly indicate that it was Ms. Wall

who advised the Washington Parish Sheriff's Office regarding Dendinger's arrest, not

Knight.

At the time Knight left Franklinton, shortly after 8:00 p.m. on August 20, 2012, she

was not even aware of Dendinger's identity. Knight was not present at the Washington Parish

Jail when Dendinger was brought in for booking and did not identify him at that time as the

man that she had seen interacting with Officer Cassard.  All of the foregoing facts are borne

out by the Affidavits  submitted in support of this Motion for  Summary Judgment, all as

discussed and annotated above, and Dendinger cannot produce one shred of evidence to

contradict these facts because none exists.

Nor, once the decision was made to arrest and charge Dendinger, did Knight have any

connection whatsoever with his prosecution.  She did not even know that Dendinger was

*being prosecuted.*  At the point that Dendinger was charged by bill of information, Knight

still did not even know who he was.  She did not participate in the screening of his case.  She

never appeared in any court proceeding involving Dendinger.  She was not present at any

arraignment of Dendinger and did not participate in any manner in having a bench warrant

or an attachment issued for him.  In sum, Knight had absolutely no involvement in, or

connection with, Dendinger's prosecution either as an ADA or as a witness.  Again,

Dendinger cannot produce any evidence to the contrary, because none exists.  Dendinger

himself admitted in his deposition that he did not know Knight and that he had *never seen her in the courtroom* and that he has no evidence that Knight advised anyone in conjunction with his prosecution, that she discussed his prosecution with anyone, that she had any participation whatsoever in his prosecution other than the giving of her Written Witness Statement.[6]

Knight's was not the only witness statement provided that evening. The record in this case shows that, in addition to Knight, Officer Cassard and five (5) other individuals who were present at the time of the Incident gave witness statements, including Ms. Wall, Pamela Legendre, Officer Bullen, Officer Joe Culpepper and Officer Scott Seals.

Officer Cassard was the complainant against Dendinger, not Knight. Knight played no role in Dendinger's arrest and prosecution whatsoever other than as a witness to the Incident who provided her Written Witness Statement, truthfully and accurately recording the events surrounding the Incident as she observed and perceived them.

Whether the Sheriff's investigation of the Incident thereafter was sufficient or lacking, Knight does not know. Knight has no independent personal knowledge of anything that occurred with respect to Dendinger's arrest and prosecution after she gave her Written Witness Statement and left Franklinton at approximately 8:00 p.m. on August 20, 2012.

Knight's Written Witness Statement was not produced in collusion with any other witness. She did not discuss her impressions of the Incident with any other witness prior to

---

[6] Exhibit 6, page 15 -17, Dendinger Depo., Vol. II, p. 103:336:1-5; p. 122:356:21-25, 123:357:19; p. 123:358:1-8, 124:359:1-4.

giving her Written Witness Statement.  She did not coordinate or discuss her Written Witness Statement with any other witness, nor with District Attorney Reed, nor any other law enforcement official.  Knight did not identify Dendinger in her Written Witness Statement as the person that she had seen approach Officer Cassard and put an envelope into the officer's chest.  The individual involved in the Incident with Officer Cassard was unknown to her.

The ***only*** thing that Knight relative to Dendinger's arrest and prosectuion was to write a witness statement – at request of the courthouse bailiff and a Washington Parish Sheriff's Deputy truthfully and honestly relating her present sense impression of the Incident.  Thus, Knight was not, and cannot have been, the ***legal cause*** of Dendinger's arrest and prosecution. See *Banks v. Brookshire Brothers, Inc.,*  93-1616 (6/1/94), 640 So.2d 680.[7]   Dendinger has not produced and cannot produce, any evidence to the contrary.

Nor can Dendinger produce any evidence to support the requirement malice as to Knight.  "Malice exists when a charge is made with knowledge that it is false or with reckless disregard for the truth."  *Aucoin, supra,* 520 So.2d at 798, citing *Stark v. Eunice Superette, Inc.,* 457 So.2d 291, 294-95 (La. App. 3rd Cir.), *writ denied,* 461 So.2d 316 (La. 1984).  At the time of the Incident and the giving of her Written Witness Statement, Knight did not

---

[7] Knight submits that she is at least similarly situated to Pamela Legendre, who provided a witness statement, but had no further role in the arrest or prosecution of Dendinger.  Dendinger agreed to dismiss his claims against Ms. Legendre on that basis.  See Rec. Doc. # 67.  Dendinger's claims against Knight should be dismissed as well on the basis that she was a mere witness.

know Dendinger and  did not know that he was related to Mills.  She did not know that Dendinger was the individual involved in the Incident with Officer Cassard and, in fact, did not have any idea of the identity of the individual who was involved in the Incident with Officer Cassard.  Thus, she cannot have harbored malice against him at the time she gave her Written Statement.

