## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LOGAN N. MILLS**                                          **CIVIL ACTION**

**VERSUS**                                                      **NO. 13-5477**
                                                                     **c/w NO. 14-1837**

**CITY OF BOGALUSA,** *et al.*                      **SECTION: "G"(3)**


## ORDER

      In this litigation, Plaintiff Douglas L. Dendinger ("Dendinger") alleges that his constitutional rights were violated when he was falsely arrested, imprisoned, and prosecuted.[1] Pending before the Court is Moving Defendants Sheriff Randy "Country" Seal ("Seal"), Chief Deputy Michael Haley ("Haley"), and Deputy S. Barry Galloway's ("Galloway") (collectively "Moving Defendants") "Motion for Summary Judgment Pursuant to Rule 56(b) of Federal Rules of Civil Procedure."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion.

## I. Background

### A.       *Factual Background*

      In his complaint, Dendinger alleges that on August 20, 2012, he delivered a summons and complaint to Defendant Chad Cassard ("Cassard"), a former active duty police officer with the Bogalusa Police Department, on behalf of Logan Mills ("Mills"), in a suit against Cassard

---

[1] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at p. 17.

[2] Rec. Doc. 68.

and other members of the Bogalusa Police Department for excessive force.[3] Dendinger alleges that at the conclusion of Mills' criminal trial at the Washington Parish Courthouse for armed robbery, he served Cassard outside the courthouse in the presence of Pamela Jean Legendre ("Legendre"), Assistant District Attorneys Julie Knight ("Knight") and Leigh Anne Wall ("Wall"), Police Chief Joe Culpepper ("Culpepper"), Captain Kendall Bullen ("Bullen"), and Scott Seals ("Seals").[4]

Dendinger alleges that his counsel received a phone call later that day from Legendre, who is a staff attorney for Judge Hand, the judge who presided over Mills' criminal trial, and Legendre allegedly accused Dendinger of committing an assault on a police officer and intimidation of a witness while attempting to serve Cassard.[5] Dendinger alleges that later that day, he was arrested at his home by Washington Parish Deputy Galloway.[6] According to Dendinger, he was then taken to Washington Parish Jail where he was verbally harassed by Culpepper, Wall, and Knight.[7] Dendinger claims he was detained for roughly three hours before posting bond and being released.[8] Dendinger further alleges that, prior to his arrest, Wall, Legendre, Knight, Culpepper, Bullen, and Seals all provided false witness statements.[9]

---

[3] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at pp. 8–9.

[4] *Id.*

[5] *Id.* at p. 9.

[6] *Id.*

[7] *Id.* at p. 10.

[8] *Id.*

[9] *Id.* at pp. 12–13.

Dendinger alleges that Wall and Knight contacted District Attorney Walter Reed, who authorized Dendinger's arrest, and contacted Washington Parish Sheriff Seal, who also authorized Dendinger's arrest.[10] Dendinger claims that Wall improperly attempted to serve Dendinger's bondsman, rather than Dendinger himself, and then misrepresented the facts regarding her non-service during Dendinger's arraignment, leading to a No Bond Attachment Order being issued for the arrest of Dendinger.[11]

According to Dendinger, District Attorney Reed recused his office from the prosecution of Dendinger.[12] On May 29, 2014, the Attorney General for the State of Louisiana informed Dendinger that he had refused the charges against Dendinger.[13]

**B.   *Procedural Background***

Dendinger filed his complaint on August 12, 2014, alleging causes of action under 42 U.S.C. § 1983 for false arrest, false imprisonment, and municipal liability, as well as state law claims for malicious prosecution and abuse of process.[14] On July 29, 2015, Defendants Seal, Haley, and Galloway filed the instant motion.[15] Dendinger filed an opposition on August 18, 2015.[16] With leave of Court, Moving Defendants filed a reply on August 26, 2015.[17] On January

---

[10] *Id.* at p. 10.

[11] *Id.* at p. 12.

[12] *Id.* at p. 14.

[13] *Id.*

[14] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1.

[15] Rec. Doc. 68.

[16] Rec. Doc. 71.

[17] Rec. Doc. 79.

25, 2016, the Court ordered the parties to provide additional briefing regarding the issue of immunity.[18] On February 5, 2016, Moving Defendants filed a supplemental memorandum.[19] Also on February 5, 2016, Dendinger filed what appears to be a copy of Moving Defendants' supplemental memorandum.[20]

## II. Parties' Arguments

### A.    *Moving Defendants' Arguments in Support of Summary Judgment*

Moving Defendants assert that they are entitled to summary judgment because Defendant Galloway is entitled to qualified immunity for his actions.[21] Moving Defendants contend that the usual summary judgment burden of proof is altered in the case of a qualified immunity defense.[22] Moving Defendants assert that the doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[23] Moving Defendants contend that in order "[t]o determine whether a defendant is entitled to qualified immunity, the court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the

---

[18] Rec. Doc. 86.

[19] Rec. Doc. 89.

[20] Rec. Doc. 90. As the Court need not address the issue of qualified immunity for the reasons given below, the Court did not inquire as to whether Dendinger's attachment of Defendant's supplemental memorandum was inadvertent.

[21] Rec. Doc. 68-2 at p. 9.

[22] *Id.* at p. 8 (citing *Tolan v. Cotton*, 854 F. Supp. 2d 444, 463 (S.D. Tex. 2012)).

[23] *Id.* at p. 9 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

time the conduct occurred."[24] According to Moving Defendants, once an official pleads that his actions were taken in good faith, the burden shifts to the plaintiff to rebut the qualified immunity defense by showing that the official's allegedly wrongful conduct violated clearly established law.[25]

Moving Defendants contend that Dendinger has failed to offer specific facts that "evidence the irrationality or unreasonableness of D[eputy] Galloway's actions."[26] Moving Defendants assert that the evidence demonstrates that Galloway possessed reasonable factual allegations that were more than adequate to support probable cause for arrest.[27] Moving Defendants contend that to prevail on a 42 U.S.C. § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment.[28] Moving Defendants aver that probable cause for a warrantless arrest "exists when the totality of the facts and circumstances within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed an offense."[29] According to Moving Defendants, the probable cause standard is incapable of precise definition or quantification into percentages because it depends upon the totality of the circumstances.[30]

---

[24] *Id.* at p. 10 (quoting *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007)).

[25] *Id.* at p. 8 (citing *Tolan*, 854 F. Supp. at 463).

[26] *Id.* at p. 12.

[27] *Id.*

[28] *Id.* at p. 13 (citing *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007)).

[29] *Id.* (quoting *United States v. Brown*, 558 F. App'x 386, 391 (5th Cir. 2014)).

[30] *Id.* at p. 14 (citing *Jordan v. Garrison*, No. 11-CV-0723, 2014 WL 1379157, at *8 (W.D. La. Apr. 8, 2014)).

