## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LOGAN N. MILLS**                                        **CIVIL ACTION**

**VERSUS**                                               **NO. 13-5477**
                                                         **c/w NO. 14-1837**

**CITY OF BOGALUSA, *et al.***                           **SECTION: "G"(3)**

### <u>ORDER</u>

In this litigation, Plaintiff Douglas L. Dendinger ("Dendinger") alleges that his constitutional rights were violated when he was falsely arrested, imprisoned, and prosecuted.[1] Pending before the Court is a "Motion for Summary Judgment on Behalf of Defendant, Julie M. Knight Pursuant to F.R.C.P. 56(b)."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

### I. Background

#### A.    *Factual Background*

In his complaint, Dendinger alleges that on August 20, 2012, he delivered a summons and complaint to Defendant Chad Cassard ("Cassard"), a former active duty police officer with the Bogalusa Police Department, on behalf of Logan Mills ("Mills"), in a suit against Cassard and other members of the Bogalusa Police Department for excessive force.[3] Dendinger alleges that

---

[1] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at p. 17.

[2] Rec. Doc. 92.

[3] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at pp. 8–9.

during Mills' criminal trial at the Washington Parish Courthouse for armed robbery, the presiding judge, Judge Hand, ordered that Melanie Mills, Logan Mills' mother, stay away from witnesses under subpoena during trial.[4] Therefore, Dendinger alleges that at the conclusion of Mills' criminal trial, after the jury had reached a verdict and been excused, and all witnesses having been discharged, he served Cassard outside the courthouse in the presence of Pamela Jean Legendre ("Legendre"), Assistant District Attorneys Julie Knight ("Knight") and Leigh Anne Wall ("Wall"), Police Chief Joe Culpepper ("Culpepper"), Captain Kendall Bullen ("Bullen"), and Scott Seals ("Seals").[5]

Dendinger alleges that his counsel received a phone call later that day from Legendre, who is a staff attorney for Judge Hand, the judge who presided over Mills' criminal trial, and Legendre allegedly accused Dendinger of committing an assault on a police officer and intimidation of a witness while attempting to serve Cassard.[6] Dendinger alleges that later that day, he was arrested at his home by Washington Parish Deputy Galloway.[7] According to Dendinger, he was then taken to Washington Parish Jail where he was verbally harassed by Culpepper and Wall.[8] Dendinger claims he was detained for roughly three hours before posting bond and being released.[9] Dendinger

---

[4] *Id.* at 8.

[5] *Id.*

[6] *Id.* at p. 9.

[7] *Id.*

[8] *Id.* at p. 10.

[9] *Id.*

further alleges that, prior to his arrest, Wall, Legendre, Knight, Culpepper, Bullen, and Seals all provided false witness statements.[10]

According to Dendinger, District Attorney Reed recused his office from the prosecution of Dendinger.[11] On May 29, 2014, the Attorney General for the State of Louisiana informed Dendinger that he had refused the charges against Dendinger.[12]

**B.      *Procedural Background***

Dendinger filed a complaint on August 12, 2014, alleging causes of action under 42 U.S.C. § 1983 for false arrest, false imprisonment, and municipal liability, as well as state law claims for malicious prosecution and abuse of process.[13] The case was originally assigned to Section "J" of this court but then was transferred to Section "C" as a related case.[14] On July 13, 2015, Judge Helen Berrigan of Section "C" dismissed with prejudice Dendinger's claims against Knight pursuant to 42 U.S.C. § 1983 for false arrest and false imprisonment on the grounds that the claims had prescribed.[15] On January 6, 2016, the case was temporarily reassigned to this section, Section

---

[10] *Id.* at pp. 12–13.

[11] *Id.* at p. 14.

[12] *Id.*

[13] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1.

[14] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 6.

[15] Rec. Doc. 67 at 5.

