## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOGAN N. MILLS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5477**<br>**c/w NO. 14-1837** |
| **CITY OF BOGALUSA,** *et al.* | **SECTION: "G"(3)** |

## ORDER

In this litigation, Plaintiff Douglas L. Dendinger ("Dendinger") alleges that his constitutional rights were violated when he was falsely arrested, imprisoned, and prosecuted.[1] Pending before the Court is a "Motion for Summary Judgment on Behalf of City of Bogalusa, Joe Culpepper, Chad Cassard, Scott Seals, and Kendall Bullen."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion in part and deny the motion in part.

## I. Background

### A.    *Factual Background*

In his complaint, Dendinger alleges that on August 20, 2012, he delivered a summons and complaint to Defendant Chad Cassard ("Cassard"), a former active duty police officer with the Bogalusa Police Department, on behalf of Logan Mills ("Mills"), in a civil suit against Cassard and other members of the Bogalusa Police Department for excessive force.[3] Dendinger alleges that

---

[1] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at p. 17.

[2] Rec. Doc. 102.

[3] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at pp. 8–9.

during Mills' criminal trial Washington Parish Courthouse for armed robbery, the presiding judge, Judge Hand, ordered that Melanie Mills, Logan Mills' mother, stay away from witnesses under subpoena during trial.[4] Therefore, Dendinger alleges that at the conclusion of Mills' criminal trial, after the jury had reached a verdict and been excused, and all witnesses having been discharged, he served Cassard outside the courthouse in the presence of Pamela Jean Legendre ("Legendre"), Assistant District Attorneys Julie Knight ("Knight") and Leigh Anne Wall ("Wall"), Police Chief Joe Culpepper ("Culpepper"), Captain Kendall Bullen ("Bullen"), and Scott Seals ("Seals").[5]

Dendinger alleges that his counsel received a phone call later that day from Legendre, who is a staff attorney for Judge Hand, the judge who presided over Mills' criminal trial, and Legendre allegedly accused Dendinger of committing an assault on a police officer and intimidation of a witness while attempting to serve Cassard.[6] Dendinger alleges that later that day, he was arrested at his home by Washington Parish Deputy Galloway.[7] According to Dendinger, he was then taken to Washington Parish Jail where he was verbally harassed by Culpepper and Wall.[8] Dendinger claims he was detained for roughly three hours before posting bond and being released.[9] Dendinger further alleges that, prior to his arrest, Wall, Legendre, Knight, Culpepper, Bullen, and Seals all provided false witness statements.[10]

---

[4] *Id.* at 8.

[5] *Id.*

[6] *Id.* at p. 9.

[7] *Id.*

[8] *Id.* at p. 10.

[9] *Id.*

[10] *Id.* at pp. 12–13.

According to Dendinger, District Attorney Walter Reed recused his office from the prosecution of Dendinger.[11] On May 29, 2014, the Attorney General for the State of Louisiana informed Dendinger that he had refused the charges against Dendinger.[12]

**B.     *Procedural Background***

Dendinger filed a complaint on August 12, 2014, alleging causes of action under 42 U.S.C. § 1983 for false arrest, false imprisonment, and municipal liability, as well as state law claims for malicious prosecution and abuse of process.[13] The case was originally assigned to Section "J" of this court but then was transferred to Section "C" as a related case.[14] On January 6, 2016, the case was temporarily reassigned to this section, Section "G."[15] On March 15, 2015, Defendants City of Bogalusa, Culpepper, Bullen, Cassard, and Seals (collectively "Bogalusa Defendants") filed the instant motion.[16] On March 22, 2016, Plaintiff Dendinger filed an opposition.[17] On March 28, 2016, with leave of Court, the Bogalusa Defendants filed a reply.[18] On April 1, 2016, the Bogalusa Defendants filed a second reply.[19]

---

[11] *Id.* at p. 14.

[12] *Id.*

[13] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1.

[14] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 6.

[15] Rec. Doc. 84-1 at 1.

[16] Rec. Doc. 102.

[17] Rec. Doc. 110.

[18] Rec. Doc. 129.

[19] Rec. Doc. 140.

3

## II. Parties' Arguments

### A.   *Bogalusa Defendants' Arguments in Support of Summary Judgment*

As an initial matter, the Bogalusa Defendants assert that they adopt and reiterate the briefing, statements of indisputable facts and exhibits previously filed in connection with the motions for summary judgment on behalf of the Washington Parish Sheriff's Office Defendants and on behalf of Defendant Julie Knight.[20]

The Bogalusa Defendants assert that Dendinger has not articulated any cause of action against the City of Bogalusa because Dendinger's *Monell*[21] claims were brought specifically against the Washington Parish Sheriff's Office and the District Attorney's Office.[22] They also contend that there is no identifiable cause of action against any of the other Bogalusa Defendants.[23] They argue that claims I and II, brought pursuant to 42 U.S.C. § 1983, for false arrest and false imprisonment and have been dismissed with prejudice as prescribed and claims III and IV regarding *Monell* liability do not apply to the Bogalusa Defendants.[24] Furthermore, they assert that although Dendinger has generally alleged state law claims of malicious prosecution and abuse of process, it is not clear which claims still exist involving the Bogalusa Defendants.[25] However, the Bogalusa Defendants contend that they will attempt to address each of these claims.[26]

---

[20] Rec. Doc. 102-1 at 1 (citing Rec. Docs. 68, 69, 92).

[21] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 689 (1978).

[22] Rec. Doc. 102-1 at 4.

[23] *Id.* at 5–6.

[24] *Id.* at 6.

[25] *Id.*

[26] *Id.* at 6–7.

The Bogalusa Defendants first argue that Dendinger cannot prove any harm to Dendinger as a result of their actions because Dendinger lacks proof that the written statements provided by the Bogalusa Defendants were not their present sense impressions of what they perceived on August 20, 2012.[27] They contend that it is indisputable that none of them knew Dendinger or knew that he was related to Logan Mills during or after the time that Dendinger "slapped the process into Cassard's chest."[28] They also assert that it is indisputable that the Washington Parish Sheriff's Office evaluated the statements of the witnesses and their credibility and conducted an investigation before arresting Dendinger.[29] Furthermore, the Bogalusa Defendants contend that it is indisputable that the video of the incident shows Dendinger slap the envelope into Cassard's lapel/chest and stop Cassard's progress and that Dendinger admits that he did not have permission to touch Cassard.[30]

The Bogalusa Defendants assert that in order to hold the City of Bogalusa liable, Dendinger must prove that a municipal officer or employee violated Dendinger's constitutional rights.[31] In addition, they contend that the Court must conclude that the alleged constitutional acts committed by the municipal employee constituted an "official" policy of the City of Bogalusa.[32] Furthermore, according to the Bogalusa Defendants, Dendinger must prove that the municipality itself was a

---

[27] *Id.* at 8–9.