Moreover, Knight's Written Witness Statement was, as she has attested, a true and correct rendition of her perception and observation of the Incident at the time it occurred.  Her perceptions cannot be false or malicious.  Her involvement with Dendinger's arrest and prosecution ended when she turned her Written Witness Statement over to the Sheriff's deputy.  Knight had no knowledge of anything that occurred with regard to the unidentified man that she had observed approach Officer Cassard thereafter.  She did not know that the unidentified man was Dendinger until he filed and served her with the instant complaint.

Knight did not act out of malice in preparing and submitting her Written Witness Statement and Dendinger has not produced any evidence that would support a conclusion that she did.  Nor can he, since no such evidence exists.

On the basis of the foregoing, Knight submits that there is no genuine issue of material fact in dispute as to Dendinger's clam against her for malicious prosecution.  Accordingly, Knight is entitled to judgment as a matter of law dismissing that claim.

**C.**   **Knight is Entitled to Judgment as a Matter of Law on Dendinger's Claim of Abuse of Process**

To state a claim for abuse of process in this case, Dendinger must prove:

19

1. The existence of an ulterior purpose; and

2. A willful act in the use of the process not proper in the regular prosecution of the proceeding.

See *Waguespack, Seago, and Carmichael v. Lincoln*, 768 So.2nd 287, 290-291, La App. 1st Cir. 9/22/2000.

"The first element, that of ulterior purpose, is similar to the concept of 'malice,' but is a ***much more demanding test which would not be met by a showing of lack of knowledge or other technical types of malice, but which is only met when the officer is acting for a specific purpose not authorized by law.***" *Taylor v. State,* 92-230 (3/31/93), 617 So.2d 1198, 1205. If, as demonstrated above, Dendinger is unable to offer any evidence of malice sufficient to make out his claim of malicious prosecution, then he clearly cannot meet the higher standard of "ulterior purpose" required to prove a claim of abuse of process. Dendinger would have to show that Knight engaged in an intentional act that she for a specific purpose not authorized by law. This he has not and cannot do.

Knight did not know Dendinger at the time she gave her Written Witness Statement which, as has already been made abundantly clear, is her sole and only involvement in anything to do with Dendinger. She was not the complainant against Dendinger. She did not ever make any identification of Dendinger. She did not participate in any fashion in any of the decisions that were made relative to his arrest and prosecution. She did not appear in court as a prosecutor, witness or otherwise in conjunction with Dendinger's prosecution.

20

Knight only became aware of Dendinger and the fact that he was involved in the Incident when he filed and served her with the instant complaint.

Knight was one of seven (7) witnesses to the Incident who provided witness statements.  Her involvement began and ended there.  She did not institute any process against Dendinger and did not abuse any process involving Dendinger.  The only conceivable "act in the use of process" on the part of Knight is her Written Witness Statement, which, as she has attested, was a true and accurate account of the events as she perceived them and which did not even identify Dendinger.

In order to succeed on a claim for abuse of process, Dendinger must show more than simply that Knight provided a witness statement.  A furtherance of action in legal process has to occur.   There simply is none here on Knight's part.  The evidence shows if anyone advised the Washington Parish Sheriff's Office regarding Dendinger's arrest, it was Ms. Wall, and she did not do so based on Knight's statement.  Mr. Murray screened Dendinger's case, not Knight.  Ms. Wall prosecuted Dendinger, not Knight, and she did not do so based on Knight's statement. (Wall Aff., Exhibit 5)  The Affidavits clearly demonstrate that Knight left the Washington Parish Sheriff's Office immediately after writing a brief witness statement and took no further action what so ever in this matter.

Dendinger does not have one iota of evidence that would demonstrate that Knight acted with an ulterior motive in giving her Written Witness Statement or that she took any other action in conjunction with any process against him.  Accordingly, Dendinger cannot

demonstrate that there is any genuine issue of material fact in dispute as to his claim of abuse of process against Knight and Knight submits that she is entitled to judgment dismissing that claim, as a matter of law.

## **CONCLUSION**

Counsel for Mr. Dendinger should have voluntarily dismissed, particularly at this juncture, Ms. Julie Knight from the remaining State actions that are preferred her, individually and in her capacity as an Assistant District Attorney. Dendinger has not and cannot produce anything in contravention of the affidavits that are submitted in conjunction herewith, and this court should feel compelled to expeditiously dismiss the remaining claims as they relate to Ms. Julie Knight, both individually and in her capacity as an Assistant District Attorney, as they are devoid of all merit, not supported by one scintilla of evidence, and have ultimately served a purpose, which was to harass any individual who was involved in the rightful prosecution of Logan Mills, the nephew of Douglas Dendinger.

Respectfully submitted,


By:  s/David R. Paddison

DAVID R. PADDISON, Bar No. 7568
*Counsel for Julie Knight*
600 Covington Center
Covington, LA 70433
Telephone: (985) 893-2280
Facsimile: (985) 893-2511
Email: drpllc@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum of Law in Support of Julie Knight's Motion for Summary Judgment has been filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Covington, Louisiana this 4th day of March, 2016.


s/David R. Paddison
_____

DAVID R. PADDISON