Moving Defendants contend that courts grant law enforcement the latitude and leeway to make judgment calls based on reasonable, even if incorrect, views of evidence.[31]

Moving Defendants contend that Galloway had probable cause to arrest Dendinger as evidenced by the contemporaneous reports, witness statements, and Galloway's affidavit.[32] Moving Defendants aver that there were five written statements produced by five different alleged eyewitnesses and, other than minor details of wording and timing, the statements are internally consistent and consistent with each other.[33] Moving Defendants assert that the witnesses were two Assistant District Attorneys, a state district court judge's staff attorney, the Chief of the Bogalusa Police Department, and a high-ranking officer of that department.[34] Moving Defendants aver that although Dendinger has alleged that the statements were all gross fabrications, Dendinger does not offer any facts to support a claim that Galloway either knew or should have known that the statements were false.[35] In addition, Moving Defendants contend that Galloway also consulted with and sought the advice of supervisory personnel before moving forward with Dendinger's arrest.[36]

In support of their assertion that the evidence Galloway had was sufficient for probable cause to arrest Dendinger, Moving Defendants cite a Western District of Louisiana case, *Brown v. Hill*, in which they assert that the plaintiff was arrested after incriminating statements had been

---

[31] *Id.* at p. 15.

[32] *Id.* (citing Rec. Docs. 68-4, 68-5, 68-8).

[33] *Id.* at p. 16.

[34] *Id.*

[35] *Id.*

[36] *Id.* at p. 17.

provided to police by three of the plaintiff's co-conspirators and after the plaintiff admitted his own guilt.[37] Moving Defendants contend that on appeal, the Fifth Circuit noted the presence of disputed factual issues surrounding the plaintiff's confession; however, the court concluded that the statements of three witnesses standing alone, even though they were co-conspirators, were adequate to give the arresting officers probable cause to arrest the plaintiff.[38] Moving Defendants also cite *Mackey v. Jarrott*, a case from another section of the Eastern District of Louisiana, where the court stated that a determination of whether probable cause existed must be analyzed under the totality of the circumstances and there must be a determination only that there was a fair probability that a crime occurred, which is more than a bare suspicion, but need not reach the fifty percent mark.[39] In addition, Moving Defendants state that it is "well-established" that probable cause may be based on a single and reasonably reliable eyewitness identification, even though the identification may be tarnished by discrepancies in the witness' description of the perpetrator.[40]

Moving Defendants contend that although Dendinger may argue that Galloway had an obligation to look for additional witnesses and obtain the alleged video footage from the courthouse security cameras prior to making an arrest, any such additional requirement "runs afoul of the clear and established body of case law discussed above regarding the determination

---

[37] *Id.* (citing No. 09-2170, 2010 WL 5582936 (W.D. La. Nov. 24, 2010)).

[38] *Id.* (citing *Brown v. Hill*, 428 F. App'x 336, 337 (5th Cir. 2011)).

[39] *Id.* at p. 18 (citing No. 13-cv-4919, 2015 WL 422979, at *3 (E.D. La. Feb. 2, 2015) (Berrigan, J.)).

[40] *Id.* (citing *Greene v. City of Philadelphia*, No. CIV. A. 97-4264, 1998 WL 254062, at *7 (E.D. Pa. 1998)).

of probable cause."[41] Moving Defendants also assert that Dendinger can point to no evidence that Galloway could not have objectively believed that probable cause existed based on the witnesses' statements or that Galloway knowingly relied upon material falsehoods or omissions or acted with reckless disregard for the truth.[42]

Moving Defendants also assert that Dendinger's claims against them have prescribed.[43] Moving Defendants contend that Judge Berrigan, in granting in part motions to dismiss by other Moving Defendants, has held that Dendinger's causes of action for false arrest and false imprisonment had prescribed because Dendinger filed his complaint more than one year after his incarceration had come to an end on July 21, 2012.[44] Moving Defendants assert that the same analysis applies to Dendinger's claims against them as Dendinger's complaint was not filed until August 12, 2014.[45]

Furthermore, Moving Defendants contend that Dendinger's claims against Seal and Haley are legally deficient and should be dismissed because neither of them had any personal involvement in the case.[46] Moving Defendants assert that there is no respondeat superior liability under § 1983.[47] However, Moving Defendants contend that a supervisory official can be held liable if it can be shown that he had in place "a policy or procedure that caused [the plaintiff's]

---

[41] *Id.* at pp. 18–19.

[42] *Id.* at p. 19.

[43] *Id.*

[44] *Id.* (citing Rec. Doc. 67 at pp. 4–5).

[45] *Id.* at p. 20.

[46] *Id.* (citing Rec. Doc. 68-7 at pp. 6–7; Rec. Doc. 68-8 at pp. 6–7).

[47] *Id.* at pp. 20–21 (citing *Monell v. Dep't of Social Servs. of New York City*, 436 U.S. 658 (1978)).

injury."[48] Moving Defendants aver that such an analysis necessarily implies an underlying constitutional violation on the part of one or more individual Moving Defendants and because there is no § 1983 liability against Galloway, any claims about policies or training lack merit.[49] In addition, Moving Defendants assert that a plaintiff may not infer a defective policy merely because a harm resulted from an interaction with a government entity, but rather a plaintiff must specifically identify the policy or custom that allegedly caused the alleged deprivation of constitutional rights.[50] According to Moving Defendants, although Dendinger alleges that there was a "policy and practice" and "custom and policy" in his complaint, these "bald and general characterizations, without any elaboration, fail to meet the test that a § 1983 official-capacity claim against a governmental official must 'state with factual detail and particularity the basis of the claim.'"[51] Moving Defendants contend that these same arguments are applicable to Dendinger's "bald and unspecified assertion of failure-to-train and other similar claims."[52] In support, Moving Defendants cite what they assert is an analogous case from another section of the Eastern District of Louisiana, *Davis v. Evangelist*, where the court found that the plaintiff had not pointed to any evidence to support his conclusory assertion.[53]

Turning to Dendinger's state law claims, Moving Defendants assert that the state law claims should be dismissed for the same reasons as the federal claims as Dendinger has offered

---

[48] *Id.* at p. 21 (quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007)).

[49] *Id.*

[50] *Id.* (citing *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993)).

[51] *Id.* at p. 22 (quoting *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

[52] *Id.*

no evidence of a § 1983 violation on the part of any of the Moving Defendants.[54] Moving Defendants contend that the Fifth Circuit has held that because the Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry is applicable to both federal and state law claims for false arrest.[55] In the alternative, Moving Defendants assert that plaintiff's state law claims should be dismissed because after the federal law claims have been rejected, there are no grounds for federal jurisdiction.[56] Moving Defendants assert that: (1) the factors of judicial economy, convenience, fairness and comity weigh in favor of declining supplemental jurisdiction over any remaining state law claims; (2) no federal claims remain; (3) comity favors dismissing the state law claims because of Louisiana's interest in adjudicating claims involving its own citizens brought under its laws; (4) judicial economy does not weigh in favor of maintaining jurisdiction because the state law claims have not been addressed at all in this court; and (5) fairness and convenience are equal whether the claim is brought in state or federal court.[57]

## B.   *Dendinger's Arguments in Opposition to the Motion for Summary Judgment*

In response, Dendinger agrees that his claims brought pursuant to 42 U.S.C. § 1983 for false arrest/imprisonment and procedural due process should be dismissed against Moving

---

[53] *Id.* (citing No. 06-3037, 2009 WL 2447987, at *6 (E.D. La. Aug. 6, 2009) (Feldman, J.)).