"G."[16] On March 4, 2016, Knight filed the instant motion.[17] On March 22, 2016, Plaintiff filed an opposition.[18] On March 25, 2016, with leave of Court, Knight filed a reply.[19]

## II. Parties' Arguments

### A.    *Knight's Arguments in Support of Summary Judgment*

Knight moves for summary judgment on Dendinger's claims for malicious prosecution and abuse of process.[20] Knight contends that in order to prevail on a claim for malicious prosecution under Louisiana law, a plaintiff must show: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the present defendant; (2) its legal causation by the present defendant against the plaintiff; (3) its bona fide termination in favor of present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage resulting to the plaintiff.[21] Knight asserts that in order to prove a claim for malicious prosecution, "a clear case must be established where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent."[22]

Knight contends that although a criminal action was commenced against Dendinger and the action was ultimately terminated in his favor, giving rise to a presumption that probable cause was lacking, here, Dendinger cannot prove that Knight was the legal cause of the prosecution

---

[16] Rec. Doc. 84-1 at 1.

[17] Rec. Doc. 92.

[18] Rec. Doc. 112.

[19] Rec. Doc. 119.

[20] Rec. Doc. 92-1 at 14, 19.

[21] *Id.* at 15 (citing *Aucoin v. Aetna Cas. & Sur. Co.*, 520 So. 2d 795, 797 (La. 3 Cir. 11/4/87)).

[22] *Id.* (citing *Aucoin*, 520 So. 2d at 797–98).

instituted against Dendinger.[23] Knight contends that it was Officer Cassard, not Knight, who was the complainant against Dendinger, and that Knight did not consult with or provide any advice or information to anyone regarding whether there was probable cause to arrest Dendinger or what charges may be brought against him.[24] Furthermore, Knight asserts that she had no connection with Dendinger's prosecution either as an Assistant District Attorney or as a witness, and that Dendinger cannot produce any evidence to the contrary.[25] Citing a Louisiana Third Circuit Court of Appeal case, *Banks v. Brookshire Brothers, Inc.*, Knight asserts that she cannot have been the legal cause of Dendinger's arrest and prosecution.[26] Nor can Dendinger produce any evidence to support the malice requirement, according to Knight.[27] Knight contends that malice exists when a charge is made with knowledge that it is false or with reckless disregard for the truth.[28] Knight asserts that at the time she gave her witness statement, she did not know Dendinger, or that he was related to Mills, and therefore cannot have harbored any malice toward him.[29]

Turning to the abuse of process claim, Knight contends that in order to prove such a claim, a plaintiff must show: (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding.[30] Knight asserts that "ulterior

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 16.

[26] *Id.* at 18 (citing 93-1616 (La. 3 Cir. 6/1/94); 640 So. 2d 680).

[27] *Id.*

[28] *Id.* (quoting *Aucoin v. Aetna Cas. & Sur. Co.*, 520 So. 2d 795, 798 (La. 3 Cir. 11/4/87)).

[29] *Id.* at 19.

[30] *Id.* at 19–20 (citing *Waguespack, Seago, and Carmichael v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00); 768 So. 2d 287, 290–91).

purpose" is a concept similar to malice but is a much more demanding test met only when an officer is acting for a specific purpose not authorized by law.[31] Knight contends that Dendinger cannot point to any such act by Knight.[32]

**B.    *Dendinger's Arguments in Opposition to the Motion for Summary Judgment***

In opposition, Dendinger contends that there is evidence of collusion between the witnesses because Knight's statement is almost a mirror image of Legendre's statement.[33] In addition, Dendinger asserts that although both Cassard and Legendre state that Dendinger was handed the papers by Mills' mother before handing them to Cassard, Legendre's deposition demonstrates that this was not true.[34]

Dendinger also contests what he asserts is Knight's description of her witness statement as her "present sense impression of the Incident," stating that Knight, as a seasoned prosecutor, was passing legal conclusions along to an inexperienced Sheriff's deputy.[35] Dendinger points out that in her witness statement, Knight discusses "intimidation" twice and uses words found in the Louisiana statutes regarding obstruction of justice and intimidation of a witness.[36] Dendinger also contends that Knight was using her position as a prosecutor to influence Deputy Galloway and that the police conducted no independent investigation.[37] According to Dendinger, it is a reasonable

---

[31] *Id.* at 20 (citing *Taylor v. State*, 617 So. 2d 1198, 1205 (La. 3 Cir. 3/31/93)).