[28] *Id.* at 9.

[29] *Id.*

[30] *Id.* at 10.

[31] *Id.* (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978)).

[32] *Id.* (citing *Monell*, 436 U.S. at 658).

"moving force" behind the constitutional violation by the employee.[33] They assert that there is no evidence that demonstrates that Bullen, Culpepper, or Seal committed any constitutional violation that can be causally linked to an injury suffered by Dendinger and therefore there is no basis to hold the City of Bogalusa liable under § 1983 or any other state or federal statute and therefore any claims against it should be dismissed.[34]

The Bogalusa Defendants contend that in order to prevail on a claim for malicious prosecution under Louisiana law, a plaintiff must show: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the present defendant; (2) its legal causation by the present defendant against the plaintiff; (3) its bona fide termination in favor of present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage resulting to the plaintiff.[35] They also assert that in order to prove a claim for malicious prosecution, "a clear case must be established where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent."[36] The Bogalusa Defendants contend that the District Attorney decided to file a bill of information against Dendinger without input from anyone else and the matter was not dismissed due to a finding of no probable cause.[37] They argue that Bullen, Culpepper, and Seals cannot have been the legal cause of Dendinger's arrest or prosecution because they had no involvement in his prosecution other

---

[33] *Id.* at 11 (citing *Kentucky v. Graham*, 105 S. Ct. 3099, 3105 (1985)).

[34] *Id.*

[35] *Id.* at 12 (citing *Aucoin v. Aetna Cas. & Sur. Co.*, 520 So. 2d 795, 797 (La. 3 Cir. 11/4/87)).

[36] *Id.* (citing *Aucoin*, 520 So. 2d at 797–98).

[37] *Id.*

than as witnesses.[38] Furthermore, the Bogalusa Defendants assert that Dendinger cannot produce any evidence to support the malice prong of a malicious prosecution claim because at the time they gave their statements, Bullen, Culpepper, and Seals had no knowledge of Dendinger's identity, and Dendinger has no evidence that Defendants harbored malice against him at the time they gave their statements, nor can Dendinger show that the statements were false or malicious.[39]

The Bogalusa Defendants also assert that they are entitled to judgment as a matter of law on Dendinger's claim of abuse of process.[40] They assert that in order to state a claim for abuse of process under Louisiana law a plaintiff must show: (1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding.[41] The Bogalusa Defendants contend that "ulterior purpose" is a concept similar to malice but is a much more demanding test met only when an officer is acting for a specific purpose not authorized by law.[42] They contend that there is no proof that this occurred.[43] In addition, they assert that a furtherance of the legal process has to occur and there is no evidence that this occurred either.[44] Therefore, the Bogalusa Defendants argue that they are entitled to judgment as a matter of law on the abuse of process claim.[45]

---

[38] *Id.* at 13 (citing *Banks v. Brookshire Bros., Inc.*, 93-1616 (6/1/94); 620 So. 2d 680).

[39] *Id.* at 13–14.

[40] *Id.* at 14.

[41] *Id.* (citing *Waguespack, Seago, and Carmichael v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00); 768 So. 2d 287, 290–91).

[42] *Id.* at 15 (citing *Taylor v. State*, 617 So. 2d 1198, 1205 (La. 3 Cir. 3/31/93)).

[43] *Id.*

[44] *Id.*

[45] *Id.*

**B.     *Dendinger's Arguments in Opposition to the Motion for Summary Judgment***

In opposition to the motion for summary judgment regarding the malicious prosecution claim, Dendinger contends that an independent investigation by law enforcement may break the chain of causation between the complaint and the commencement of a criminal proceeding.[46] Dendinger asserts, however, that when there is "broad reliance on the facts provided by the [civilian-complainant] and only limited independent inquiry by the police," that is sufficient legal causation."[47] Dendinger asserts that here there was no independent inquiry by the Washington Parish Sheriff's Office to break the chain of causation.[48] Furthermore, Dendinger contends that only an independent investigation can sever the chain of causation between a complaint and a criminal proceeding and, in this case, Defendant Culpepper pressured and misled the Washington Parish Sheriff's Office.[49] Dendinger asserts that in a cell phone video taken at his home, Sergeant Vallarie is heard on the phone asking "What do they want me to do?"[50] Dendinger asserts that a reasonable inference can be made, from this conversation, that the Washington Parish Sheriff's Office was receiving pressure from Culpepper and the District Attorney's Office.[51]

Dendinger also asserts that Cassard did more than simply give his present sense impressions but actively participated in making a case for obstruction of justice and intimidation of a witness when he spoke of Judge Hand's order and discussed how the papers were "handed"

---

[46] Rec. Doc. 110 at 10.

[47] *Id.* (citing *Craig v. Carter*, No. 30625-CA (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1070–71).

[48] *Id.*

[49] *Id.*

[50] *Id.* (citing Rec. Doc. 110-2 at 7).

[51] *Id.*

to Dendinger by Melanie Mills.[52] Dendinger contends that the allegation that Melanie Mills handed him the papers was false.[53] Dendinger contends that Bullen and Seals state their impressions but these impressions were false.[54] Dendinger asserts that the manufacturing of evidence and the state's use of such evidence to obtain a wrongful conviction "indisputably" denies a person's rights secured by the Due Process Clause.[55]

In response to the Bogalusa Defendants' argument that Dendinger has not demonstrated malice because the Bogalusa Defendants did not know who Dendinger was, Dendinger contends that there is a presumption of malice and a lack of probable cause where the prosecution discharges an action, and here the Attorney General refused all charges against him.[56] Dendinger asserts that the Bogalusa Defendants have failed to rebut this presumption of a lack of probable cause because they do not discuss the criminal charges against Dendinger.[57] Dendinger contends that the presumption of malice is raised because of the lack of probable cause.[58] In addition, Dendinger asserts as evidence of animosity that Patrick Lyons, another Bogalusa police officer, pointed his finger like a pistol at Logan Mills' brother while in the courtroom and that Bullen swore at Dendinger and threw the envelope at him.[59] Furthermore, Dendinger contends that Seals asking

---

[52] *Id.* at 11.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 12 (citing *Young v. Biggers*, 938 F.2d 565, 570 (5th Cir. 1999)).