[54] *Id.* at p. 23.

[55] *Id.* (citing *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 (5th Cir. 2009)).

[56] *Id.* at pp. 23–24.

[57] *Id.* at p. 24 (citing *Fabre v. Yoli*, No. 14-0220, Rec. Doc. 13 at p. 5).

Defendants on prescription grounds.[58] However, Dendinger contends that he has viable claims for malicious prosecution and municipal liability.[59]

Dendinger contends that a claim for malicious prosecution under Louisiana law requires a plaintiff to show the following elements: "1) Commencement or continuance of a criminal proceeding; 2) Legal causation by defendant against plaintiff; 3) Bona fide termination in favor of the present plaintiff; 4) Absence of probable cause; 5) Presence of malice; and 6) Damage to Plaintiff."[60] Dendinger contends that the Washington Parish Sheriff's Office ("WPSO") commenced a criminal proceeding against him and although Moving Defendants are not the sole cause of the commencement of the proceedings, they are one cause due to their "reckless investigation and by deliberately ignoring exculpatory evidence."[61] Dendinger asserts that although a failure to investigate is insufficient to find WPSO culpable, recklessness and deliberate indifference of exculpatory evidence does support liability under a malicious prosecution claim.[62] Dendinger contends that exculpatory evidence in the form of courthouse video was available to WPSO right across from WPSO's headquarters, but no one showed any interest in that video.[63] Furthermore, according to Dendinger, his cell phone video shows a courthouse deputy in the doorway, but WPSO did not interview him or anyone else.[64]

---

[58] Rec. Doc. 71 at p. 1.

[59] *Id.* at p. 2.

[60] *Id.* at p. 7 (citing *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 452 (La. 1987)).

[61] *Id.* at pp. 7–8.

[62] *Id.* at p. 8 (citing *Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 580 (M.D. La. 2007)).

[63] *Id.*

[64] *Id.*

Dendinger also asserts that Moving Defendants' argument that there was probable cause for his arrest fails.[65] First, Dendinger asserts that the rejection of criminal charges against him by the Attorney General creates a presumption of a lack of probable cause, as well as a presumption of malice.[66] Second, Dendinger contends that verification of a witness statement may be required in order to establish probable cause where the source of the information seems "unworthy" or where further information about a serious charge would be readily available.[67] Dendinger contends that Culpepper, Bullen, and Seals were all Moving Defendants in the excessive force case for which Dendinger was serving Cassard.[68] Furthermore, Dendinger contends that Chief Deputy Lyons' brother, Patrick, was a named defendant in the case.[69] Therefore, according to Dendinger, the statements were per se suspect and valueless.[70] In addition, Dendinger asserts that the two Assistant District Attorneys who gave statements against Dendinger had just completed Mills' criminal trial.[71] Dendinger argues that, despite the serious felony charges involved, and the fact that the video was readily available to WPSO, WPSO took no action to obtain the video.[72]

---

[65] *Id.*

[66] *Id.* (citing *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/16/03); 862 So. 2d 1139, 1143).

[67] *Id.* at p. 9 (citing *State v. Raheem*, 464 So. 2d 293 (La. 1985)).

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

Third, Dendinger asserts that the need for prompt action is another factor to be considered in determining whether unverified information supports probable cause.[73] Dendinger contends that Cassard suffered no physical injury, Dendinger lived close to the courthouse, and the District Attorney waited approximately a year before filing a Bill of Information against Dendinger.[74]

Fourth, Dendinger contends that the evidence shows that Deputy Chief Shannon Lyons, who had a personal interest in the case, conferred with Sergeant Vallarie, the officer who physically placed Dendinger under arrest, concerning Dendinger's arrest.[75] Dendinger asserts that a reasonable inference can be drawn that the family connection played a role in the investigation.[76] In addition, Dendinger avers that a jury may draw an inference of malice from the lack of probable cause, the reckless investigation conducted by WPSO, and the "reckless disregard of the plaintiff's rights."[77] Dendinger also asserts that his treatment at the Washington Parish Jail further evidences malice given the large number of witnesses "milling around" at the jail.[78] Dendinger asserts that WPSO "was playing host to a lynching party."[79] According to Dendinger, he was also led to the booking room, suffered jeering by the witnesses, and was

---

[73] *Id.* at p. 10 (citing *Hibernia Nat'l Bank v. Bolleter*, 390 So. 2d 842 (La. 1980)).

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* (quoting *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453, 455–56 (La. 1987)).

[78] *Id.*

[79] *Id.*

handcuffed against the wall for an extended period of time.[80] Dendinger asserts that given this treatment, a jury could find that WPSO had "partnered up" with the co-Moving Defendants and that they were "hell-bent" on putting Dendinger away for life.[81] Dendinger contends that there is no qualified immunity because of the deliberate indifference to exculpatory evidence and reckless investigation.[82]

Turning to the municipal liability, Dendinger contends that based upon Seal's admission that there were deficiencies in the WPSO policies and procedures and that WPSO "was lacking in the development, adoption, and implementation of formal policies and procedures," there is a failure to train issue under *Monell v. Department of Social Services of New York City*.[83] Dendinger contends that in order to show municipal liability he must show that: "1) training policy procedures were inadequate; 2) [there was] deliberate indifference in adopting the training policy; and 3) the inadequate training policy caused the alleged harm."[84] Dendinger asserts that Seal has admitted to deficiencies in WSPO's policies and there is sufficient evidence from which a juror could draw the reasonable inference that there was a deliberate indifference to adopting a training policy and that this inadequacy caused the alleged harm through the ignorance of exculpatory evidence and the treatment of Dendinger in jail.[85]

---

[80] *Id.*

[81] *Id.*

[82] *Id.* at p. 11 (citing *Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 581 (M.D. La. 2007)).

[83] *Id.*

[84] *Id.* (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

[85] *Id.*

Dendinger contends that should the Court determine that he needs more evidence to sustain his burden, he requests the opportunity to conduct additional discovery.[86] Dendinger asserts that that he has submitted a declaration pursuant to Federal Rule of Civil Procedure 56(d).[87] Dendinger contends that there has been no trial date set and no discovery deadline and Dendinger only recently received written discovery responses.[88]

## C.   *Moving Defendants' Arguments in Further Support of Summary Judgment*

In reply, Moving Defendants assert that in Dendinger's "Statement of Facts," he acknowledges that most of the facts are undisputed.[89] Moving Defendants contend that, in places where Dendinger attempts to distinguish or add to Moving Defendants' stated facts, Dendinger's comments are limited to irrelevant matters or are reproductions of his arguments from his memorandum in opposition to the motion for summary judgment.[90]

Moving Defendants assert that Dendinger's malicious prosecution claim fails because Galloway had probable cause to arrest him.[91] In support, Moving Defendants again cite *Mackey v. Jarrott*, where Moving Defendants assert that another section of the Eastern District of Louisiana granted summary judgment to the defendant police officer as a result of its finding that the officer had probable cause based upon a single photo identification where the witness

---

[86] *Id.* at p. 12.