[32] *Id.*

[33] Rec. Doc. 112 at 2.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 3.

[37] *Id.*

6

inference that the lawyers wanted to provide evidence of a connection between Melanie Mills, who was under a court order not to contact any of the witnesses in her son's trial, and Dendinger.[38] Dendinger, quoting a Louisiana Second Circuit Court of Appeal case, *Craig v. Carter*, states that when there is a "broad reliance on the facts provided by the [civilian-complainant] and only limited independent inquiry by the policy," that is sufficient to show legal causation.[39] As for the malice prong, Dendinger contends that malice is presumed because charges were refused and because Knight's conduct was reckless.[40] Dendinger avers that feelings of hatred, animosity, or ill will amount to malice but are not necessary to prove such ill will.[41] Dendinger asserts that Knight knew the limits of Judge Hand's order and that the Judge's order ended when the trial was over.[42]

Dendinger contends that, in light of the evidence produced by Knight, he does not oppose Knight's motion for summary judgment regarding his abuse of process claim.[43]

## C.   *Knight's Arguments in Further Support of Summary Judgment*

In reply, Knight contends that this Court has already concluded that there was probable cause for Dendinger's arrest and it is well settled that Louisiana law requires that the plaintiff in a malicious prosecution case demonstrate first that there was no probable cause for his arrest.[44]

---

[38] *Id.* at 3–4.

[39] *Id.* at 4.

[40] *Id.*

[41] *Id.* (citing *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987)).

[42] *Id.*

[43] *Id.* at 5.

[44] Rec. Doc. 119 at 2.

Knight asserts that the only involvement she had in Dendinger's criminal case was to give an eye witness statement of her observations and perceptions of the incident on which Galloway testified that he did not rely in determining that there was probable cause to arrest Dendinger.[45] Knight argues that the malicious prosecution claim should be dismissed on this ground alone.[46] Furthermore, she asserts that none of the exhibits attached to Dendinger's opposition demonstrate that Knight had anything to do with Dendinger's arrest or prosecution and that Galloway did not rely upon her statement in determining whether there was probable cause.[47]

### III. Law and Analysis

*A.*     *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[48] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[49] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[50]

---

[45] *Id.* at 3.

[46] *Id.*

[47] *Id.*

[48] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[49] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[50] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[51] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[52]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[53] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[54] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[55] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[56] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for

---

[51] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[52] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[53] *Celotex*, 477 U.S. at 323.

[54] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

[55] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[56] *Little*, 37 F.3d at 1075.

the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[57]

**B.      *Analysis***

Knight moves for summary judgment on Dendinger's claims against her for malicious prosecution and abuse of process.[58] In opposition, Dendinger asserts that he "is willing to dismiss the claim of abuse of process against Ms. Knight, based on the evidence she has produced."[59] Accordingly, the Court grants the motion for summary judgment regarding Dendinger's claim for abuse of process and turns to Knight's motion for summary judgment regarding the malicious prosecution claim.

In order to prove a claim for malicious prosecution, a plaintiff must show: "(1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff."[60] Although the plaintiff ordinarily bears the burden of proof on all the elements of a malicious prosecution claim, there is a presumption of malice and a lack of probable cause in cases where the prosecuting officer has dismissed the charges.[61] In those cases, the burden shifts to the defendant to show that she

---

[57] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[58] Rec. Doc. 92.

[59] Rec. Doc. 112 at 5.

[60] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 367 (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)).

[61] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143; *see also Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

acted on probable cause and without malice.[62] Knight contends: (1) that Dendinger cannot prove that she was the legal cause of the prosecution instituted against Dendinger because her only involvement in the case was providing a witness statement; (2) Dendinger cannot produce any evidence to support the malice requirement; and (3) the Court has found that Deputy Galloway had probable cause to arrest Dendinger and probable cause for the arrest is an absolute defense to a malicious prosecution claim.[63] The Court will address each of these arguments in turn.