[56] *Id.* (citing *Hope v. City of Shreveport*, 37-759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139).

[57] *Id.*

[58] *Id.* at 12–13 (citing *Morin v. Caire*, 77 F.3d 116, 122 (5th Cir. 1996)).

[59] *Id.* at 13.

for Melanie Mills' address demonstrates animosity, ill will and "an investment in getting revenge against anyone associated with Logan Mills."[60]

As for the element of damages, Dendinger contends that damages are presumed when the other elements of malicious prosecution are established.[61] Dendinger also asserts that he has responded to discovery requests and has provided documentation of payment to an attorney and his treating physicians are in possession of his medical records.[62]

Turning to his abuse of process claim, Dendinger asserts that there is evidence that the Bogalusa Police Department was involved in the arrest of Dendinger and his detention and when he was brought into the jail, there were people present "who had no business being there" and there is evidence that it was a "circus."[63] Finally, addressing the liability of the City of Bogalusa, Dendinger contends that he has sued the City of Bogalusa and Chief Joe Culpeper in his official capacity.[64] Dendinger asserts that Chief Culpepper is the chief law enforcement officer of his municipality and he submitted a false witness statement to the Washington Parish Sheriff's Office.[65] Therefore, Dendinger asserts that because the chief law enforcement officer committed acts attributable to the City of Bogalusa, the City should not be dismissed.[66]

---

[60] *Id.*

[61] *Id.* (citing *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143).

[62] *Id.* at 13–14.

[63] *Id.* at 14.

[64] *Id.*

[65] *Id.* at 14–15 (citing *Dugas v. City of Breaux Bridge Police Dep't*, 1999-1320 (La. App. 3 Cir. 2/2/00); 757 So. 2d 741, 743).

[66] *Id.* at 15.

## C.    Bogalusa Defendants' Arguments in Further Support of Summary Judgment

In reply, the Bogalusa Defendants assert that although Plaintiff claims that there was no independent investigation by the Washington Parish Sheriff's Office, Detective Galloway, the investigating and arresting officer, testified that his investigation took place over the course of 4 to 5 days and included additional conversation with an Assistant District Attorney to determine the proper charges to lodge against Dendinger.[67] In response to Dendinger's assertion that Chief Culpepper influenced the investigation, the Bogalusa Defendants contend that this is an "absolute fabrication" and there is "simply not credible evidence to support Plaintiff's theory."[68] The Bogalusa Defendants also assert that Dendinger offers no proof to support his argument that Cassard was attempting to build a case against Dendinger or his argument that the statements of Bullen and Seals were false.[69]

Turning to probable cause, the Bogalusa Defendants assert that the presumption of a lack of probable cause does not apply to the Bogalusa Defendants because they did not arrest or prosecute Dendinger.[70] In addition, they contend that this Court has already determined as a matter of law that there was probable cause for the arrest of Dendinger, which constitutes another reason to reject Dendinger's arguments.[71] Furthermore, the Bogalusa Defendants assert that Plaintiff cites *Jalou II, Inc. v. Liner* for his assertion that malice is presumed because of the lack of probable

---

[67] Rec. Doc. 129 at 2.

[68] *Id.* at 3.

[69] *Id.*

[70] *Id.*

[71] *Id.* at 4.

cause, but the actual ruling of that case does not support his assertion.[72] The Bogalusa Defendants therefore contend that they are entitled to summary judgment on Dendinger's claim for malicious prosecution.[73]

As for the abuse of process claim, the Bogalusa Defendants assert that Dendinger merely states that there is sufficient evidence to preclude summary judgment but provides no evidence of record to oppose the motion for summary judgment.[74] They assert that Dendinger fails to prove malice and there is no proof in the record that Culpepper, Bullen, Cassard and/or Seals engaged in an intentional act that they took for a specific purpose not authorized by law.[75] The Bogalusa Defendants contend that once they submitted their initial statements, Culpepper, Bullen, Cassard and Seals were never consulted by the Washington Parish Sheriff's Office or the District Attorney regarding probable cause or what charges to file.[76]

Finally, addressing the liability of the City of Bogalusa, the Bogalusa Defendants contend that the case law cited by Dendinger does not support any claim against the City of Bogalusa.[77] Nor, according to the Bogalusa Defendants, is there any evidence that reveals that Culpepper, Bullen, and/or Seals committed any constitutional violation that can be causally linked to some injury suffered by Dendinger.[78] Therefore, they assert that Dendinger cannot prove that any alleged

---

[72] *Id.* (citing 2010-0048 (La. App. 1 Cir. 6/16/10); 43 So. 3d 1023, 1040).

[73] *Id.*

[74] *Id.*

[75] *Id.* at 5.

[76] *Id.*

[77] *Id.* at 6.

[78] *Id.*

misconduct was pursuant to an official policy of the police department or City of Bogalusa and therefore there is no basis to hold the City of Bogalusa liable under § 1983.[79]

In a second reply filed with leave of Court, the Bogalusa Defendants attach Dendinger's answers to interrogatories in which Dendinger admits that he is not suing the City of Bogalusa, Culpepper, Bullen, Cassard, or Seals for abuse of process.[80] Therefore, the Bogalusa Defendants assert that they are entitled to judgment dismissing Dendinger's abuse of process claim.[81]

### III. Law and Analysis

#### A.   *Legal Standard on a Motion for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[82] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[83] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[84] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party,"

---

[79] *Id.*

[80] Rec. Doc. 140 at 1.

[81] *Id.* at 2.

[82] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[83] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[84] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[85] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[86]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[87] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[88] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[89] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[90] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[91]

---

[85] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[86] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[87] *Celotex*, 477 U.S. at 323.

[88] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

[89] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[90] *Little*, 37 F.3d at 1075.

[91] *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

**B.**     *Analysis*

The Bogalusa Defendants move for summary judgment on all of Dendinger's claims against them.[92] In opposition, Dendinger asserts that Bullen, Culpepper, Cassard, and Seals are liable to Dendinger for malicious prosecution and abuse of process and that the City of Bogalusa is liable under *Monell v. Department of Social Services of the City of New York* because the acts of Culpepper, the chief law enforcement officer for the City of Bogalusa, can be attributed to the City.[93] The Court will address each of the claims in turn.