[87] *Id.* (citing Rec. Doc. 71-10).

[88] *Id.*

[89] Rec. Doc. 79 at p. 2 (citing Rec. Doc. 71-1).

[90]  *Id.*

[91] *Id.* at p. 3.

commented that he was only 60-70% sure of his choice.[92] Moving Defendants contend that the

factual basis for probable cause in this case is significantly more compelling.[93] Moving

Defendants assert that in his opposition to the motion for summary judgment, Dendinger cites

only three cases to contest Moving Defendants' argument that Galloway had probable cause to

arrest him.[94] However, Moving Defendants argue that none of these cases are persuasive.[95]

Moving Defendants contend that *Hope v. City of Shreveport*, the Louisiana Second Circuit Court

of Appeal case cited by Dendinger, stands for the proposition that the eventual dismissal of

criminal charges against a malicious prosecution plaintiff shifts the burden of proof regarding

probable cause to the defendant.[96] Moving Defendants assert that they do not challenge that

principle and maintain that they have more than met their burden of proof on this issue.[97]

Moving Defendants contend that the Louisiana Supreme Court case cited by Dendinger,

*State v. Raheem*, is distinguishable because, in that case, the court found that additional

investigation was required to establish probable cause because the reliability of a confidential

informant was at issue.[98] Moving Defendants assert that in this case, Galloway had six identified

eyewitnesses, all of whom were employed by law enforcement or the judiciary.[99] Moving

---

[92] *Id.* (citing No. 13-cv-4919, 2015 WL 422979, at *3 (E.D. La. Feb. 2, 2015) (Berrigan, J.)).

[93] *Id.*

[94] *Id.* at p. 4.

[95] *Id.*

[96] *Id.* (citing 37,759 (La. App. 2 Cir. 12/16/03); 862 So. 2d 1139, 1143).

[97] *Id.*

[98] *Id.* (citing 464 So. 2d 293 (La. 1985)).

[99] *Id.*

Defendants assert that although Dendinger claims that *Hibernia National Bank v. Bolleter*, another Louisiana Supreme Court case, supports his contention that "the need for prompt action is another factor to be considered in determining whether unverified information supports probable cause," there is no language in the opinion that supports this contention.[100] Furthermore, Moving Defendants assert that the facts in *Bolleter* are "drastically different from this case," and therefore any comparison would be irrelevant.[101]

Moving Defendants assert that "probable cause is an absolute defense to any claim against police officers for wrongful arrest, false imprisonment, or malicious prosecution."[102] In addition, they contend that even if there was a malicious motive, if an accusation is based upon probable cause, there is no liability for malicious prosecution.[103] Moving Defendants aver that the Fifth Circuit has stated that "the probable cause analysis only requires that [the court] find a basis for an officer to believe to a fair probability that a violation occurred."[104] Moving Defendants contend that because Galloway had probable cause to arrest Dendinger, the motion for summary judgment on Dendinger's malicious prosecution claim should be granted.[105]

In addition, Moving Defendants assert that Dendinger's reliance on information that Galloway might have discovered if he had chosen to expand his investigation beyond the six

---

[100] *Id.* (citing Rec. Doc. 71 at p. 10; *Hibernia Nat'l Bank v. Bolleter*, 390 So. 2d 842 (La. 1980)).

[101] *Id.*

[102] *Id.* at p. 5 (quoting *McMasters v. Dep't of Police*, 2013-0348, pp. 15–16 (La. App. 4 Cir. 5/15/15); 172 So. 3d 105).

[103] *Id.* (citing *Ferrant v. Parish of Tangipahoa ex rel. Coroner's Office*, 2001-2278, pp. 4–5 (La. App. 1 Cir. 6/21/02); 822 So. 2d 118, 120).

[104] *Id.* (quoting *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000)).

[105] *Id.* at p. 3.

eyewitnesses is misplaced.[106] Moving Defendants contend that although Dendinger avers that the video camera located on the front of the Washington Parish Courthouse and the alleged existence of additional eyewitnesses to the incident who failed to present themselves to Galloway would have been exculpatory evidence, Moving Defendants assert that Dendinger fails to provide any proof that the evidence was in fact exculpatory, nor does he explain how this evidence would have changed Galloway's determination that there was probable cause.[107] Moving Defendants contend that the relevance of these items is dependent upon an existence of a legal duty on the part of Galloway to conduct an exhaustive investigation prior to his determination that there was probable cause to arrest Dendinger.[108] However, Moving Defendants contend that Dendinger has failed to cite even one reported case supportive of the existence of such a duty.[109]

According to Moving Defendants, it is an undisputed fact that Galloway had six credible eyewitnesses recounting a consistent narrative of Dendinger's actions, and therefore Galloway had probable cause to arrest Dendinger.[110] In support, Moving Defendants cite a Louisiana First Circuit Court of Appeal case, *Ross v. Baton Rouge City Police Department*, where, Moving Defendants contend, the court affirmed the lower court's grant of summary judgment on the claims of false arrest and malicious prosecution in a case where the arresting officer relied upon the statement of a single witness, despite the fact that the statement differed significantly from

---

[106] *Id.* at pp. 5–6.

[107] *Id.* at p. 6.

[108] *Id.*

[109] *Id.*

[110] *Id.* at pp. 6–7.

the information provided by the victim, in finding that there was probable cause to arrest.[111]

Furthermore, Moving Defendants assert that the video footage offered by Dendinger supports, rather than rebuts, a finding of probable cause.[112] Moving Defendants contend that under Louisiana law, "battery" is defined as "the intentional use of force . . . upon the person of another," and "simple battery" is defined as "a battery committed without the consent of the victim."[113] Moving Defendants quote the Louisiana Supreme Court in *Caudle v. Betts*, stating "The [actor's] intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent."[114] Moving Defendants assert that a careful review of the cell phone video clearly demonstrates that Dendinger intentionally used some degree of force in slapping a large envelope full of papers against Cassard's chest and that it was without his consent.[115] Moving Defendants argue that, presumably, any other video that may have been taken of the incident would have shown the same thing, lending even more support to a finding that there was probable cause to arrest.[116] In addition, Moving Defendants contend that the video supports a similar conclusion as to the other charges of obstruction of justice and intimidating, impeding, or injuring a witness.[117]

---

[111] *Id.* at p. 7 (citing 2009-0360 (La. App. 1 Cir. 2009); 2009 WL 3447267).

[112] *Id.*

[113] *Id.* (citing La. Rev. Stat. §§ 14:33, 1435).

[114] *Id.* (citing 512 So. 2d 389, 391 (La. 1987)).

[115] *Id.* at p. 8.