As an initial matter, in addition to his exhibits, Dendinger requests that the Court take judicial notice of documents filed in the Eastern District of Louisiana case No. 12-cv-991, *Logan N. Mills v. City of Bogalusa*.[64] These documents include "Proof of Service of Summons/Complaint (Scott Seals)," "Proof of Service of Summons/Complaint (Chad Cassard)," "Call Docket," and "Answer filed by City of Bogalusa etc. et al."[65] Pursuant to Federal Rule of Evidence 201, the Court may judicially notice a fact that is not subject to reasonable dispute either on its own, or if a party requests it and the court is supplied with the necessary information.[66] Dendinger has attached the documents which include notations that indicate that they are in fact records in No. 12-cv-991, *Mills v. City of Bogalusa*, and Knight, in her reply, makes no objection to the Court taking judicial notice of these documents. Therefore, Dendinger's request for judicial notice is granted.

---

[62] *Keppard*, 802 So. 2d at 965.

[63] Rec. Doc. 92-1 at 18; Rec. Doc. 119 at 2.

[64] Rec. Doc. 112-3 at 2.

[65] *Id.*

[66] Fed. R. Evid. 201(b)-(c).

1.      **Legal Cause**

Knight's first argument is that she cannot be the legal cause of Dendinger's arrest or prosecution because her only involvement in the case was providing a witness statement.[67] In *Killian v. Irving*, the Louisiana First Circuit Court of Appeal stated that "[t]he decision to detain a plaintiff made by the independent actions and investigation of a sheriff's office breaks the legal causation in a malicious prosecution case."[68] In *Killian*, the plaintiff brought suit against the defendant for malicious prosecution because the defendant had executed an affidavit in which she attested that a power of attorney given to the plaintiff was a forgery.[69] The court determined that the undisputed facts established that the defendant was not the complaining witness as it was another individual who initiated contact with the sheriff's office and, "[m]ore importantly," the detective had conducted a detailed investigation and determined that other crimes, beyond those reported by the defendant, had occurred.[70] Therefore, the court concluded that the subsequent independent investigation was sufficient to break the chain of legal causation.[71]

Knight cites a Louisiana Third Circuit Court of Appeal case, *Banks v. Brookshire Brothers, Inc.*, for the proposition that she was not the legal cause of Dendinger's arrest and prosecution.[72] In *Banks*, the defendants had reported to an off duty police officer that they had seen the plaintiff

---

[67] Rec. Doc. 92-1 at 15.

[68] *Killian v. Irving*, 2010-2318, 2011 WL 2981321, at *4 (La. App. 1 Cir. 6/10/11) (citing *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418, p.32 n.20 (La. 7/10/06); 935 So. 2d 669, 690 n.20).

[69] 2011 WL 2981321, at *1.

[70] *Id.* at *4.

[71] *Id.*

[72] Rec. Doc. 92-1 at 18 (citing 93-16161 (La. 3 Cir. 6/1/94); 640 So. 2d 680).

shoplift a package of gum.[73] The court, in evaluating whether the defendants had legally caused the plaintiff's prosecution, noted that the defendants had merely reported their observations to police officers, the officers had detained the plaintiff, conducted their own investigation, and arrested the plaintiff.[74] The court stated that "any inadequacies in the investigation are not the responsibility of the defendants."[75] In addressing the probable cause prong, the court stated that the defendants had submitted documentary evidence regarding their observations and the plaintiff did not dispute any observation other than the actual theft and, additionally, the plaintiff was found with packs of gum, thereby warranting the defendants' request for a police inquiry.[76]

However, *Banks* has been distinguished by other Louisiana courts of appeal in cases where the police rely more heavily upon the witness testimony. In *Craig v. Carter*, a Louisiana Second Circuit Court of Appeal case cited by Dendinger, the court noted that there was "broad reliance on the facts provided by the store employees and only limited independent inquiry by the police."[77] The court concluded that the plaintiff had demonstrated enough evidence to show legal causation and, in support, noted that the plaintiff had left the premises before the officers arrived at the scene.[78] Here, Plaintiff contends that there is evidence of collusion between the witnesses given the similarity between the witness statements and that Knight, as an experienced prosecutor, was

---

[73] 640 So. 2d at 681.

[74] *Id.* at 682.

[75] *Id.*

[76] *Id.*

[77] 30,625 (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1070–71.