As an initial matter, the Court notes that the Bogalusa Defendants assert that they "adopt and reiterate the briefing, statements of indisputable facts and exhibits previously filed as the motions for summary judgment on behalf of the Washington Parish Sheriff's Office Defendants ('WPSO') (Rec. Docs. 68 & 69) and on behalf of Julie Knight (['']Knight') (Rec. Doc. 92)."[94] It is the parties' responsibility on a motion for summary judgment to inform the Court of the basis for its motion and to identify those portions of the record that they believe demonstrate the absence of a genuine issue of material fact.[95] The Court will not make arguments for the parties or dig through the record in order to determine which arguments are applicable to the Bogalusa Defendants. Accordingly, if the Bogalusa Defendants have not specifically articulated how an argument made by another defendant entitles the Bogalusa Defendants to summary judgment, the Court will not address those arguments.

---

[92] Rec. Doc. 102.

[93] Rec. Doc. 110.

[94] Rec. Doc. 102-1 at 1.

[95] *Celotex*, 477 U.S. at 323.

1.        **False Arrest, False Imprisonment, and Procedural Due Process Violations**

The Bogalusa Defendants first assert that any claims brought against them pursuant to 42 U.S.C. § 1983 have been dismissed as prescribed.[96] In Dendinger's complaint, he alleges that "Defendants, and each of them, without just and legal cause, violated Plaintiff Dendinger's clearly established rights under the laws and Constitution of the United States. Plaintiff was falsely arrested, imprisoned, and thereafter, prosecuted as a result."[97] Dendinger also alleges in his complaint that his procedural due process rights were violated.[98] The Bogalusa Defendants did not file a motion to dismiss the § 1983 claims and cite only to Judge Berrigan's Orders dismissing the § 1983 claims against Legendre, Wall, Knight, and Reed.[99] Therefore, it appears that any § 1983 claim brought against the Bogalusa Defendants have not yet been dismissed.

However, Dendinger does not discuss any § 1983 claims against the Bogalusa Defendants in his opposition to the motion for summary judgment, and conceded in his opposition to Sheriff Randy "Country" Seal, Chief Deputy Michael Haley, and Deputy S. Galloway's "Motion for Summary Judgment Pursuant to Rule 56(b) of Federal Rules of Civil Procedure" that his § 1983 claims against those defendants had prescribed.[100] Therefore, it appears that Dendinger has abandoned any § 1983 claim he had alleged against the Bogalusa Defendants. Accordingly, the

---

[96] Rec. Doc. 102-1 at 1–2.

[97] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at 17.

[98] *Id.* at 18.

[99] Rec. Doc. 102-1 at 1–2 (citing Rec. Doc. 67).

[100] Rec. Doc. 71 at 1.

Court grants the Bogalusa Defendants' motion for summary judgment regarding Dendinger's § 1983 claims against Bullen, Cassard, Culpepper, and Seals.

### 2.    Malicious Prosecution

In order to prove a claim for malicious prosecution, a plaintiff must show: "(1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff."[101] Although the plaintiff ordinarily bears the burden of proof on all the elements of a malicious prosecution claim, there is a presumption of malice and a lack of probable cause in cases where the prosecuting officer has dismissed the charges.[102] In those cases, the burden shifts back to the defendant to show that she acted on probable cause and without malice.[103] The Bogalusa Defendants contend: (1) that Dendinger cannot prove that they were the legal cause of the prosecution instituted against Dendinger because their only involvement in the case was the provision of a witness statement; (2) Dendinger cannot produce any evidence to support the malice requirement; and (3) Dendinger cannot prove any harm caused by the Bogalusa Defendants.[104]

As an initial matter, in addition to his exhibits, Dendinger requests that the Court take judicial notice of documents filed in the Eastern District of Louisiana case No. 12-cv-991, *Logan*

---

[101] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 367 (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)).

[102] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143. *See also Keppard v. AFC Enters., Inc.*, 2000-2474 (La App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

[103] *Keppard*, 802 So. 2d at 965.

[104] Rec. Doc. 102-1 at 8–13.

*N. Mills v. City of Bogalusa*.[105] These documents include "Proof of Service of Summons/Complaint (Scott Seals)," "Proof of Service of Summons/Complaint (Chad Cassard)," "Call Docket," and "Answer filed by City of Bogalusa etc. et al."[106] Pursuant to Federal Rule of Evidence 201, the Court may judicially notice a fact that is not subject to reasonable dispute either on its own, or if a party requests it and the court is supplied with the necessary information.[107] Dendinger has attached the documents he requests that the Court take judicial notice of which include notations that indicate that they are in fact records in No. 12-cv-991, *Logan N. Mills v. City of Bogalusa*. The Bogalusa Defendants, in their replies, make no objection to the Court taking judicial notice of these documents. Therefore, Dendinger's request for judicial notice is granted.

### a.   *Legal Cause*

First, the Bogalusa Defendants argue that they cannot have been the legal cause of Dendinger's arrest or prosecution because they had no role in his case other than providing a witness statement.[108] In *Killian v. Irving*, the Louisiana First Circuit Court of Appeal stated that "[t]he decision to detain a plaintiff made by the independent actions and investigation of a sheriff's office breaks the legal causation in a malicious prosecution case."[109] In *Killian*, the plaintiff brought suit against the defendant for malicious prosecution because the defendant had executed

---

[105] Rec. Doc. 110-4 at 2.

[106] *Id.*

[107] Fed. R. Evid. 201(b)-(c).

[108] Rec. Doc. 102-1 at 12–13.

[109] *Killian v. Irving*, 2010-2318, 2011 WL 2981321, at *4 (La. App. 1 Cir. 6/10/11) (citing *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418, p. 32 n.20 (La. 7/10/06); 935 So. 2d 669, 690 n.20).