[116] *Id.*

[117] *Id.*

Moving Defendants assert that in order to survive a motion for summary judgment, Dendinger must go beyond the pleadings and designate specific, contested facts contained in the record to show that there is a genuine issue for trial.[118] Moving Defendants contend that Dendinger offers nothing more than a "reformatting of the allegations set out in his Complaint and/or bald statements of counsel without any genuine evidentiary support."[119] Moving Defendants assert that because Dendinger has not presented relevant, contested evidence supportive of his position, the motion for summary judgment should be granted.[120]

### D.   *Moving Defendants' Supplemental Memorandum in Further Support of Summary Judgment*

On January 25, 2016, the Court, noting that it had conducted an initial review of the briefs regarding the motion for summary judgment, stated that the parties had raised, but had not addressed with sufficient clarity, the issue of immunity as it does or does not apply to the various federal and state law claims the plaintiff has raised against each of the moving Moving Defendants.[121] In their supplemental memorandum, Moving Defendants assert that qualified immunity is generally available to law enforcement officers as a defense to § 1983 claims.[122] Moving Defendants assert that "the defense of qualified immunity is particularly applicable to each of the moving Moving Defendants and for each of the plaintiff's claims."[123] In asserting

---

[118] *Id.* at pp. 8–9 (citing *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996)).

[119] *Id.* at p. 9.

[120] *Id.* at pp. 9–10.

[121] Rec. Doc. 86.

[122] Rec. Doc. 89 at p. 4.

[123] *Id.*

that Galloway is entitled to qualified immunity, Moving Defendants repeat their arguments in their original memorandum, stating that qualified immunity requires only "reasonable objectivity judged on the circumstances at the time" and that Dendinger has failed to offer any specific facts that evidence the irrationality or unreasonableness of Galloway's actions.[124] Furthermore, Moving Defendants contend that they have discussed at length in their original memorandum the jurisprudential guidelines that have been developed to deal with cases involving a warrantless arrest, and this argument "can [be] viewed either as a sub-part of the qualified immunity doctrine or as its own separate ground for granting the motion in favor of [] Galloway."[125]

Turning to the claims against Seal, Moving Defendants assert that Dendinger has expressly conceded that his claims against Seal based upon § 1983 are virtually non-existent apart from *Monell*-type liability.[126] Moving Defendants contend that the weakness of any surviving claim against Seal on the basis of malicious prosecution is set out in Moving Defendants' reply memorandum.[127] Moving Defendants assert that for all of the same reasons, Dendinger's federal law claims against Haley are without merit and should be dismissed.[128]

As for Dendinger's state law claims for false arrest, Moving Defendants state that "[b]ecause Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry here is applicable to both [plaintiff's] federal and state law

---

[124] *Id.* at p. 6.

[125] *Id.* at pp. 6–7.

[126] *Id.* at p. 7 (citing Rec. Doc. 71 at p. 1).

[127] *Id.* (citing Rec. Doc. 79 at pp. 2–5).

[128] *Id.*

claims."[129] Therefore, Moving Defendants contend that for the same reasons that they are entitled to summary judgment on Dendinger's Fourth Amendment false arrest claim, they are entitled to summary judgment on his Louisiana state law false arrest claim.[130] Furthermore, Moving Defendants contend that without tortious conduct on Galloway's part for which Seal and Haley could answer under respondeat superior, Dendinger cannot maintain his state law claims against those superior officers with respect to Galloway's conduct for the same reasons as those set out regarding Dendinger's § 1983 claims.[131] Therefore, Moving Defendants contend that the motion for summary judgment should be granted regarding Dendinger's Louisiana false arrest claims.[132] Moving Defendants assert that as for any state law claim for malicious prosecution, they direct the Court's attention to their reply memorandum.[133]

E.    *Dendinger's Supplemental Memorandum in Opposition to Summary Judgment*

It appears that in filing his supplemental memorandum, Dendinger simply attached Moving Defendants' supplemental memorandum.[134]

### III. Law and Analysis

A.    *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to

---

[129] *Id.* at pp. 7–8 (quoting *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 n.4 (5th Cir. 2009)).

[130] *Id.* at p. 8.

[131] *Id.*

[132] *Id.*

[133] *Id.* (citing Rec. Doc. 79 at pp. 2–5).

[134] Rec. Doc. 90.

judgment as a matter of law."[135] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[136] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[137] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[138] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[139]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[140] Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[141] To withstand a motion for summary judgment, a plaintiff must show that there is a

---

[135] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[136] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[137] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[138] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[139] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[140] *Celotex*, 477 U.S. at 323.

[141] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

genuine issue for trial by presenting evidence of specific facts.[142] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[143] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[144]

## B.    Analysis

Moving Defendants make several arguments in support of their motion for summary judgment: (1) Galloway is entitled to qualified immunity as to the false arrest claims; (2) Dendinger's false arrest and false imprisonment claims have prescribed; (3) Dendinger's claims against Seal and Haley are deficient because neither of them had any personal involvement in the case and it is well established that there is no respondeat superior liability on a supervisor pursuant to § 1983; (4) because Fourth Amendment principles underpin Louisiana law relating to false arrests, Dendinger's false arrest claim fails for the same reasons as his federal claim; and (5) in the alternative, Dendinger's state law claims should be dismissed because no federal claims remain.[145] In opposition, Dendinger states that he agrees that his claims in count one and

---

[142] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[143] *Little*, 37 F.3d at 1075.

[144] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[145] Rec. Doc. 68-2.

two brought under § 1983 for false arrest/imprisonment and procedural due process against Moving Defendants should be dismissed as they have prescribed.[146] However, Dendinger asserts that he has viable claims for malicious prosecution and for municipal liability.[147] In the alternative, Dendinger asserts that should the Court determine that he needs more evidence to sustain his burden, he requests the opportunity to conduct discovery for this purpose.[148] The Court will address each of these claims in turn.

### 1.    False Arrest, False Imprisonment, and Procedural Due Process Violations

In counts one and two of his complaint, Dendinger brings claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, alleging that he was falsely arrested and imprisoned and that his procedural due process rights were violated.[149] Dendinger agrees that his claims brought under § 1983 for false arrest/imprisonment and procedural due process violations should be dismissed on the basis of prescription.[150] Therefore, the Court grants Moving Defendants' motion for summary judgment regarding these claims.[151]

Moving Defendants also move for summary judgment on Dendinger's state false arrest claims.[152] In his complaint, Dendinger only alleges a false arrest/false imprisonment claim

---

[146] Rec. Doc. 71 at p. 1.

[147] *Id.* at p. 2.

[148] *Id.* at p. 12.

[149] *Dendinger v. Bogalusa*, No. 14-1837, Rec. Doc. 1 at pp. 15–18.

[150] Rec. Doc. 71 at p. 1.

[151] Moving Defendants also argue that Galloway is entitled to qualified immunity as to these claims. Rec. Doc. 68-2 at p. 12. However, the Court need not address this argument as the parties agree that these claims have prescribed.