[78] *Id.*

passing along legal conclusions to the inexperienced Sheriff's deputy.[79] Knight has submitted an affidavit that she was told by a Washington Parish Sheriff's Deputy that she should proceed to the Sheriff's Office to provide a statement setting out what she had witnessed.[80] Knight asserts in her affidavit that her written witness statement was a true and accurate account and that prior to making her statement, she did not discuss the incident with any of the other witnesses.[81] Knight contends that she had no further involvement in Dendinger's case after making her statement.[82]

The evidence submitted by Dendinger demonstrates that Deputy Galloway spoke with "the several complainants/slash victims – or victim" and "after listening to their complaints, [] opted to give them a voluntary statement . . . ."[83] Galloway in his deposition testified that after obtaining the statements, he checked the Louisiana statutes to make sure that he had probable cause for the arrest, but that other than discussing the case with Wall and Sergeant Vallarie, he took no other steps in the investigation.[84] Galloway further testified that although he was aware that there was a camera at the courthouse, he did not take any steps to obtain the video that evening or at any other time.[85] Specifically, when Galloway is asked whether he made any attempt to secure the video after August 20, 2012, he states, "No, sir. Based off of I had – based off of my witness statements, I had a substantial number of credible witnesses in my opinion that I pursued the charges based

---

[79] Rec. Doc. 112 at 2–3.

[80] Rec. Doc. 92-5 at 3–4.

[81] *Id.* at 4.

[82] *Id.* at 4–5.

[83] Rec. Doc. 112-10 at 18.

[84] *Id.* at 18–39.

[85] *Id.* at 39–40.

off of probable cause."[86] Galloway states in his affidavit that he only spoke to Dendinger after Dendinger had been arrested and was being processed at the Washington Parish Sheriff's Office Central Station.[87] Therefore, Dendinger has presented evidence to show that the facts of this case are more similar to *Craig v. Carter* where there was "broad reliance on the facts provided by the store employees and only limited independent inquiry by the police."[88]

Knight also contends in her reply, without any citation to the record, that Galloway testified that he did not rely upon Knight's statement in determining whether there was probable cause to arrest Dendinger.[89] Upon review of Galloway's deposition testimony, however, it appears that Galloway only testified that Knight was not consulted as a prosecutor before or during Dendinger's arrest, and that Knight did not participate in the decision to arrest Dendinger.[90] Galloway did not testify that he did not rely upon Knight's witness statement in determining that there was probable cause, only that Knight was not consulted as a prosecutor to assist Galloway in determining whether, as a legal matter, there was probable cause to arrest Dendinger.

Dendinger has submitted evidence that Knight's statement, among others, formed the basis of Galloway's determination that there was probable cause to arrest Dendinger, and that as in *Craig*, Galloway broadly relied upon those statements without conducting an independent

---

[86] *Id.*

[87] *Id.* at 85.

[88] 30,625 (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1070–71.

[89] Rec. Doc. 119 at 3.

[90] Rec. Doc. 112-10.

investigation. Therefore, Dendinger has met his burden of submitting evidence to show that Knight was the legal cause of the commencement of the criminal proceeding.

### 2. Malice

Next, Knight argues that Dendinger cannot produce any evidence to support the malice requirement.[91] As stated above, there is a presumption of malice and a lack of probable cause in cases where the prosecuting officer has dismissed the charges.[92] In those cases, the burden shifts to the defendant to show that she acted on probable cause and without malice.[93] Dendinger has submitted evidence through his declaration that "the Attorney General (through its counsel, Frank Brindisi) served notice upon the Clerk of Court, Washington Parish, advising that the criminal charges had been refused."[94] Therefore, malice is presumed and it is Knight's burden to come forward with evidence that she acted without malice.

Knight asserts that malice exists when a charge is made with knowledge that it is false or with reckless disregard for the truth.[95] Knight submits her affidavit in which she asserts that she was not aware of Mr. Dendinger's identity or his relation to Logan Mills, and remained unaware of his identity until he filed and served the instant complaint against her.[96] Dendinger, in opposition, asserts that malice is shown by the lack of probable cause and that Knight, as a

---

[91] Rec. Doc. 92-1 at 18.