18

an affidavit in which she attested that a power of attorney given to the plaintiff was a forgery.[110] The court determined that the undisputed facts established that the defendant was not the complaining witness as it was another individual who initiated contact with the sheriff's office and, "[m]ore importantly," the detective had conducted a detailed investigation and determined that the other crimes, beyond those reported by the defendant, had occurred.[111] Therefore, the court concluded that the subsequent independent investigation was sufficient to break the chain of legal causation.[112]

The Bogalusa Defendants cite a Louisiana Third Circuit Court of Appeal case, *Banks v. Brookshire Brothers, Inc.*, for the proposition that they were not the legal cause of Dendinger's arrest and prosecution.[113] In *Banks*, the defendants had reported to an off duty police officer that they had seen the plaintiff shoplift a package of gum.[114] The court, in evaluating whether the defendants had legally caused the plaintiff's prosecution, noted that the defendants had merely reported their observations to police officers, the officers had detained the plaintiff, conducted their own investigation, and arrested the plaintiff.[115] The court stated that "any inadequacies in the investigation are not the responsibility of the defendants."[116] In addressing the probable cause prong, the court stated that the defendants had submitted documentary evidence regarding their

---

[110] 2011 WL 2981321, at *1.

[111] *Id.* at *4.

[112] *Id.*

[113] Rec. Doc. 102-1 at 13 (citing 93-16161 (La. 3 Cir. 6/1/94); 640 So. 2d 680).

[114] 640 So. 2d at 681.

[115] *Id.* at 682.

[116] *Id.*

observations and the plaintiff did not dispute any observation other than the actual theft and, additionally, the plaintiff was found with packs of gum, thereby warranting the defendants' request for a police inquiry.[117]

However, *Banks* has been distinguished by other Louisiana courts of appeal in cases where the police rely more heavily upon the witness testimony. In *Craig v. Carter*, a Louisiana Second Circuit Court of Appeal case cited by Dendinger, the court noted that there was "broad reliance on the facts provided by the store employees and only limited independent inquiry by the police."[118] The court concluded that the plaintiff had demonstrated enough evidence to show legal causation and, in support, noted that the plaintiff had left the premises before the officers arrived at the scene.[119]

The Bogalusa Defendants contend that, in this case, there was an independent investigation conducted by Detective Galloway that broke the chain of causation.[120] The evidence submitted by Dendinger demonstrates that Deputy Galloway spoke with "the several complainants/slash victims – or victim" and "after listening to their complaints, [] opted to give them a voluntary statement . . . ."[121] Galloway in his deposition testified that after obtaining the statements, he checked the Louisiana statutes to make sure that he had probable cause for the arrest, but that other than discussing the case with Wall and Sergeant Vallarie, he took no other steps in the

---

[117] *Id.*

[118] 30,625 (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1070–71.

[119] *Id.*

[120] Rec. Doc. 129 at 2–3.

[121] Rec. Doc. 110-5 at 18.

investigation.[122] Galloway further testified that although he was aware that there was a camera at the courthouse, he did not take any steps to obtain the video that evening or at any other time.[123] Specifically, when Galloway is asked whether he made any attempt to secure the video after August 20, 2012, he states, "No, sir. Based off of I had – based off of my witness statements, I had a substantial number of credible witnesses in my opinion that I pursued the charges based off of probable cause."[124] Galloway states in his affidavit that he only spoke to Dendinger after Dendinger had been arrested and was being processed at the Washington Parish Sheriff's Office Central Station.[125] Therefore, Dendinger has presented evidence to show that the facts of this case may be more similar to *Craig v. Carter* where there was "broad reliance on the facts provided by the store employees and only limited independent inquiry by the police."[126]

Dendinger also argues that any investigation conducted by Galloway was not independent.[127] In support, he cites the cell phone video taken at Dendinger's home, where Sergeant Vallarie ("Vallarie") is heard on the phone asking, "What do they want me to do?"[128] Dendinger contends that "[t]he reasonable inference is that the [Washington Parish Sheriff's Office] was feeling pressure from a police chief, Chief Joe Culpepper, and the District Attorney's Office" and that the "they" that Vallarie is referring to were Culpepper and the District Attorney's

---

[122] *Id.* at 18–39.

[123] *Id.* at 39–40.

[124] *Id.*

[125] *Id.* at 85.

[126] 30,625 (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1070–71.

[127] Rec. Doc. 110 at 10.

[128] *Id.* (citing Rec. Doc. 110-8).

Office.[129] In reply, the Bogalusa Defendants assert that this argument is an "absolute fabrication and must be disregarded as absolute conjecture and a giant unsupported self-serving leap to try and defeat summary judgment."[130]

The cases discussed above demonstrate that an individual who gives a witness statement can be the legal cause of the commencement of criminal proceedings even where they were not involved in the decision to arrest or involved in the prosecution. Dendinger has submitted evidence that the statements of Culpepper, Bullen, Cassard, and Seals,[131] among others, formed the basis of Galloway's determination that there was probable cause to arrest Dendinger, and that as in *Craig*, Galloway broadly relied upon those statements without conducting an independent investigation. Therefore, Dendinger has met his burden of submitting evidence to show that Culpepper, Bullen, Cassard, and Seals may have been the legal cause of the commencement of the criminal proceeding.

### b.    Malice

Next, the Bogalusa Defendants argue that Dendinger cannot produce any evidence to support the malice requirement.[132] As stated above, there is a presumption of malice and a lack of probable cause in cases where the prosecuting officer has dismissed the charges.[133] In those cases,

---

[129] *Id.*

[130] Rec. Doc. 129 at 3.

[131] Rec. Docs. 68-5, 102-5, 102-6, 102-7

[132] Rec. Doc. 102-1 at 13.

[133] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143; *see also Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

the burden shifts to the defendants to show that they acted on probable cause and without malice.[134]

Dendinger has submitted evidence through his declaration that "the Attorney General (through its

counsel, Frank Brindisi) served notice upon the Clerk of Court, Washington Parish, advising that

the criminal charges had been refused."[135] Therefore, malice is presumed and it is the Bogalusa

Defendants' burden to come forward with evidence that they acted without malice.

The Bogalusa Defendants assert that malice exists when a charge is made with knowledge

that it is false or with reckless disregard for the truth.[136] The Bogalusa Defendants contend, without

citing to the record, that at the time that they gave their statements, they did not know Dendinger's

identity or that he was connected to Logan Mills and therefore they cannot have harbored malice

against him when giving their statements.[137] In opposition, Dendinger contends that there is a

presumption of malice because of the lack of probable cause and that there is evidence of the

Bogalusa Defendants' hatred, animosity, and ill will toward Dendinger.[138] Dendinger asserts that

these witnesses manufactured evidence that was used to arrest him.