[152] *Id.* at p. 23.

pursuant to § 1983, not state law.[153] Furthermore, in his opposition to the motion for summary judgment, Dendinger asserts that he has viable claims only for malicious prosecution and municipal liability.[154] Therefore, the Court need not address any Louisiana false arrest claim.

### 2.    Malicious Prosecution

Moving Defendants move for summary judgment on Dendinger's malicious prosecution claim on the grounds that Dendinger cannot show that there was no probable cause for his arrest.[155] In opposition, Dendinger contends that Moving Defendants' argument that there was probable cause fails.[156] In order to prove a claim for malicious prosecution, a plaintiff must show: "(1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff."[157] Although the plaintiff ordinarily bears the burden of proof on all the elements of a malicious prosecution claim, there is a presumption of malice and a lack of probable cause in cases where the prosecuting officer has dismissed the charges.[158] In those cases, the burden shifts to the

---

[153] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at p. 15.

[154] Rec. Doc. 71 at p. 2.

[155] Rec. Doc. 79 at p. 5.

[156] Rec. Doc. 71 at p. 8.

[157] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 368 (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)).

[158] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143; *see also Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

defendant to show that he acted on probable cause and without malice.[159] "Probable cause for arrest exists when facts and circumstances within the knowledge of the arresting officer and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense."[160] Under Louisiana law, probable cause to arrest is an absolute defense to a claim against a police officer for malicious prosecution.[161]

   In support of their assertion that there was probable cause for the arrest, Moving Defendants submit the written statements of six witnesses that were provided to Galloway.[162] Cassard, a former active duty police officer, states that he had just walked out of the District Court in Franklinton, Louisiana when "a white male wearing short pants, pink colored long sleeve shirt and a ball cap slapped [him] in the chest with a white envelope and stated 'You been served brother.'[163] Another witness, Leigh Anne Wall, provided a written statement asserting that upon exiting the courthouse after the trial of the *State v. Logan Mills*, a man wearing a "peach/salmon shirt" approached Cassard.[164] Wall states that she couldn't see what he did when he approached him because of where she was standing, but she saw that the man walked off toward an older model truck along with family members of the defendant in the case *State v.*

---

[159] *Id.*

[160] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (1987).

[161] *McMasters v. Dep't of Police*, 2013-0348 (La. App. 4 Cir. 5/15/15); 172 So. 3d 105 (quoting *Brown v. City of Monroe*, 48-675 (La. App. 2 Cir. 2/26/14); 135 So. 3d 792).

[162] Rec. Doc. 68-5.

[163] *Id.* at p. 1.

[164] *Id.* at p. 2.

*Logan Mills*.[165] Wall states that the man screamed something from the middle of the road about

serving him.[166]

In addition, Pamela Jean Legendre provided a written statement that upon exiting the

courthouse, she observed a gentleman wearing a pink shirt and cap "slap[] a fat legal-sized

envelope directly on Chad [Cassard's] sternum – it made such a noise [she] thought Chad had

been punched."[167] Legendre stated:

> It was clearly a battery on a police officer (Chad is a reserve officer and had just
> testified in a trial due to his status as a former active Bogalusa P.O.). Also the
> Judge had placed the defendant's mother under a protective order to have no
> contact with any witnesses under subpoena – the criminal matter is not over –
> sentencing, post trial motions etc. remain. Logan's mother handed the papers to
> the guy in the pink shirt. It is also, to an observer, intimidating to a witness and to
> all gathered there.[168]

Another witness, Julie Knight, provided a written statement that a man in a peach-colored shirt

approached Cassard and "hit him with his hand on or about his chest area" with an envelope of

papers.[169] Kendall Bullen also provided a written statement in which he asserted that he observed

a white male wearing short pants with a peach colored long sleeve shirt and a ball cap "hit officer

Chad Cassard in the chest area with a packet of papers and stated you are served brother."[170] Joe

Culpepper also provided a written statement that he observed an individual wearing a pink long

---

[165] *Id.*

[166] *Id.*

[167] *Id.* at p. 3.

[168] *Id.*

[169] *Id.* at p. 4.

[170] *Id.* at p. 5.

sleeve shirt "sl[a]p Chad Cassard in the chest w/an envelope."[171] Finally, Moving Defendants submit the statement of Scott Seals who asserted that he observed a "white male dressed in shorts and what looked like a pink button up shirt hit Chad Cassard in the chest with a bundle of papers and state 'you've been served brother.'"[172]

Moving Defendants have submitted Dendinger's arrestee reports, which state charges of "obstruction of justice" pursuant to Louisiana Revised Statute § 14:130.1, "intimidating a witness" pursuant to Louisiana Revised Statute § 14:129.1, and "battery on a police officer – simple" pursuant to Louisiana Revised Statute § 14:34.2.[173] Louisiana Revised Statute § 14:34.2 provides that "[b]attery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty." Battery is defined under Louisiana law as "the intentional use of force upon the person of another" and simple battery is defined as "a battery committed without the consent of the victim."[174]

Dendinger contends that there was no probable cause because the statements given by the witnesses were "valueless" because they were provided by individuals with personal agendas and therefore, were "*per se* suspect."[175] Citing a Louisiana Supreme Court case, *State v. Raheem*, Dendinger contends that "verification may be required to establish probable cause where the source of the information seems unworthy or where further information about a serious charge

---

[171] *Id.* at p. 6.

[172] *Id.* at p. 7.

[173] Rec. Doc. 68-4 at p. 1.

[174] La. Rev. Stat. §§ 14:33, 14:35.

[175] Rec. Doc. 71 at p. 9.

would be readily available."[176] Dendinger contends that the witnesses Culpepper, Bullen, and Seals were Moving Defendants in Mills' excessive force case, the same case for which Cassard was being served.[177] In addition, Dendinger contends that Chief Deputy Lyons' brother was a named defendant in the suit as well and "[e]very Bogalusa P.D. officer who gave a statement had a personal agenda."[178] Dendinger also asserts that Assistant District Attorneys Wall and Knight had just completed Mills' criminal trial.[179] In support of their contention that there was probable cause for Dendinger's arrest, Moving Defendants cite a Fifth Circuit case, *Brown v. Hill*, where the court found that there was probable cause for an arrest of Brown based upon the statements of his three accomplices.[180] The court in *Brown* found that probable cause existed for the arrest because a reasonable person could have concluded, based on the information known to the officers at the time of Brown's arrest, that Brown had committed an offense.[181]

However, although Dendinger contends that most of the witnesses had a personal agenda, Dendinger does not contend that the final individual who provided a statement, Pamela Jean Legendre, who asserts in her statement that she works for Judge August J. Hand at the Franklin Courthouse, had any personal agenda or bias towards Mills.[182] Even if Galloway considered only Legendre's statement, Legendre provided information to police that an individual in a pink shirt

---

[176] *Id.* (citing 464 So. 2d 293 (La. 1985)).

[177] *Id.*

[178] *Id.*

[179] *Id.*

[180] Rec. Doc. 68-2 at p. 17 (citing 438 F. App'x 336, 337 (5th Cir. 2011) (per curiam)).

[181] 438 F. App'x at 337.