[92] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143; *see also Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

[93] *Keppard*, 802 So. 2d at 965.

[94] Rec. Doc. 112-5 at 10.

[95] Rec. Doc. 92-1 at 18 (citing *Aucoin v. Aetna Cas. & Sur. Co.*, 520 So. 2d 795, 798 (La. App. 3 Cir. 1987)).

[96] Rec. Doc. 92-5 at 5.

prosecutor, had specialized knowledge and that she was passing along legal conclusions in her witness statement.[97] Dendinger asserts that Knight knew that Judge Hand's order prohibiting Melanie Mills, or anyone acting on Logan Mills' behalf, from having contact with the police officers ended when the trial was over.[98]

In Knight's statement, she asserts that she saw a man approach Cassard and "hit him with his hand on or about his chest area" and state "Served brother," and that "We could hear the slap as he hit Cassard's chest with an envelope of papers."[99] She states "This was done in a manner to threaten and intimidate everyone involved" and noted that the court had ordered a protective order for state witnesses.[100] Dendinger, in his declaration, states that he walked over to Cassard from his right side, reached over his shoulder, and handed the envelope to him and into his hands.[101] Having reviewed the video,[102] and in light of the conflict between Dendinger's declaration regarding what he asserts happened and Knight's witness statement, the Court concludes that there is a genuine issue of material fact regarding whether Knight's allegations of criminal conduct were made with knowledge that the allegations were false or were made with reckless disregard for the truth.

---

[97] Rec. Doc. 112 at 2–3.

[98] *Id.* at 4.

[99] Rec. Doc. 112-10 at 90.

[100] *Id.*

[101] Rec. Doc. 112-5 at 4.

[102] Rec. Doc. 106. Although the video is not attached as an exhibit in opposition to the instant motion for summary judgment, Dendinger references this video in his declaration, which he does attach as an exhibit. Rec. Doc. 112-5 at 4.

###### 3.      Probable Cause

Finally, Knight contends that the Court has already determined in its March 15, 2016 Order that there was probable cause for Dendinger's arrest and therefore Knight too is entitled to summary judgment on Dendinger's malicious prosecution claim.[103] The Court in its March 15, 2016 Order concluded that Galloway, who was not present during the alleged incident, having been advised by five witnesses, including an Assistant District Attorney, the Bogalusa Police Chief, a Bogaulsa Police Captain, a former Bogalusa Police Officer, and a judicial law clerk, that Cassard had been battered by Dendinger, had probable cause to arrest Dendinger.[104] Knight contends that because the Court determined that Galloway had probable cause to arrest Dendinger, Knight can claim probable cause as an absolute defense to Dendinger's malicious prosecution claim.[105] However, the element of probable cause is based upon whether the specific defendant "had an honest and reasonable belief in the guilt of the plaintiff at the time the charges were pressed."[106] Therefore, the Court cannot rely upon its prior determination that Galloway had probable cause to arrest Dendinger, but rather must evaluate whether Knight herself had probable cause to press charges. As the Court has already stated, there is a genuine issue of material fact regarding whether Knight's allegations of criminal conduct in her witness statement were truthful and therefore whether she had and "honest and reasonable belief in the guilt of [Dendinger]."[107]

---

[103] Rec. Doc. 119 at 2.

[104] Rec. Doc. 105 at 32–35.

[105] Rec. Doc. 119 at 3.

[106] *Craig*, 718 So. 2d at 1071.

[107] *Id.*

## IV. Conclusion

Based on the foregoing, the Court concludes that there is a genuine issue of material fact regarding the elements of legal causation, malice and probable cause such that summary judgment on Dendinger's malicious prosecution claim is improper.

Accordingly,

**IT IS HEREBY ORDERED** that the "Motion for Summary Judgment on Behalf of Defendant, Julie M. Knight Pursuant to F.R.C.P. 56(b)"[108] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** regarding Dendinger's claim against Knight for abuse of process.

**IT IS FURTHER ORDERED** that the motion is **DENIED** regarding Dendinger's claim against Knight for malicious prosecution.

**NEW ORLEANS, LOUISIANA**, this 2nd  day of May, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[108] Rec. Doc. 92.

19