The Bogalusa Defendants state, without further explanation, that the ruling in the case cited

by Dendinger, *Jalou II, Inc. v. Liner*, does not support Dendinger's argument that malice is

presumed because of a lack of probable cause. In *Liner*, the Louisiana First Circuit Court of Appeal

stated that malice may be inferred from a lack of probable cause or a finding of reckless disregard

---

[134] *Keppard*, 802 So. 2d at 965.

[135] Rec. Doc. 112-5 at 10.

[136] Rec. Doc. 102-1 at 13 (citing *Aucoin v. Aetna Cas. & Sur. Co.*, 520 So. 2d 795, 798 (La. App. 3 Cir. 1987)).

[137] *Id.*

[138] Rec. Doc. 110 at 13.

for the other person's rights.[139] However, the court ultimately concluded that the plaintiffs had failed to show that they could likely prevail on the issue of causation because the decision to detain the plaintiff was made after the independent investigation of the detective.[140] Legal causation and malice are two separate elements of a malicious prosecution claim. Although the court in *Liner* did not ultimately make a determination regarding malice, the court acknowledged that malice can be presumed from a lack of probable cause. The Court will separately address Dendinger's evidence of malice on behalf of Cassard, Bullen, Culpepper, and Seals.

### i.     Cassard

Dendinger contends that Cassard did more than offer his "present sense impressions" when he made his statement.[141] Dendinger contends that Cassard made a false statement when he asserted that he had been "slapped [] in the chest" with the envelope.[142] In his declaration, Dendinger contends that he never hit Cassard and simply walked over to him, reached over his shoulder, and handed him an envelope.[143] Furthermore, Dendinger asserts that Cassard falsely claimed that Dendinger was handed the papers by Melanie Mills in violation of Judge Hand's order.[144] In his voluntary statement, Cassard states that the person who hit him in the chest had been "handed the papers by the mother of Logan Mills who was ordered by Judge A.J. Hand earlier

---

[139] 2010-0048 (La. App. 1 Cir. 6/16/10); 43 So. 3d 1023.

[140] *Id.* at 1040.

[141] Rec. Doc. 110 at 11.

[142] Rec. Doc. 110-1 at 7; Rec. Doc. 102-7.

[143] Rec. Doc. 110-2 at 4.

[144] *Id.*

in the trial to not making [sic] any contact with any victims or witnesses involved in the case."[145] In Dendinger's declaration, Dendinger asserts that he obtained the service documents from Melanie Mills the weekend before he effected service and kept them in his truck for a couple of days before serving Cassard.[146] Therefore, according to Dendinger's timeline of events, Cassard could not have seen Melanie Mills hand Dendinger the service of process papers. Dendinger asserts that the false allegation that he had received the papers from Melanie Mills supported a claim of obstruction of justice and intimidation of a witness.[147] In light of the conflict between the facts alleged in Dendinger's declaration and Cassard's witness statement, the Court concludes that there is a genuine issue of material fact regarding whether Cassard's allegations of criminal conduct were made with the knowledge that they were false or made with reckless disregard for the truth and therefore were made with malice.

### ii.    Bullen

Bullen, in his voluntary statement, asserts that an individual "hit Officer Cassard with force in the chest area with a packet of papers."[148] In his declaration, Dendinger contends that he never hit Cassard and simply walked over to him, reached over his shoulder, and handed him an envelope.[149] Furthermore, the Louisiana Supreme Court has held that "[a]ny feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice."[150] Dendinger has

---

[145] Rec. Doc. 102-7.

[146] Rec. Doc. 110-2 at 3.

[147] Rec. Doc. 110 at 11.

[148] Rec. Doc. 102-6.

[149] Rec. Doc. 110-2 at 4.

[150] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987).

submitted evidence that after he handed Cassard the envelope, Bullen yelled expletives at Dendinger and threw the envelope at him.[151] Therefore, there is a genuine issue of material fact regarding whether Bullen acted with malice in making his statement.

### iii. Culpepper

Culpepper, in his voluntary statement, asserts that he observed an individual "slop [sic] Chad Cassard in the chest w/an envelope."[152] In his declaration, Dendinger contends that he never hit Cassard and simply walked over to him, reached over his shoulder, and handed him an envelope.[153] Furthermore, Dendinger points to Culpepper's deposition where Culpepper was asked, "Did you observe the process server actually put the envelope onto Mr. Cassard?" and Culpepper answered "No, sir."[154] When Culpepper was asked during the deposition, "What did you observe in connection with that incident at the courthouse?" he responded "Nothing, I was – my attention was focused elsewhere. There was the commotion. That's what drew my attention to that was – had gone on outside, but it was over by the time I was made aware of it."[155] Dendinger also asserts in his declaration that Culpepper was present at the Washington Parish Jail and whistled the theme song from the "Good, Bad & the Ugly" movie as Dendinger walked to the booking room, a fact that Culpepper denies.[156]

---

[151] Rec. Doc. 110-2 at 5.

[152] Rec. Doc. 102-5.

[153] Rec. Doc. 110-2 at 4.

[154] Rec. Doc. 110-9 at 9–10.

[155] *Id.* at 10.

[156] Rec. Doc. 110-2 at 8; Rec. Doc. 110-9 at 12.

The Bogalusa Defendants point to Culpepper's testimony at a separate trial held in June 2015, *Walter R. Aswell v. City of Bogalusa*, in which Culpepper testified that he does not even remember writing his voluntary statement and that although he was inside the courthouse at the time of the incident, he had an open view of the front of the courthouse and saw a process server slap the envelope on Cassard's chest.[157] However, given that there is evidence in the record of both animosity toward Dendinger and evidence suggesting that Culpepper gave a false statement, there is a genuine issue of material fact regarding whether Culpepper acted with malice in making his statement.

### iv.    Seals

Seals, in his voluntary statement, asserts that he observed an individual "hit Chad Cassard in the chest with a bundle of papers."[158] In his declaration, Dendinger contends that he never hit Cassard and simply walked over to him, reached over his shoulder, and handed him an envelope.[159] Dendinger also asserts in his declaration that Seals came into the Booking Room and asked him for his sister, Melanie Mills', address, telling him that she would be arrested as well.[160] Dendinger argues that this shows "animosity and ill will" and "an investment in getting revenge against anyone associated with Logan Mills."[161] Having reviewed the video,[162] and in light of the conflict

---

[157] Rec. Doc. 102-16 at 8–10.