[182] Rec. Doc. 68-5 at p. 3.

and cap "slapped a fat legal-sized envelope directly on Chad's sternum" and that it "made such a noise [she] though Chad had been punched."[183] She further stated that the individual's actions were "intimidating."[184] Legendre also stated that Cassard was a reserve officer and had just testified in a trial as a former active Bogalusa police officer.[185]

In *Raheem*, the officers asserted that they had probable cause for an arrest based upon a tip from a confidential informant.[186] The Louisiana Supreme Court found that the information from the informant was insufficient to establish probable cause because the informant did not set forth the basis of his knowledge.[187] Here, the witness identified herself and stated that she had personally observed Dendinger's conduct. Therefore, the Court is not persuaded by Dendinger's argument that further "verification" was required to establish probable cause to arrest Dendinger.

Dendinger also asserts that there was no probable cause because further information about a serious charge was readily available and the police took no action to access it.[188] Dendinger contends that despite the fact that there were serious felony charges involved, nobody from the Washington Parish Sheriff's Office crossed the street to access the readily available courthouse video.[189] In support, Dendinger cites *Raheem*;[190] however, the Court finds no

---

[183] *Id.*

[184] *Id.*

[185] *Id.*

[186] 464 So. 2d 293, 296 (La. 1985)

[187] *Id.* at 297.

[188] Rec. Doc. 71 at p. 9.

[189] *Id.*

[190] *Id.* (citing 464 So. 2d 293 (La. 1985)).

language in *Raheem* to support Dendinger's contention. Dendinger does not cite any other authority for his contention that Galloway was required to access additional evidence prior to arresting Dendinger.

Dendinger also contends that the need for prompt action is another factor to be considered in determining whether unverified information supports probable cause.[191] In support, Dendinger cites *Hibernia National Bank v. Bolleter*.[192] In *Bolleter*, the Louisiana Supreme Court found that a bank lacked probable cause to institute an action against an individual who they alleged had committed a forgery.[193] The court found that the bank had no reason to believe that the individual had actually signed the note that they alleged had been forged.[194] In opposition, Moving Defendants assert that they are unable to locate any language in *Bolleter* that support this conclusion.[195] Like Moving Defendants, the Court cannot find any language in *Bolleter* regarding the need for prompt action and probable cause. Nor has Dendinger cited any other authority for this proposition.

The Court is unpersuaded by Dendinger's assertions that the fact that there was no need for prompt action and that Galloway did not obtain the courthouse video prior to arresting Dendinger means that Galloway lacked probable cause to arrest him. Moving Defendants have submitted the declaration of Galloway, who stated that he was advised by 22nd Judicial District

---

[191] *Id.* at p. 10.

[192] *Id.* (citing 390 So. 2d 842 (La. 1980)).

[193] 390 So. 2d at 843.

[194] *Id.* at 844.

[195] Rec. Doc. 79 at p. 4.

Court Assistant District Attorney Julie Knight, Bogalusa Police Department Captain Kendall Bullen, Bogalusa Police Department Chief Joe Culpepper, 22nd Judicial District Judicial Law Clerk Pamela Jean Legendre and former Bogalusa Police Department Officer Chad Cassard "that Mr. Cassard had been battered by an individual identified by Mr. Douglas Dendinger."[196] Galloway further asserts that he was advised that Dendinger had harassed and intimidated Cassard in violation of a direct order from the Honorable A.J. Hand, District Judge for the 22nd Judicial District.[197] Galloway states that he carefully questioned each of these individuals and reviewed their statements and the information he received verbally was consistent with the written statements.[198] Moving Defendants have also submitted the written statements of each of these witnesses and the Court finds that the statements are consistent with Galloway's assertion of the information he received from them.

Finally, Dendinger asserts in his declaration that, prior to his arrest, he gave Sergeant Vallerie ("Vallerie") a statement regarding what he claims happened at the courthouse, told him that he had a cell phone video showing him what had happened, and told Vallerie that there were witnesses that could support his version of the facts.[199] According to Dendinger, these facts show that Dendinger did, in fact, offer Galloway evidence to question Galloway's conclusion that there was probable cause for his arrest.[200] Dendinger states in his declaration that during the time

---

[196] Rec. Doc. 68-8 at p. 2.

[197] *Id.*

[198] *Id.*

[199] Rec. Doc. 71-2 at pp. 5–6. Dendinger also asserts that his meeting with Vallerie was videotaped via cell phone and has been submitted into the record. *Id.* at p. 5. The Court has been unable to access the video; however, the Court takes as true for purposes of this motion Dendinger's allegations regarding this meeting.

[200] *Id.*

that Vallerie was in Dendinger's home, Vallerie spoke to someone at WPSO by telephone.[201] However, Dendinger does not assert that Vallerie relayed the information he had received from Dendinger to the person on the phone, or even that the person Vallerie was speaking to was Galloway. Therefore, Dendinger cannot undermine Galloway's finding that there was probable cause based upon information that only Vallerie received, because the information must be "within the knowledge of the arresting officer."[202]

Furthermore, even assuming that Vallerie did convey this information to Galloway, probable cause is a low standard. The Louisiana Supreme Court has stated that "[w]hile mere suspicion is not sufficient to justify an arrest, the officer need not have sufficient proof to convict."[203] Dendinger does not assert specifically what he told Vallerie happened; however, presumably, Dendinger told him the same thing he asserts in his declaration, that Dendinger "placed the envelope onto the lapel of Mr. Cassard's jacket and Cassard's hands."[204] On the other hand, Galloway had statements from several individuals, who claimed to be eyewitnesses, who all stated that Dendinger had slapped Cassard in the chest while giving him the envelope. Therefore, Galloway had reasonable and trustworthy information "sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense."[205] Accordingly, because absence of probable cause is an element of a claim for malicious prosecution, and because there is no genuine issue of material fact regarding probable

---

[201] *Id.* at p. 6.

[202] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (1987).

[203] *State v. Randolph*, 337 So. 2d 498 (La. 1976).

[204] Rec. Doc. 71-2 at p. 4.

[205] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (1987).

cause, the Court grants Moving Defendants' motion for summary judgment on Dendinger's malicious prosecution claim against Galloway.

In his complaint, Dendinger alleges that Wall and/or District Attorney Walter Reed contacted Seal about the plan to arrest Dendinger and that Seal authorized Haley to order Galloway to place Dendinger under arrest.[206] However, Dendinger does not point to any evidence in response to the motion for summary judgment regarding the involvement of Seal or Haley in the decision to arrest Dendinger. Therefore, the Court grants Moving Defendants' motion for summary judgment on Dendinger's malicious prosecution claim against Seal and Haley as well.

### 3.    *Monell* Liability

Moving Defendants also move for summary judgment on the claim against Seal in his official capacity as Sheriff for the Washington Parish Sheriff's Office on the grounds that because there is no § 1983 liability against Galloway, Dendinger's policy and training claims against Seal are without merit.[207] In addition, Moving Defendants contend that although Dendinger makes assertions regarding policies and practices in his complaint, his "bald and general characterizations" are insufficient.[208] Furthermore, Moving Defendants assert that Dendinger fails to explain how any specific policy or procedure "served as a moving force" behind a particular alleged constitutional violation.[209]

---

[206] *Dendinger v. City of Bogalusa*, No. 14-1827, Rec. Doc. 1 at p. 10.