[158] Rec. Doc. 68-5 at 7.

[159] Rec. Doc. 110-2 at 4.

[160] *Id.* at 8.

[161] Rec. Doc. 110 at 13.

[162] Rec. Doc. 113.

between the allegations in Dendinger's declaration regarding his service of process upon Cassard and Seals' witness statement, the Court concludes that there is a genuine issue of material fact regarding whether Seals' allegations of criminal conduct were made with the knowledge that they were false or made with reckless disregard for the truth and therefore whether he acted with malice.

### c. Probable Cause

The Bogalusa Defendants argue, without citing to any authority, that because they did not arrest or prosecute Dendinger, the existence of probable cause for the arrest is irrelevant to them.[163] The Bogalusa Defendants also contend that this Court has already determined, as a matter of law, that there was probable cause for Dendinger's arrest.[164]

The Court, in its March 15, 2016 Order, concluded that Galloway, who was not present during the alleged incident, having been advised by five witnesses, including an Assistant District Attorney, the Bogalusa Police Chief, a Bogaulsa Police Captain, a former Bogalusa Police Officer, and a judicial law clerk, that Cassard had been battered by Dendinger, had probable cause to arrest Dendinger.[165] The Bogalusa Defendants contend that because the Court determined that Galloway had probable cause to arrest Dendinger, they too claim probable cause as a defense to Dendinger's malicious prosecution claim.[166] However, the element of probable cause is based upon whether the specific defendant "had an honest and reasonable belief in the guilt of the plaintiff at the time the charges were pressed."[167] Therefore, the Court cannot rely upon its prior determination that

---

[163] Rec. Doc. 129 at 3.

[164] *Id.* at 4.

[165] *Id.*

[166] Rec. Doc. 119 at 3.

[167] *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1071.

Galloway had probable cause to arrest Dendinger, but rather must evaluate whether the Bogalusa Defendants had probable cause to press charges. As the Court has already stated, there is a genuine issue of material fact regarding whether Cassard, Culpepper, Bullen, and Seals' allegations of criminal conduct in their witness statement were truthful and therefore whether they had an "honest and reasonable belief in the guilt of [Dendinger]."[168]

### d.    Damages

The Bogalusa Defendants also argue that Dendinger cannot prove that they caused him harm.[169] In opposition, Dendinger cites a Louisiana Second Circuit Court of Appeal case, *Hope v. Shreveport*, where the court determined that "[w]here the other elements of malicious prosecution are established, the element of damages is presumed."[170] Dendinger also asserts that he has provided documentation of payment he made to an attorney and appears to indicate that he has sought medical treatment as a result of this incident.[171] The Court, having concluded that there is a genuine issue of material fact regarding all of the other elements of a malicious prosecution claim, determines that damages are presumed. The Bogalusa Defendants have submitted no evidence to rebut this presumption. Accordingly, the Court denies the Bogalusa Defendants' motion for summary judgment on Dendinger's malicious prosecution claim.

---

[168] *Id.*

[169] Rec. Doc. 102-1 at 10.

[170] 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1146.

[171] Rec. Doc. 110 at 14.

### 3.     Abuse of Process

The Bogalusa Defendants also assert that they are entitled to judgment as a matter of law on Dendinger's claim for abuse of process.[172] In order to prove an abuse of process claim, a plaintiff must prove: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."[173] Dendinger contends that there is sufficient evidence making summary judgment on his abuse of process claim improper because the Bogalusa police officers were involved in the quick arrest of Dendinger and his detention in handcuffs for three hours.[174] In support of their motion for summary judgment, the Bogalusa Defendants submit Dendinger's answers to interrogatories in which Dendinger states that "Plaintiff contends that Defendants Walter P. Reed, Leigh Anne Wall, and Julie Knight are liable for abuse of process (Claim VI), but not the Bogalusa defendants (City of Bogalusa, Joe Culpepper, Kendall Bullen, Chad Cassard, and Scott Seals)."[175]

The Fifth Circuit instructs that "[a] judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them."[176] While "a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention. A statement made by counsel during the course of trial may be considered a judicial admission if

---

[172] Rec. Doc. 102-1 at 14.

[173] *Waguespack, Seago and Carmichael v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00); 768 So. 2d 287, 290–91.

[174] Rec. Doc. 110 at 14.

[175] Rec. Doc. 140-1 at 10.

[176] *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).

it was made intentionally as a waiver, releasing the opponent from proof of fact."[177] In the first set of interrogatories propounded by the Bogalusa Defendants, counsel for Dendinger states not just once, but states three times that Dendinger is alleging that "Defendants Walter P. Reed, Leigh Anne Wall, and Julie Knight are liable for abuse of process (Claim VI), but not the Bogalusa defendants (City of Bogalusa, Joe Culpepper, Kendall Bullen, Chad Cassard, and Scott Seals)."[178] In *Martinez v. Bally's Louisiana, Inc.*, the Fifth Circuit determined that the district court did not err in concluding that the plaintiff's counsel's statement waiving all claims of physical injury during a deposition was a judicial admission because the counsel's statements were intended to relieve the defendant from discovery of facts related to physical injury.[179] As in *Martinez*, it appears that these statements made in Dendinger's answer to interrogatories were made intentionally as a waiver of the claims. Therefore, the Court grants the Bogalusa Defendants' motion for summary judgment regarding Dendinger's claims for abuse of process.

### 4.    Liability of the City of Bogalusa

The Bogalusa Defendants contend that Dendinger has not articulated any cause of action against the City of Bogalusa as the *Monell* claims were raised only against the Washington Parish Sheriff's Office and the District Attorney's Office, not against the City of Bogalusa.[180] The Supreme Court has stated an official capacity suit represents "only another way of pleading an action against an entity of which an officer is an agent."[181] "As long as the government entity

---

[177] *Id.*

[178] Rec. Doc. 140-1 at 10–11.

[179] 244 F.3d 474, 776–77 (5th Cir. 2001).

[180] Rec. Doc. 102-1 at 4.