[207] Rec. Doc. 68-2 at p. 21.

[208] *Id.* at p. 22.

[209] *Id.*

In *Monell v. Department of Social Services*, the United States Supreme Court held that municipalities and municipal officials sued in an official capacity may be held liable under § 1983.[210] To maintain a § 1983 claim against a municipality, a plaintiff must show that officials acted in accordance with an official policy or custom.[211] Thus, municipalities are not vicariously liable for rights violations committed by their employees, but they are liable whenever "their official policies cause their employees to violate another person's constitutional rights."[212] The Supreme Court has instructed that:

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.[213]

Therefore, Dendinger must show not only that his constitutional rights were violated, but that the WPSO was the "moving force" behind his injury.[214] Dendinger bases his claim for *Monell* liability on an alleged failure to train.[215] The Fifth Circuit has found that "a municipality's policy

---

[210] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 689 (1978).

[211] *James v. Texas Collin Cnty.*, 535 F.3d 365, 375 (5th Cir. 2008) (citing *Monell*, 436 U.S. at 658).

[212] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001).

[213] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

[214] *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) ("Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation."); *see also Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) ("[M]unicipal liability . . . requires proof of . . . a policy maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom."); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1243 (5th Cir.1993) (describing several ways to meet this burden).

[215] Rec. Doc. 71 at p. 11.

of failure to train its police officers can give rise to § 1983 liability."[216] The Fifth Circuit defines an "official policy" for the purposes of § 1983 as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority; or

2. A persistent, widespread practice of officials or employees which although not authorized by officially adopted and promulgated policy is so common and well-settled as to constitute a custom that fairly represents the entity's policy.[217]

In order to succeed on a failure to train claim, a plaintiff must demonstrate that: (1) the training policies were inadequate; (2) there was deliberate indifference in adopting the training policy; and (3) the inadequate training policy directly caused the alleged harm.[218] Dendinger asserts that Seal admits to deficiencies in WPSO policies and procedures and concedes that it was lacking in the development, adoption, and implementation of formal policies and procedures prior to when his term as Sheriff began on July 1, 2012.[219] However, the harm that Dendinger alleges is that he was arrested without probable cause. Municipalities are liable only when "their official policies cause their employees to violate another person's constitutional rights."[220] Dendinger asserts that WSPO ignored exculpatory evidence in the form of video and witness statements.[221] However, as stated above, the Court has found that Galloway had probable cause to arrest Dendinger.

---

[216] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (quoting *Brown v. Bryan Cty.*, 219 F.3d 450, 456 (5th Cir. 2000)).

[217] *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 289 (5th Cir. 2002) (brackets and ellipses omitted).

[218] *Sanders-Burns*, 594 F.3d at 381.

[219] Rec. Doc. 71 at p. 11.

[220] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001).

[221] *Id.*

Therefore, Dendinger's constitutional rights were not violated upon his arrest. Furthermore, although Dendinger also asserts that "how the WPSO allowed Plaintiff to be treated at their Jail evidences" deliberate indifference to adopting a training policy and that the inadequacy caused the alleged harm, Dendinger has not alleged that he suffered any constitutional violation as a result of his treatment at the jail. Accordingly, because Dendinger has not demonstrated a violation of his constitutional rights, the Court grants Moving Defendants' motion for summary judgment on Dendinger's claim for municipal liability.

### 4.     Abuse of Process

Although Moving Defendants do not make any specific argument regarding Dendinger's abuse of process claim, Moving Defendants do move for summary judgment on all of Dendinger's claims against them on the basis of prescription.[222] Moving Defendants also assert that because Dendinger has offered no evidence of an actionable § 1983 violation on the part of any of the Moving Defendatns, the derivative state-law causes of actions are also without merit.[223] In Dendinger's complaint, he does allege that "all Moving Defendants, and each of them, are liable for abuse of process."[224] However, his specific allegations regarding abuse of process pertain only to Wall, Knight, and Reed.[225] Furthermore, in his opposition, Dendinger asserts that he has viable claims for only malicious prosecution and municipal liability, and

---

[222] Rec. Doc. 71 at p. 11.

[223] *Id.* at p. 23.

[224] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at p. 26.

[225] *Id.* at pp. 26–27.

makes no argument regarding an abuse of process claim against Moving Defendants.[226] Therefore, it appears that Dendinger has abandoned this claim against Galloway, Seal, and Haley.

However, even assuming that Dendinger intends to proceed with this claim against Moving Defendants, he has failed to raise a genuine issue of material fact that any of these individuals committed an abuse of process. In order to demonstrate an abuse of process claim, a plaintiff must show: "(1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."[227] Dendinger has not pointed to any evidence that any Defendant committed a willful act in the use of the process not proper in the regular prosecution of the proceeding, nor has Dendinger even alleged such an act committed by any Defendant. Accordingly, the Court grants Moving Defendants' motion for summary judgment on Dendinger's abuse of process claim against them.

### 5.    Request for Additional Discovery

Dendinger requests that, should the Court determine that he needs more evidence to sustain his burden, he be given the opportunity to conduct additional discovery.[228] In support, Dendinger attaches an affidavit of his counsel in which counsel asserts that Dendinger believes that discovery will reveal facts "probative on plaintiff's claims for malicious prosecution and for

---

[226] Rec. Doc. 71 at p. 2.

[227] *No Drama, LLC v. Caluda*, 15-211 (La. App. 5 Cir. 10/14/15); 177 So. 3d 747, 751 (citing *Waguespack, Seago and Carmichael v. Lincoln,* 99-2016 (La. App. 1 Cir. 9/22/00); 768 So. 2d 287, 290–91).

[228] Rec. Doc. 71 at p. 12.

municipal liability."[229] Furthermore, counsel asserts that discovery would reveal information regarding the failure of WPSO to properly train its employees.[230]

Pursuant to Federal Rule of Civil Procedure 56(e), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Here, Dendinger asserts that the essential facts that discovery would provide pertain to WPSO's failure to train. However, Dendinger has not raised a genuine issue of material fact regarding the existence of probable cause for his arrest, nor has Dendinger pointed to any evidence that further discovery would reveal evidence that would change this fact. The Court has already determined that a finding of a lack of probable cause is essential to Dendinger's claims for both malicious prosecution and municipal liability. Accordingly, Dendinger has failed to show that there are essential facts that could be revealed by additional discovery. Therefore, the Court denies Dendinger's request for additional discovery.

---

[229] Rec. Doc. 71-10 at p. 4.

[230] *Id.*

### IV. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Moving Defendants' "Motion for Summary Judgment Pursuant to Rule 56(b) of Federal Rules of Civil Procedure"[231] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this <u>15th</u> day of March, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[231] Rec. Doc. 68.

41