[181] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

receives notice and has an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against an entity."[182] In his complaint, Dendinger alleged that he brought claims against both the City of Bogalusa and Chief of Police Culpepper in his individual and official capacities.[183] Dendinger brought a cause of action against Culpepper pursuant to 42 U.S.C. § 1983, alleging that Culpepper had fabricated evidence against him by falsely stating in a voluntary witness statement that Culpepper had observed Dendinger slap Cassard in the chest with an envelope.[184] Therefore, because Dendinger has stated a cause of action against Culpepper in his official capacity, Dendinger has stated a cause of action against the City of Bogalusa. Furthermore, the City of Bogalusa was specifically named as a defendant, therefore, it had notice of the suit and has been provided the opportunity to respond.

However, the Bogalusa Defendants assert that even assuming that Dendinger has alleged claims against the City of Bogalusa, there is no evidence that reveals that Culpepper, Bullen, and/or Seals committed any constitutional violation that can be causally linked to an injury suffered by Dendinger.[185] In *Monell v. Department of Social Services of the City of New York*, the United States Supreme Court held that municipalities and municipal officials sued in an official capacity may be held liable under § 1983.[186] To maintain a § 1983 claim against a municipality, a plaintiff must

---

[182] *Id.* at 166.

[183] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at 2.

[184] Rec. Doc. 1 at 13.

[185] Rec. Doc. 102-1 at 11.

[186] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 689 (1978).

show that officials acted in accordance with an official policy or custom.[187] Thus, municipalities are not vicariously liable for rights violations committed by their employees, but they are liable whenever "their official policies cause their employees to violate another person's constitutional rights."[188] The Supreme Court has instructed that:

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.[189]

Therefore, Dendinger must show not only that his constitutional rights were violated, but that the City of Bogalusa was the "moving force" behind his injury.[190]

The Bogalusa Defendants assert that Dendinger cannot prove that any alleged misconduct on the part of Culpepper, Bullen, and/or Seals was a constitutional violation made pursuant to an "unknown official policy of the police department and/or The City of Bogalusa."[191] In opposition, Dendinger argues that Culpepper is the chief law enforcement officer of his municipality and his act, in submitting a false witness statement, is attributable to the City of Bogalusa.[192] Dendinger

---

[187] *James v. Texas Collin Cty.*, 535 F.3d 365, 375 (5th Cir. 2008) (citing *Monell*, 436 U.S. at 658).

[188] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602 (5th Cir. 2001).

[189] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

[190] *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) ("Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation."); *see also Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) ("[M]unicipal liability . . . requires proof of . . . a policy maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom."); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1243 (5th Cir.1993) (describing several ways to meet this burden).

[191] Rec. Doc. 102-1 at 11.

[192] Rec. Doc. 110 at 14–15.

asserts that the manufacturing of evidence denies an individual their Due Process rights.[193] In support, Dendinger cites the Fifth Circuit case *Young v. Biggers*, where the court stated that "a reasonable person, however, surely would realize that 'framing' someone for a crime that he did not commit deprives that person of his constitutional rights."[194]

Although the Bogalusa Defendants assert that there is no evidence of an official policy of the police department related to any constitutional violation, the Fifth Circuit has held that "a single decision may create municipal liability *if* that decision were made by a final policymaker responsible for that activity."[195] Here, there is a genuine issue of material fact regarding whether the Chief of the Bogalusa Police Department, Culpepper, provided a false witness statement against Dendinger. In support of his argument that Culpepper is the final policymaker responsible for law enforcement, Dendinger cites a Louisiana Third Circuit Court of Appeal case, *Dugas v. City of Beaux Bridge Police Department*, in which the court stated that the chief of police of Beaux Bridge, Louisiana is "responsible for law enforcement in the municipality and is charged with the enforcement of all local ordinances and applicable state laws" and has "plenary power with regard to law enforcement within the municipality and in the operation of his department."[196] Therefore, it appears that Chief Culpepper is the final policymaker for law enforcement within the City of Bogalusa.

---

[193] *Id.* at 12 (citing *Young v. Biggers*, 938 F.2d 565, 570 (5th Cir. 1999)).

[194] *Id.* (citing 938 F.2d at 570).

[195] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

[196] Rec. Doc. 110 at 14 (citing 1999-1320 (La. App. 3 Cir. 2/2/00); 757 So. 2d 741, 743).

In *Bennett v. Pippen*, the Fifth Circuit affirmed the district court's holding that the county and the county's sheriff were jointly and severally liable for the sheriff's rape of a murder suspect, rejecting the county's argument that the sheriff's actions did not constitute a policy of the county.[197] The court stated that "[w]hen the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that power to the detriment of its citizens, [city] liability under section 1983 must attach, provided that the other prerequisites for finding liability under the section are satisfied."[198] Accordingly, as Dendinger has presented evidence that the Chief of the Bogalusa Police Department fabricated evidence, thereby violating Dendinger's constitutional rights, Dendinger has raised a genuine issue of material fact on his *Monell* claim and the City of Bogalusa is not entitled to summary judgment as a matter of law.

## IV. Conclusion

Based on the foregoing, the Court concludes that any 42 U.S.C. § 1983 or abuse of process claims that Dendinger had brought against Defendants Culpepper, Cassard, Bullen, and Seals have been abandoned. However, Dendinger has raised a genuine issue of material fact regarding his *Monell* claim against the City of Bogalusa and his malicious prosecution claims against Culpepper, Cassard, Bullen, and Seals.

Accordingly,

---

[197] 74 F.3d at 585–86.

[198] *Id.* at 586 (quoting *Turner v. Upton Cty, Tex.*, 915 F.2d 133, 138 (5th Cir. 1990)) (internal quotations omitted).

35

IT IS HEREBY ORDERED that the "FRCP Rule 56 Motion for Summary Judgment Filed by City of Bogalusa, Joe Culpepper, Chad Cassard, Scott Seals and Kendall Bullen"[199] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the motion for summary judgment is GRANTED regarding Dendinger's 42 U.S.C § 1983 and abuse of process claims against Culpepper, Cassard, Seals, and Bullen.

IT IS FURTHER ORDERED that the motion for summary judgment is DENIED regarding Dendinger's *Monell* liability claim against the City of Bogalusa.

IT IS FURTHER ORDERED that the motion for summary judgment is DENIED regarding Dendinger's claims for malicious prosecution against Culpepper, Cassard, Seals, and Bullen.

NEW ORLEANS, LOUISIANA, this 5th day of May, 2016.

NANNETTE JOLIVETTE BROWN
UNITED STATES DISTRICT JUDGE

---

[199] Rec. Doc. 110.