UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOGAN N. MILLS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5477**<br>**c/w NO. 14-1837** |
| **CITY OF BOGALUSA,** *et al.* | **SECTION: "G"(3)** |

## ORDER

In this litigation, Plaintiff Douglas L. Dendinger ("Dendinger") alleges that his constitutional rights were violated when he was falsely arrested, imprisoned, and prosecuted.[1] Pending before the Court is a "Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(b) on Behalf of Leigh Anne Wall and Walter Reed, In His Official Capacity."[2] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion in part and deny it in part.

## I. Background

### A. *Factual Background*

In his complaint, Dendinger alleges that on August 20, 2012, he delivered a summons and complaint to Defendant Chad Cassard ("Cassard"), a former active duty police officer with the Bogalusa Police Department, on behalf of Logan Mills ("Mills"), in a suit against Cassard and other members of the Bogalusa Police Department for excessive force.[3] Dendinger alleges that

---

[1] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at p. 17.

[2] Rec. Doc. 104.

[3] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1 at pp. 8–9.

1

during Mills' criminal trial at the Washington Parish Courthouse for armed robbery, the presiding judge, Judge Hand, ordered that Melanie Mills, Logan Mills' mother, stay away from witnesses under subpoena during trial.[4] Dendinger alleges that at the conclusion of Mills' criminal trial, after the jury had reached a verdict and been excused, and all witnesses having been discharged, he served Cassard outside the courthouse in the presence of Pamela Jean Legendre ("Legendre"), Assistant District Attorneys Julie Knight ("Knight") and Leigh Anne Wall ("Wall"), Police Chief Joe Culpepper ("Culpepper"), Captain Kendall Bullen ("Bullen"), and Scott Seals ("Seals").[5]

Dendinger alleges that his counsel received a phone call later that day from Legendre, who is a staff attorney for Judge Hand, the judge who presided over Mills' criminal trial, and Legendre allegedly accused Dendinger of committing an assault on a police officer and intimidation of a witness while attempting to serve Cassard.[6] Dendinger alleges that later that day, he was arrested at his home by Washington Parish Deputy Galloway.[7] According to Dendinger, he was then taken to Washington Parish Jail where he was verbally harassed by Culpepper and Wall.[8] Dendinger claims he was detained for roughly three hours before posting bond and being released.[9] Dendinger further alleges that, prior to his arrest, Wall, Legendre, Knight, Culpepper, Bullen, and Seals all provided false witness statements.[10]

---

[4] *Id.* at 8.

[5] *Id.*

[6] *Id.* at p. 9.

[7] *Id.*

[8] *Id.* at p. 10.

[9] *Id.*

[10] *Id.* at pp. 12–13.

According to Dendinger, District Attorney Walter Reed recused his office from the prosecution of Dendinger.[11] On May 29, 2014, the Attorney General for the State of Louisiana informed Dendinger that he had refused the charges against Dendinger.[12]

**B.   *Procedural Background***

Dendinger filed a complaint on August 12, 2014, alleging causes of action under 42 U.S.C. § 1983 for false arrest, false imprisonment, and municipal liability, as well as state law claims for malicious prosecution and abuse of process.[13] On July 13, 2015, Judge Helen Berrigan of Section "C" dismissed with prejudice the § 1983 claims for false arrest and false imprisonment against Wall and Reed.[14] On January 6, 2016, the case was temporarily reassigned to this section, Section "G."[15] On March 15, 2016, Wall and Reed, in his official capacity (collectively "Moving Defendants"), filed the instant motion.[16] Dendinger filed an opposition on March 22, 2016.[17] With leave of Court, Moving Defendants filed a reply on March 25, 2016.[18]

---

[11] *Id.* at p. 14.

[12] *Id.*

[13] *Dendinger v. City of Bogalusa*, No. 14-1837, Rec. Doc. 1.

[14] Rec. Doc. 67 at 14–15.

[15] Rec. Doc. 84-1 at 1.

[16] Rec. Doc. 104.

[17] Rec. Doc. 109.

[18] Rec. Doc. 124.

## II. Parties' Arguments

### A.   *Moving Defendants' Arguments in Support of Summary Judgment*

Moving Defendants seek summary judgment on the § 1983 claim brought against Reed in his official capacity, as well as the claims for malicious prosecution and abuse of process against Wall and Reed, in his official capacity.[19] Moving Defendants contend that Dendinger asserts two *Monell* claims against Walter Reed in his official capacity: (1) as a final policymaker, Reed ratified violations of clearly established law by Wall and Knight; and (2) Reed failed to train Assistant District Attorneys and staff.[20] According to Moving Defendants, the basis of Dendinger's claim is that Reed took no action to prevent Wall and Knight conferring with the Washington Parish Sheriff's Office regarding probable cause to arrest Dendinger or providing fabricated witness statements and ratified their actions.[21] Moving Defendants contend that municipal liability arising out of a final policymaker's ratification of a subordinate's actions is limited to "extreme factual scenarios."[22]

Moving Defendants assert that Dendinger cannot prove his allegations that Wall and Knight fabricated information in their voluntary witness statements and that they advised the Washington Parish Sheriff's Office that probable cause existed to arrest Dendinger.[23] Moving Defendants contend that the only information Wall is alleged to have fabricated is her assertion in

---

[19] Rec. Doc. 104-1 at 6.

[20] *Id.* at 8–9.

[21] *Id.* at 10.

[22] *Id.* (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)).

[23] *Id.*

her voluntary statement that the man she witnessed approach Cassard was a man who had been in the courtroom all day.[24] They assert that the only fabrications attributed to Knight are her use of the words "hit" and "hand" in her voluntary statement, and her assertion that the service of process was done in a manner to threaten and intimidate everyone involved.[25] Moving Defendants contend that Dendinger has not alleged that Knight did not truly perceive that she saw Dendinger "hit" Cassard in a threatening and intimidating manner.[26]

Moving Defendants assert that the only other allegation of a violation of clearly established law is that Wall and/or Knight provided legal advice to Washington Parish Sheriff's Office employees regarding probable cause to arrest Dendinger.[27] They contend that the deposition of Galloway, the officer who investigated the case, demonstrates that neither Wall nor Knight provided him with legal advice regarding probable cause.[28] In support, Moving Defendants also point to the affidavits of Wall and Knight who assert that they did not give any legal advice to Galloway.[29] Moving Defendants argue that even if these alleged violations occurred, Dendinger has not established that Reed had actual knowledge of any such violations.[30] In support, they assert that both Wall and Wall's supervisor, Lewis Murray ("Murray"), confirm that they never spoke to

---

[24] *Id.* at 10–11.

[25] *Id.* at 11.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 11–12 (citing Rec. Doc. 104-8 at 3–8).

[29] *Id.* at 12 (citing Rec. Docs. 92-5, 104-5).

[30] *Id.*

Reed about the arrest or prosecution of Dendinger.[31] Moving Defendants assert that the only evidence of Reed's knowledge of Wall and Knight's actions is his signature on the Bill of Information filed months after Dendinger's arrest.[32] However, Moving Defendants contend that Murray, in his affidavit, states that he signed the Bill of Information.[33] Moving Defendants conclude that because Dendinger has failed to prove that Reed had actual knowledge of the alleged violations of law by his subordinates and because no violation of law was committed by Wall or Knight, the motion for summary judgment on Dendinger's *Monell* claim under the ratification theory should be granted.[34]

Turning to the second *Monell* claim regarding a failure to train the Assistant District Attorneys and other staff, Moving Defendants contend that Dendinger must prove that: (1) training procedures were inadequate; (2) there was deliberate indifference in adopting the training policy; and (3) the inadequate training policy caused the alleged harm.[35] Moving Defendants assert that the Supreme Court has stated that a municipality's culpability for deprivation of rights is "at its most tenuous where a claim turns on failure to train."[36] Moving Defendants also contend that deliberate indifference is a "stringent standard of fault, requiring proof that a municipal act[or] disregarded a known or obvious consequence of his action"[37] and that a pattern of similar

---

[31] *Id.*

[32] *Id.* at 12–13

[33] *Id.* at 13.

[34] *Id.*

[35] *Id.* (citing *Sanders-Burns v. City of Plano*, 578 F.3d 279, 281 (5th Cir. 2009)).

[36] *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[37] *Id.* at 14 (quoting *Bd. of the Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 410 (1997)).

constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference.[38] Moving Defendants argue: (1) there is no proof that the training procedures of the 22nd Judicial District Attorney's Office were inadequate; (2) Dendinger has not shown any pattern of similar constitutional violations which would demonstrate Reed's deliberate indifference; and (3) Dendinger has not established how the allegedly inadequate training policy caused him harm.[39] In support, Moving Defendants cite to the affidavits of Wall detailing the training she has received, as well as the deposition of the Chief of Trials for the 22nd Judicial District Attorney's Office, Ronald T. Gracianette, who testified regarding the continuing legal education requirements for its attorneys and internal trainings.[40] Moving Defendants also cite the Supreme Court in *Connick v. Thompson*, where the Court stated that in light of the regime of legal training and professional responsibility that lawyers undergo, "recurring constitutional violations are not the obvious consequence of failing to provide prosecutors with formal in-house training about how to obey the law."[41]

Moving Defendants also assert that they are entitled to summary judgment on Dendinger's state law claims.[42] They contend that in order to prove a claim of malicious prosecution, Dendinger must prove: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was the criminal defendant in the

---

[38] *Id.* (citing *Brown*, 520 U.S. at 409).

[39] *Id.* at 14–15.

[40] *Id.* at 14 (citing Rec. Docs. 104-1, 104-7).

[41] *Id.* at 15 (quoting 563 U.S. 51, 64 (2011).

[42] *Id.*

original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and, (6) damage conforming to legal standard resulting to plaintiff."[43] Moving Defendants contend that Louisiana courts do not favor actions for malicious prosecution and for such an action to exist, "a clear case must be established where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent."[44] First, Moving Defendants contend that upon review of the report compiled by Galloway, based upon the seven voluntary witness statements from credible witnesses, and a review of the applicable law, Assistant District Attorneys Murray and Shea Penton determined that there was probable cause to charge Dendinger with obstruction of justice, simple battery, and intimidating, impeding, or injuring witnesses.[45] Moving Defendants argue that Dendinger has not demonstrated that there was no probable cause to file these charges.[46]

Second, Moving Defendants argue that Dendinger has not proven that Wall and Reed acted with malice in pursuing the prosecution against him.[47] They contend that malice has been found to exist when a charge is made with knowledge that it is false or with reckless disregard for the truth and, in order to prevail, there must be "malice in fact."[48] Moving Defendants assert that the only evidence of malice that Dendinger pointed to in his deposition was being cursed at by a female

---

[43] *Id.* at 16 (citing *Miller v. E. Baton Rouge Par. Sheriff's Office*, 511 So. 2d 446, 452 (La. 1987)).

[44] *Id.* (quoting *Aucoin v. Aetna Cas. & Surety Co.*, 520 So. 2d 795, 797–98 (La. App. 3 Cir. 1987)).

[45] *Id.* at 17.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 18 (citing *Aucoin*, 520 So. 2d at 798; *Miller*, 511 So. 2d at 453).

standing on the courthouse steps after he served Cassard, and Wall giving a "very animated, dramatic nod" in a mocking manner in the hallway of the Sheriff's office after Dendinger's arrest.[49] They contend that neither of these allegations rise of the level of malice in fact, nor are they based upon actual facts.[50] Moving Defendants point to Wall's affidavit in which she asserts that she was not on the courthouse steps at the time of service, and Galloway's deposition in which stated that no one was laughing at or mocking Dendinger when he was brought to the jail for booking.[51] Moving Defendants assert that Dendinger was unable to articulate any malice by Walter Reed during his deposition.[52]

Third, Moving Defendants assert that Dendinger has not established any actual damages resulting from his alleged malicious prosecution.[53] They assert that they have requested, and Dendinger has failed to provide, medical records or any other evidence to support his claim.[54] Furthermore, Moving Defendants assert that Wall had no substantive involvement in Dendinger's prosecution, and even if she had, she would be entitled to absolute immunity as a prosecutor.[55] Moving Defendants contend that prosecutors are entitled to absolute immunity in cases involving

---

[49] *Id.* (citing Rec. Doc. 104-9 at 3–5).

[50] *Id.*

[51] *Id.* (citing Rec. Docs. 104-5 at 4, 104-8 at 5).

[52] *Id.* (citing Rec. Doc. 104-9 at 5–6).

[53] *Id.*

[54] *Id.* at 18–19.

[55] *Id.* at 19.

conduct within the traditional scope of a prosecutor, including for claims of malicious prosecution.[56]

Last, Moving Defendants assert that they are entitled to summary judgment on Dendinger's claims for abuse of process.[57] They contend that in order to prove abuse of process, Dendinger must prove: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.[58] Moving Defendants contend that ulterior purpose, although similar to the concept of malice, "is a much more demanding test which would not be met by a showing of lack of knowledge or other technical types of malice, but which is only met when the officer is acting for a specific purpose not authorized by law."[59] They contend that the second element, improper use of process, refers to a failure to comply with the proper procedures or rules set out by law for conducting official actions.[60]

Moving Defendants assert that Dendinger alleges that Wall is liable for abuse of process for giving a witness statement in order to construct a fallacious case against Dendinger and that both Wall and Reed committed an abuse of process by not giving Dendinger notice of his arraignment and then obtaining a no bond attachment order.[61] Moving Defendants contend that Dendinger does not provide any proof of an ulterior purpose or that Moving Defendants' actions

---

[56] *Id.* (citing *Knapper v. Connick*, 96-0434 (La. 10/15/96); 681 So. 2d 944).

[57] *Id.* at 20.

[58] *Id.* (citing *Weldon v. Republic Bank*, 414 So. 2d 1361 (La. App. 2 Cir. 1982)).

[59] *Id.* (quoting *Taylor v. State*, 92-230 (La. App. 3 Cir. 3/31/93); 617 So. 2d 1198, 1205–06).

[60] *Id.* (citing *Taylor*, 617 So. 2d at 1205–06).

[61] *Id.* at 20–21.

failed to comply with proper procedures.[62] They assert that Wall specifically stated in her voluntary witness statement that she did not see what occurred outside the courthouse and submit an affidavit in which Wall asserts that she had no involvement in any substantive actions related to Dendinger's prosecution.[63] Therefore, they argue, she is entitled to summary judgment on the abuse of process claim.[64] As for Reed, Moving Defendants contend that Dendinger has not demonstrated any ulterior purpose or irregular process related to the notice of arraignment or the issuance of a no bond attachment order.[65] Moving Defendants assert that Murray testified that the notice of the arraignment date was sent to Dendinger and the computer records show that a subpoena for Dendinger was prepared.[66] Furthermore, they assert that it was the District Court, not Reed or any other prosecutor, who issued the no bond attachment order, and, in fact, a motion to recall the attachment was filed by the 22nd District Attorney's Office at the request of Dendinger's criminal counsel, which contradicts the claim of ulterior purpose.[67]

**B.      *Dendinger's Arguments in Opposition to the Motion for Summary Judgment***

    In opposition to the motion for summary judgment, Dendinger contends that the first and third elements of a malicious prosecution claim, commencement or continuance of a criminal proceeding and bona fide termination in favor of the present plaintiff, are satisfied in light of

---

[62] *Id.* at 21.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 21–22.

[67] *Id.* at 22.

Dendinger's arrest, the filing of charges against him, the continuation of the criminal proceeding by the District Attorney's office, and by the Attorney General's refusing of criminal charges.[68] As for the element of legal causation, Dendinger asserts that Wall and the District Attorney's office were the legal cause of Dendinger's arrest and prosecution because they pressured and misled the Washington Parish Sheriff's Office and because no independent investigation was conducted.[69] According to Dendinger, Sergeant Vallarie's statement on the phone during the arrest of Dendinger at his home asking, "What do they want me to do?" creates an inference that the Washington Parish Sheriff's Office was feeling pressure from Chief Culpepper and the District Attorney's Office.[70]

Furthermore, Dendinger contends that Wall's statement was of critical importance because it falsely placed Dendinger in the courtroom "all day" and implies that Dendinger was present when Judge Hand issued his order prohibiting contact between those associated with Logan Mills and witnesses under subpoena.[71] Finally, Dendinger asserts that Wall supplied the sole evidence that Seals and Cassard were upset.[72] Dendinger contends that the use of influence to pressure the Washington Parish Sheriff's Office by Culpepper and the District Attorney's Office overcomes any presumption that the investigation, if any was done, was independent.[73]

---

[68] Rec. Doc. 109 at 15.

[69] *Id.* at 16.

[70] *Id.*

[71] *Id.* at 16–17.

[72] *Id.* at 17.

[73] *Id.* (citing *Whittington v. Maxwell*, No. 08-1418, 2011 WL 1304468 (W.D. La. Mar. 31, 2011)).

As for probable cause, Dendinger contends that there is a presumption of a lack of probable cause and malice because the Attorney General refused all charges against him.[74] Dendinger contends that the burden shifts to Moving Defendants, who have failed to rebut this presumption as they do not discuss the criminal charges against Dendinger.[75] Dendinger asserts that considering the expertise and experience of Wall and Murray, seasoned veterans of the District Attorney's office, Moving Defendants could not have reasonably believed in the criminal charges against Dendinger.[76] Turning to malice, Dendinger asserts that malice is presumed because charges were refused.[77] Furthermore, Dendinger contends that "[a]ny feeling of hatred, animosity, or ill will toward the plaintiff . . . amounts to malice," but malice can also be inferred when there is a lack of probable cause or when the defendant acted with reckless disregard for the truth.[78] Dendinger asserts that malice is a question of fact that should be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence.[79] Dendinger contends that a presumption of malice is raised in this case because of the lack of probable cause and the evidence of Wall's hatred, animosity, and ill will toward Dendinger demonstrated by the fact that Dendinger and his wife heard a female voice, believed to be Wall, cursing at them as they walked away from

---

[74] *Id.* (citing *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139).

[75] *Id.*

[76] *Id.* at 17–18 (citing *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000); *Smith v. State ex rel. Dep't of Admin*, 694 So. 2d 1184, 1188 (La. App. 1 Cir. 1997)).

[77] *Id.* at 20.

[78] *Id.* at 20–21 (citing *Morin v. Caire*, 77 F.3d 116, 122 (5 Cir. 1996); *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987)).

[79] *Id.* at 21 (citing *Jalou II, Inc. v. Liner*, 2010-0048 (La. App. 1 Cir. 6/16/10); 43 So. 3d 1023, 1040).

the courthouse, as well as the fact that Wall displayed her middle finger to the Mills family during the trial and that Wall laughed when Dendinger was "paraded down the corridor of the Jail."[80]

In opposition to Moving Defendants' contention that there is no proof of damages, Dendinger asserts that when the other elements of malicious prosecution are established, the element of damages is presumed.[81] Dendinger also contends that Moving Defendants' representation that Dendinger has failed to provide medical records or other evidence to substantiate his claim of damages is a misrepresentation because he has provided documentation of payment to his attorney and advised Moving Defendants' that his treating physicians are in possession of his medical records.[82] In response to Moving Defendants' arguments regarding absolute immunity, Dendinger contends that Wall and Knight lost any absolute immunity when they went outside their prosecutorial function and gave witness statements.[83] Furthermore, Dendinger asserts that Wall lost absolute immunity by giving legal advice on the issue of probable cause to the Washington Parish Sheriff's Office.[84]

Turning to the abuse of process claim, Dendinger asserts that although Wall claims that she was at the rear of the courthouse, other evidence shows that she was at or very near the front of the courthouse.[85] In addition, Dendinger contends that although Wall claims to have had no

---

[80] *Id.*

[81] *Id.* (citing *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139).

[82] *Id.*

[83] *Id.* (citing *Malley v. Briggs*, 474 U.S. 335, 340–41 (1986)).

[84] *Id.* at 21–22 (citing *Burns v. Reed*, 500 U.S. 478, 492–96 (1991)).

[85] *Id.* at 22.

substantive involvement in his prosecution, the timeline and the delay before a bill of information was filed is suspect.[86] Dendinger asserts that there is evidence in the record showing that two weeks before the bill of information was filed, the Dendinger file was given to Wall for her review, and that in between the filing of the bill of information and the first arraignment date, Wall corresponded with First Assistant District Attorney Gascon.[87] Dendinger asserts that Moving Defendants seek to withhold in discovery the "Data Entry Sheet" regarding the Dendinger file on the grounds that Wall's "mental impressions, conclusions, opinions or theories" are contained in the document, which calls into question Wall's assertion that she had no substantive role in the case.[88] Dendinger further contends that there is a reasonable inference that the no bond attachment was issued against Dendinger because Wall intentionally failed to give Dendinger notice at his home address, thereby abusing process.[89]

In opposition to the motion for summary judgment on Dendinger's claims for municipal liability, Dendinger asserts that Murray was the final policymaking official for the particular activity of screening cases.[90] Dendinger contends that despite the "obvious ethical problems with conflicts of interest, the screening process allowed for the prosecution of Plaintiff to go forward – a year after his arrest."[91] Dendinger asserts that pursuant to *Monell*, a claim against a municipality

---

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.* at 23.

[90] *Id.*

[91] *Id.*

can be made by a showing either that the laws or actions were given formal approval or the decisions/actions were made by a final policymaker responsible for the activity.[92] In addition, Dendinger contends that the facts of this case constitute an extreme factual scenario involving a final policymaker's ratification of a subordinate's actions in which the municipality can be held liable.[93] Dendinger asserts the witnesses' statements do not make sense because if the witnesses are to be believed, Dendinger assaulted Cassard in front of armed police officers.[94] Finally, Dendinger asserts that the lack of meaningful screening process evidences ratification.[95] Dendinger contends that, at the very least, there are triable issues of fact making summary judgment on this claim improper.[96]

In opposition to the motion for summary regarding the failure to train claim, Dendinger contends that under Reed's supervision, the District Attorney's office had no written policy and procedures manual or written protocol for attorneys with regard to prosecution techniques or ethics training.[97] Dendinger asserts that, at the very least, there are triable issues of fact showing that "the ethical collapse in this case was systemic and that there was deliberate indifference to adopting any training policies, evidenced by the lack of a written manual."[98]

---

[92] *Id.* (citing *Brown v. Bryan Cty., Okla.*, 67 F.3d 1174, 1183 (5 Cir. 1995)).

[93] *Id.* at 24 (citing *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)).

[94] *Id.*

[95] *Id.* (citing *Santibanes v. City of Tomball, Tex.*, 654 F. Supp. 2d 593, 612 (S.D. Tex. 2009)).

[96] *Id.* at 25 (citing *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 798 (S.D. Tex. 2013)).

[97] *Id.*

[98] *Id.* (citing *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161 (5th Cir. 1985)).

## C.   *Moving Defendants' Arguments in Further Support of Summary Judgment*

In reply, Moving Defendants contend that because the Court determined, in its March 15, 2016 Order regarding Defendants Sheriff Randy "Country" Seal, Chief Deputy Michael Haley, and Deputy S. Barry Galloway's motion for summary judgment, that probable cause existed for the arrest even without Wall's statement, there can be no liability against Wall and Reed, in his official capacity, for malicious prosecution.[99] Moving Defendants further argue that because there was probable cause, malice is not presumed.[100] In addition, Moving Defendants contend that the allegations that Wall raised her middle finger to Logan Mills' family during the criminal trial and cursed at Dendinger do not establish actual malice in fact and Wall denies any such behavior.[101]

In addition, Moving Defendants assert that the video produced by Dendinger confirms what Knight and Wall asserted in their written statements: that Dendinger waited outside of the courthouse and "in a surprise move struck Officer Cassard in the chest and then depart[ed] rapidly."[102] Moving Defendants contend that service of a summons or complaint does not require physical contact with the party being served and Dendinger's decision to "physically strike a witness leaving a courthouse after a contentious legal proceeding is the true cause of this litigation."[103] Furthermore, they assert that Dendinger has failed to produce any evidence that

---

[99] Rec. Doc. 124 at 2 (citing Rec. Doc. 105).

[100] *Id.* at 2 n.1.

[101] *Id.*

[102] *Id.* at 3.

[103] *Id.*

would remove his claims from those covered by the absolute immunity afforded to prosecutors under Louisiana law for malicious prosecution suits.[104]

Turning to the abuse of process claim, Moving Defendants contend that where Wall was standing at the time of the incident and what she saw or did not see is immaterial because her statement was truthful and the material facts are undisputed.[105] In addition, Moving Defendants assert that it has been clearly established that Wall did not file the Bill of Information or screen the case, functions that are also protected by the absolute immunity doctrine.[106] Furthermore, they contend that the State reduced the charges for which Dendinger was arrested from battery upon a police officer to simple battery, which they contend demonstrates a deliberative process.[107] Moving Defendants also assert that there is no evidence that Wall caused the issuance of the no bond attachment because she did not participate in Dendinger's arraignments and the issue of an attachment or warrant is a judicial function.[108] Additionally, Moving Defendants contend that any prosecutor in the courtroom would be entitled to absolute immunity and as nine no bond attachments were issued by the court on that day, the issuance of a no bond attachment was the rule, not the exception.[109] In conclusion, Moving Defendants assert that as Dendinger has not

---

[104] *Id.* (citing *Gibson v. State*, 1999-1730 (La. 4/11/00); 758 So. 2d 782, 792).

[105] *Id.* at 4.

[106] *Id.*

[107] *Id.* at 5.

[108] *Id.*

[109] *Id.* at 5–6.

demonstrated any irregularity in the process itself, the abuse of process claim should be dismissed.[110]

As for the *Monell* claims, Moving Defendants contend that the case law does not support Dendinger's contention that Lewis Murray was the final policymaker regarding screening decisions for the purposes of ratification.[111] Moving Defendants contend that under Louisiana law, the elected district attorney of the judicial district "shall have charge of every criminal prosecution by the state in his district."[112] In addition, they cite the Fifth Circuit in *Burge v. Parish of St. Tammany*, where the court held that in accordance with the Louisiana Constitution and statutory law, "a district attorney is the independent and final policymaker for all of the administrative and prosecutorial functions of his office."[113] Moving Defendants also cite a Middle District of Louisiana case, *Livermore v. Arnold*, where, they assert, the court determined that an assistant district attorney is not the final policymaker for the district attorney's office.[114] Moving Defendants contend that because Dendinger has failed to establish that Reed had actual knowledge of any constitutional violations by any of his assistant district attorneys, Dendinger cannot meet his burden of proof for his *Monell* claim under the theory of ratification.[115]

---

[110] *Id.* at 6.

[111] *Id.* at 7.

[112] *Id.* at 8 (citing La. Rev. Stat. § 16:1).

[113] *Id.* (citing 187 F.3d 452, 469 (5th Cir. 1999)).

[114] *Id.* (citing No. 10-507-B-M2, 2011 WL 693569 (M.D. La. Jan. 20, 2011)).

[115] *Id.*

In reply to Dendinger's arguments regarding the absence of ethics training, Moving Defendants assert that Reed has provided to Dendinger certificates of completion of ethics training for Wall and Knight.[116] Furthermore, Moving Defendants assert that the Fifth Circuit has rejected the argument that a lack of a written policy established de facto proof of constitutional violations by a municipality.[117] Moving Defendants assert that a single incident of an alleged constitutional violation does not evidence a persistent pattern or practice sufficient to establish liability under a failure to train theory, nor has Dendinger produced any evidence to satisfy the requirement of actual harm caused by the allegedly inadequate training policy.[118]

### III. Law and Analysis

**A.**   ***Legal Standard on a Motion for Summary Judgment***

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[119] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[120] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

---

[116] *Id.* at 9.

[117] *Id.* (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009)).

[118] *Id.* at 10.

[119] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[120] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[121] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[122] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[123]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[124] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[125] To withstand a motion for summary judgment, a plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts.[126] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[127] Rather, a factual dispute precludes a grant of

---

[121] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[122] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[123] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[124] *Celotex*, 477 U.S. at 323.

[125] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), cert. denied, 513 U.S. 871 (1994).

[126] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[127] *Little*, 37 F.3d at 1075.

summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[128]

## B.    *Analysis*

Moving Defendants seek summary judgment on the *Monell* claims against Reed, in his official capacity, and the malicious prosecution and abuse of process claims brought against both Moving Defendants.[129] The Court will address each of these claims in turn.

As an initial matter, in addition to his exhibits, Dendinger requests that the Court take judicial notice of documents filed in the Eastern District of Louisiana case No. 12-cv-991, *Logan N. Mills v. City of Bogalusa*.[130] These documents include "Proof of Service of Summons/Complaint (Scott Seals)," "Proof of Service of Summons/Complaint (Chad Cassard)," "Call Docket," and "Answer filed by City of Bogalusa etc. et al."[131] Pursuant to Federal Rule of Evidence 201, the Court may judicially notice a fact that is not subject to reasonable dispute either on its own, or if a party requests it and the court is supplied with the necessary information.[132] Dendinger has attached the documents he requests that the Court take judicial notice of, which include notations that indicate that they are in fact records in No. 12-cv-991, *Logan N. Mills v.*

---

[128] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[129] Rec. Doc. 104

[130] Rec. Doc. 109-6.

[131] *Id.*

[132] Fed. R. Evid. 201(b)-(c).

*City of Bogalusa*. Moving Defendants, in their reply, make no objection to the Court taking judicial notice of these documents. Therefore, Dendinger's request for judicial notice is granted.

### 1. *Monell* Liability

Dendinger appears to make three claims for municipal liability pursuant to *Monell v. New York City Department of Social Services*: (1) Murray is the final policymaking official for the particular activity of screening and despite "obvious ethical problems with conflicts of interest," the screening process allowed Dendinger's prosecution to go forward; (2) Reed ratified the constitutional violations of Wall and Knight; and (3) Reed failed to train the assistant district attorneys.[133] Moving Defendants argue: (1) Murray is not the final policymaker for the 22nd Judicial District Attorney's Office; (2) Dendinger has failed to establish that Reed had actual knowledge of any constitutional violations by any assistant district attorneys; and (3) Dendinger has failed to present evidence regarding a failure to train because attorneys in the 22nd Judicial District Attorney's Office received regular training, there is no evidence of a persistent pattern or practice of violations, and Dendinger has failed to produce evidence of actual harm caused by the allegedly inadequate training policy.[134] The Court will address separately each of these arguments.

### i. Screening

Dendinger's first claim for *Monell* liability is that Murray is a final policymaking official for the particular act of screening cases, and because a plaintiff can establish a custom or policy based on a single decision when the decision was made by an authorized policymaker with final

---

[133] Rec. Doc. 109 at 23–25.

[134] Rec. Doc. 124 at 8–10.

23

policymaking power, there is municipal liability for Murray's failure to screen his case.[135] "[W]hether a particular official has 'final policymaking authority' is a question of *state law*."[136] Moving Defendants assert that pursuant to Louisiana law, Murray is not the final policymaker for the 22nd Judicial District Attorney's Office.[137] In support, Moving Defendants cite Louisiana Revised Statute § 16:1, which states that "The district attorneys throughout the state of their designated assistants, the parish of Orleans excepted, shall represent the state in all civil actions, and shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand juries in his district and be the legal advisor to the grand juries."[138] In *Burge v. Parish of St. Tammany*, a case cited by Moving Defendants, the Fifth Circuit determined that pursuant to Louisiana constitutional and statutory provisions, a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office.[139] Although Dendinger attempts to separate out the particular function of screening cases and asserts that Murray had the final policymaking power for this particular function, he cites no authority for doing so. Accordingly, as Murray was not the final policymaker pursuant to Louisiana law, there can be no municipal liability based solely upon allegations that Murray failed to properly screen Dendinger's case.

---

[135] Rec. Doc. 109 at 23.

[136] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

[137] Rec. Doc. 124 at 8.

[138] *Id.*

[139] 187 F.3d 452, 469 (5th Cir. 1999).

#### ii.      Ratification

Dendinger also asserts that Reed ratified the deprivation of his constitutional rights.[140] The Supreme Court has stated that if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[141] However, the Fifth Circuit has limited the scenarios in which a municipality can be held liable on the basis of ratification to "extreme factual situations."[142] Dendinger asserts that this is an extreme case because Cassard suffered no bodily injuries, Cassard does not assert in his statement that he was intimidated or upset, there is no evidence supporting any "specific intent," and numerous witnesses gave false statements.[143]

However, Dendinger does not explain how Reed ratified any of his subordinate's allegedly unconstitutional decisions. From his assertions regarding the evidence against him, it appears that Dendinger is arguing that the fact that a Bill of Information was filed was the violation that Reed ratified. It is undisputed that neither Wall nor Murray communicated with Reed on August 20, 2012, or anytime thereafter regarding the incident involving service of process on Cassard.[144] Knight also stated in her affidavit that she never contacted Reed regarding the incident involving Dendinger or her written witness statement.[145] Nor does Dendinger point to any evidence that Reed

---

[140] Rec. Doc. 109 at 24.

[141] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

[142] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009).

[143] Rec. Doc. 109 at 24.

[144] Rec. Doc. 109-1 at 23.

[145] Rec. Doc. 92-5 at 4.

was ever made aware of the particulars of this case, let alone the allegations that the witnesses had given false witness statements. Although Dendinger in his deposition asserts that he does not believe that Reed was not made aware of this case, when asked whether there are "any witnesses, documentation, recordings, or anything of that nature that would substantiate your belief?" Dendinger responded "Other than . . . his personal signature on my bill of information, nothing else I can think of at this time."[146] It is now undisputed that Murray, not Reed, signed Dendinger's Bill of Information.[147] However, even had Reed signed the Bill of Information, Dendinger has presented no evidence to demonstrate that Reed, at any time, knew the particulars of this case or approved any decisions made during the course of the case.

Dendinger, citing a Southern District of Texas case, *Santibanes v. City of Tomball, Texas*, asserts that "the lack of a meaningful screening process evidences ratification."[148] In *Santibanes*, the court determined that there was sufficient evidence of a municipal policy where a chief of police conducted a review of a sergeant's use of force and concluded that there was no credible evidence that the sergeant had fired his weapon intentionally, because the chief of police chose not to view evidence which placed the plausibility of the sergeant's version of events into question.[149] Dendinger's argument regarding the screening process appears to be based upon his contention that Murray was the final policymaker for screening. As discussed above, pursuant to Louisiana law, Murray was not the final policymaker and therefore his actions in ratifying any subordinate's

---

[146] Rec. Doc. 104-9 at 2.

[147] Rec. Doc. 109-1 at 41–42.

[148] Rec. Doc. 109 at 24 (citing 654 F. Supp. 2d 593, 612 (S.D. Tex. 2009)).

[149] 654 F. Supp. 2d at 613–614.

conduct cannot be the basis for a *Monell* claim. Accordingly, Dendinger has failed to raise a genuine issue of material fact that Reed ratified any unconstitutional actions of his subordinates.

### iii.    Failure to Train

Dendinger also alleges that the 22nd Judicial District Attorney's Office failed to train its prosecutors.[150] In order to succeed on a failure to train claim, a plaintiff must demonstrate that: (1) the training policy was inadequate; (2) there was deliberate indifference in adopting the training policy; and (3) the inadequate training policy directly caused the alleged harm.[151] In support of his claim, Dendinger points to Wall's deposition testimony in which she asserts that there were no written policies and procedures regarding prosecution techniques during the time that Reed was the District Attorney.[152]

Quoting the Supreme Court in *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, Moving Defendants assert that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[153] In *Connick v. Thompson*, the Supreme Court, in discussing failure to train cases, stated that when "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."[154] Therefore, the Court stated that "[a] pattern of similar constitutional violations by

---

[150] Rec. Doc. 109 at 25.

[151] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

[152] Rec. Doc. 109-2 at 197.

[153] *Id.* (citing 520 U.S. 397, 410 (1997) (internal quotation marks omitted)).

[154] 563 U.S. 51, 61 (2011).

untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[155] Furthermore, the Court in *Connick* explained that "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[156]

Moving Defendants argue that Wall's affidavit establishes that she received regular training through the Louisiana District Attorneys Association and through the 22nd Judicial District Attorney's Office, and further points to the deposition testimony of Ronald Gracianette, the Chief of Trials, who testified that there were both continuing legal education requirements and internal training.[157] As discussed above, no evidence has been presented that Reed was made aware at any time of the allegations regarding this particular case. Dendinger has not cited to any pattern of "similar constitutional violations by untrained employees."[158] Although it is possible in extreme circumstances for a plaintiff to prove municipal liability for failure to train based upon a single incident, in order to prevail under this exception, "a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation."[159] Dendinger has not made any argument or presented any evidence to show that Reed was on notice or should have been on notice that the training provided to the prosecutors in the 22nd Judicial

---

[155] *Id.* at 62.

[156] *Id.*

[157] Rec. Doc. 104-1 at 14 (citing Rec. Docs. 104-5, 104-7).

[158] *See Connick v. Thompson*, 563 U.S. 51, 62 (2011).

[159] *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).

District Attorney's Office was deficient in a particular respect or that it was "highly predictable" that the specific injury alleged in this case would result. Accordingly, Dendinger has failed to raise a genuine issue of material fact regarding deliberate indifference and therefore has failed to raise a genuine issue of material fact on his *Monell* failure to train claim.

### 2.     Malicious Prosecution

Moving Defendants also assert that Dendinger cannot sustain his burden of proof regarding his malicious prosecution claim.[160] In order to prove a claim for malicious prosecution, a plaintiff must show: "(1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff."[161] Although the plaintiff ordinarily bears the burden of proof on all the elements of a malicious prosecution claim, there is a presumption of malice and a lack of probable cause in cases where the prosecuting officer has dismissed the charges.[162] In those cases, the burden shifts to the defendant to show that she acted on probable cause and without malice.[163]

First, Moving Defendants assert that Dendinger has not demonstrated that the prosecutors lacked probable cause to file these charges.[164] Second, they contend that Dendinger cannot show

---

[160] Rec. Doc. 104-1 at 15.

[161] *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15); 168 So. 3d 362, 367 (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984)).

[162] *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1143; *see also Keppard v. AFC Enters., Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01); 802 So. 2d 959, 965.

[163] *Keppard*, 802 So. 2d at 965.

[164] Rec. Doc. 104-1 at 17.

that Wall and Reed, in his official capacity, acted with malice in pursuing the prosecution against Dendinger.[165] Third, Moving Defendants assert that Dendinger has not established any actual damages that resulted from his alleged malicious prosecution.[166] Fourth, Moving Defendants contend that Wall had no substantive involvement in the prosecution of Dendinger.[167] Finally, Moving Defendants assert that even if Wall had been involved in Dendinger's prosecution, she would be entitled to absolute immunity as a prosecutor.[168]

###### i.    *Wall*

The Court will first address whether Wall is entitled to absolute immunity on the claim for malicious prosecution. Dendinger appears to be basing his malicious prosecution claim on his assertions that Wall and Murray "pressured and misled the [Washington Parish Sheriff's Office]" and that Wall made a false statement.[169] Judge Berrigan, in her July 13, 2015 Order and Reasons, concluded that Wall is entitled to absolute immunity for her involvement in the filing of a Bill of Information.[170] However, the Court also determined that her alleged actions in providing a false witness statement and advising the police on the legality of Dendinger's arrest are not covered by absolute immunity.[171] Therefore, the Court has already ruled on Wall's assertions that she is entitled to absolute immunity on the claim for malicious prosecution.

---

[165] *Id.*

[166] *Id.* at 18.

[167] *Id.* at 19.

[168] *Id.*

[169] Rec. Doc. 109 at 16.

[170] Rec. Doc. 67 at 8.

[171] *Id.*

Next, the Court will address Moving Defendants' assertion that there was probable cause for the filing of criminal charges. Moving Defendants contend that Dendinger has not demonstrated that there was no probable cause to file charges against him.[172] In opposition, Dendinger contends that because the Attorney General refused all charges against him, there is a presumption of lack of probable cause.[173] Dendinger asserts that Moving Defendants have failed to rebut this presumption because they do not discuss the criminal charges that were filed against Dendinger.[174] However, as discussed above, Wall has absolute immunity regarding a malicious prosecution claim brought against her solely for the filing of the Bill of Information. In evaluating whether a defendant in a malicious prosecution claim had probable cause to press charges, "the crucial determination is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff at the time the charges were pressed."[175] Therefore, the Court must evaluate not whether the prosecutors in the 22nd Judicial District Attorney's Office had probable cause when filing the Bill of Information, but whether Wall had probable cause when she filed her witness statement and in instructing the Washington Parish Sheriff's Office.

Moving Defendants argue that the evidence in Galloway's deposition and Wall and Knight's affidavits demonstrates that neither Wall nor Knight provided legal advice to Dendinger regarding probable cause.[176] Galloway, in his deposition, stated that he had already determined

---

[172] Rec. Doc. 104-1 at 17.

[173] Rec. Doc. 109 at 17 (citing *Hope v. City of Shreveport*, 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139).

[174] *Id.*

[175] *Craig v. Carter*, 30,625 (La. App. 2 Cir. 9/23/98); 718 So. 2d 1068, 1071.

[176] Rec. Doc. 104-1 at 11–12.

that he had probable cause to arrest Dendinger prior to his conversation with Wall.[177] However, Dendinger points to Galloway's affidavit in which he states that he had additional conversations with Wall regarding the legal issues in this matter and that he consulted Wall "because he was aware that she was a prosecutor with the 22nd Judicial District Court and he therefore trusted her judgment and advice on legal issues."[178] The very next sentence of Galloway's affidavit states that "As a result of the above described facts and activities, Affiant was convinced that probable cause existed to arrest Mr. Dendinger."[179] Therefore, there is a genuine issue of material fact regarding whether Wall advised Galloway regarding probable cause prior to Dendinger's arrest.

In order to have probable cause, Wall must have "had an honest and reasonable belief in the guilt of the plaintiff at the time the charges were pressed."[180] In Wall's statement, she asserts that after the trial finished, she saw a man who had been in the courtroom all day approach Cassard.[181] She asserted that she saw this man walk up to Cassard, but because of where she was standing, she couldn't see what he did.[182] She stated that Cassard then walked inside, very upset, and told her that the man had hit him.[183] Dendinger asserts that this statement was false because Dendinger had never entered the Franklinton courthouse.[184] Furthermore, Dendinger contends that

---

[177] Rec. Doc. 104-8 at 3.

[178] Rec. Doc. 109-1 at 28 (citing Rec. Doc. 109-14 at 85).

[179] Rec. Doc. 109-14 at 85.

[180] *Craig*, 718 So. 2d at 1071.

[181] Rec. Doc. 109-2 at 245.

[182] *Id.*

[183] *Id.*

[184] Rec. Doc. 109-1 at 24 (citing Rec. Doc. 109-8 at 2).

Wall intentionally misled the Washington Parish Sheriff's Office because Wall intentionally referred to Cassard as "Officer Cassard" despite the fact that he was no longer employed by the Bogalusa Police Department.[185]

Dendinger has presented evidence that suggests that Wall was by or at the threshold of the courthouse entrance, rather than closer to the rear, as she states in her affidavit. Dendinger points to the voluntary witness statement of Pamela Legendre who stated that "Upon exiting the courthouse after the trial, I was right behind Chad Cassard, Joe Culpepper and other officers, Patrick Lyons, Julie [] Knight, Leigh Anne Wall, when a gentleman (not tall, stocky, pink shirt + cap) slapped a fat legal-sized envelope directly on Chad's sternum . . . ."[186] Dendinger also points to the video of the service of process incident, which he asserts shows that after receiving the envelope, Cassard "calmly turns around and hand[s] the envelope to someone Mr. Cassard identifies in the audio as 'Leigh Anne.'"[187] Dendinger also submits the deposition testimony of Bullen who, when asked if he spoke with Wall right after the incident occurred, answered "She was right there, saw – she should have saw what happened."[188] Dendinger has presented evidence that Wall gave the Mills family the middle finger while in Court[189] and has presented evidence from which a jury could infer that Wall yelled expletives at Dendinger as he walked down the stairs of the courthouse.[190] In light of the evidence discussed above, having reviewed the video,

---

[185] Rec. Doc. 109-1 at 26.

[186] Rec. Doc. 109-1 at 10 (citing Rec. Doc. 109-2 at 246).

[187] *Id.* (citing Rec. Doc. 113).

[188] Rec. Doc. 109-13 at 54.

[189] Rec. Doc. 109-10 at 2.

[190] *Id.* at 3.

and considering Dendinger's declaration that contradicts the witness statements asserting that Dendinger slapped the envelope onto Cassard's chest, the Court concludes that Dendinger has raised a genuine issue of material fact regarding whether Wall had probable cause to submit her witness statement or advise the Washington Parish Sheriff's Office regarding probable cause.

Moving Defendants also assert that Dendinger has not demonstrated that Wall acted with malice.[191] Dendinger asserts that malice is also presumed because charges were refused, but that in addition there is evidence of hatred, animosity, and ill will toward Dendinger by Wall.[192] The Supreme Court of Louisiana has stated that "[a]ny amount of hatred, animosity, or ill will toward the plaintiff . . . amounts to malice."[193] As discussed above, Dendinger has presented evidence that Wall gave the middle finger to members of the Mills' family while in trial, as well as evidence from which a jury could infer that Wall yelled expletives at Dendinger after he had served process upon Cassard. Furthermore, in his declaration, Dendinger asserts that when he was brought to the Washington Parish Jail, he was met by Culpepper, Bullen, and Wall.[194] He contends that Culpepper whistled the theme from the movie the "Good, Bad & The Ugly," and Wall nodded her head and laughed.[195] Therefore, the Court concludes that Dendinger has raised a genuine issue of material fact regarding whether Wall acted with malice in making her statement and advising the Washington Parish Sheriff's Office regarding probable cause.

---

[191] Rec. Doc. 104-1 at 17.

[192] Rec. Doc. 109 at 20–21.

[193] *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987).

[194] Rec. Doc. 109-8 at 8.

[195] *Id.*

Moving Defendants also argue that Dendinger cannot prove that they caused him harm.[196] In opposition, Dendinger cites a Louisiana Second Circuit Court of Appeal case, *Hope v. City of Shreveport*, where the court held that "[w]here the other elements of malicious prosecution are established, the element of damages is presumed."[197] Dendinger also asserts that he has provided documentation of payment he made to an attorney and appears to indicate that he has sought medical treatment as a result of this incident.[198] Dendinger has submitted evidence of damages by showing that, as a result of his prosecution, he had to hire an attorney to represent him in the criminal matter against him.[199] Accordingly, having determined that there is a genuine issue of material fact regarding the elements of probable cause, malice, and damages, the Court denies the motion for summary judgment on Dendinger's malicious prosecution claim against Wall.

### ii.        *Reed in His Official Capacity*

Dendinger also asserts that Reed, in his official capacity, is liable for malicious prosecution because Murray allegedly directed that Wall and Knight provide statements.[200] The parties do not separate their arguments regarding the malicious prosecution claim against Wall and the malicious prosecution claim against Reed in his official capacity. Although Dendinger points to several acts that he asserts support his malicious prosecution claim against the District Attorney's Office, including the filing of the Bill of Information, the submission of Wall's voluntary witness

---

[196] Rec. Doc. 102-1 at 8.

[197] Rec. Doc. 110 at 13 (citing 37,759 (La. App. 2 Cir. 12/17/03); 862 So. 2d 1139, 1146).

[198] *Id.* at 13–14.

[199] Rec. Doc. 109-17.

[200] Rec. Doc. 109 at 16.

statement, allegations that members of the District Attorney's Office pressured the Washington Parish Sheriff's Office, and allegations that Murray told Wall and Knight to provide witness statements, as discussed above, there is absolute immunity for the filing of the Bill of Information. Moreover, Dendinger does not specifically articulate how his evidence supports a malicious prosecution claim regarding the other actions taken by attorneys with the 22nd Judicial District Attorney's Office.

Dendinger also fails to address on what basis he asserts that Reed, in his official capacity, is responsible for the actions of the assistant district attorneys. The Fifth Circuit in *Burge v. Parish of St. Tammany* held that "Because the district attorney's position is closely analogous to that of a sheriff as a virtually autonomous local government official, we conclude that the Louisiana courts would be guided by the same principles and deem suits seeking to hold a district attorney vicariously liable for the torts of assistants or employees, and not for the district attorney's own negligence, to be in-capacity suits in which the district attorney could not be held personally liable."[201] Therefore, to the extent that Dendinger asserts that Reed, in his official capacity, is vicariously liable for the tort of malicious prosecution allegedly committed by Wall, having found that there is a genuine issue of material fact regarding the malicious prosecution claim against Wall, the Court denies the motion for summary judgment regarding the malicious prosecution against Reed in his official capacity.

---

[201] 187 F.3d 452, 470 (5th Cir. 1999).

### 3.       Abuse of Process

Last, Moving Defendants move for summary judgment on Dendinger's claim for abuse of process.[202] In order to prove an abuse of process claim, a plaintiff must prove: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding."[203] Moving Defendants assert that Wall was not involved in any substantive actions related to Dendinger and therefore could not have participated in any irregular process.[204] Moving Defendants also contend that Dendinger has not presented evidence regarding any ulterior purpose or irregular process related to the notice of his arraignment or the issuance of a no bond attachment order.[205] In opposition, Dendinger asserts that Moving Defendants' claim that Wall had no substantive involvement in the case is contradicted by the delay before the Bill of Information was filed and the notes in the file that indicate that the file was to be given to Wall for review.[206]

An abuse of process claim requires that a plaintiff show a "willful act in the use of the process not proper in the regular prosecution of the proceeding."[207] As discussed above, the filing of a Bill of Information is an act that the Court has held is protected by absolute immunity. In his opposition to the motion for summary judgment, the only other act that Dendinger appears to be

---

[202] Rec. Doc. 104-1 at 20.

[203] *Waguespack, Seago and Carmichael v. Lincoln*, 1999-2016 (La. App. 1 Cir. 9/22/00); 768 So. 2d 287, 290–91.

[204] Rec. Doc. 104-1 at 21.

[205] *Id.*

[206] Rec. Doc. 109 at 22.

[207] *Lincoln*, 768 So. 2d at 290–91.

basing his abuse of process claim upon is the issuance of a no bond attachment. Moving Defendants submit the affidavit of Wall in which she asserts that she had no involvement in the delivery of the Notice of Arraignment.[208] Dendinger contends that "a reasonable inference is that [the no bond attachment] was issued at the September hearing because of Wall (by, intentionally, not giving Dendinger notice at his home address, thereby abusing process)."[209] Dendinger presents evidence that his case was likely assigned to Wall "within a day or so after August 15, 2013."[210] Dendinger submits a "Privilege Log" which states that two weeks before Dendinger's first arraignment date, Wall was in communication with Houston Gascon, another assistant district attorney, regarding Dendinger's case.[211] Dendinger asks the Court to infer from the fact that the notice of arraignment was not sent to his home address, but was only sent to his bail bondsman's address, that Wall intentionally failed to give Dendinger notice.

Although Moving Defendants, in their reply, assert that the issuance of the no bond attachment was a judicial function, and that Wall did not appear in court to request the no bond attachment,[212] an abuse of process claim requires a "willful act," which in this case could be the intentional failure to serve notice. The Third Circuit Court of Appeal, in *Taylor v. State*, described the improper use of process as "a failure to comply with the proper procedures or rules set out by law for conducting official actions."[213]

---

[208] Rec. Doc. 104-5 at 6.

[209] Rec. Doc. 109 at 23.

[210] Rec. Doc. 109-7 at 80.

[211] Rec. Doc. 109-2 at 229.

[212] Rec. Doc. 124 at 5.

[213] 617 So. 2d 1198, 1205–06 (La. App. 3 Cir. 1993).

Given the evidence regarding malice and making all reasonable inferences in favor of Dendinger, as the Court must, the Court concludes that Dendinger has raised a genuine issue of material fact regarding the abuse of process claim. The evidence suggests that Wall was the assistant district attorney assigned to the case at the time that the Notice of Arraignment was allegedly sent to his bail bondsman. Accordingly, the Court denies the motion for summary judgment regarding the abuse of process claim against Wall. In addition, for the same reasons discussed above regarding vicarious liability of Reed in his official capacity, the Court denies the motion for summary judgment regarding the abuse of process claim against Reed in his official capacity.

## IV. Conclusion

Based on the foregoing, the Court concludes that Dendinger has failed to raise a genuine issue of material fact regarding any *Monell* claim against Moving Defendants. The Court concludes, however, that Dendinger has raised a genuine issue of material fact on his claims of malicious prosecution and abuse of process claims against Moving Defendants.

Accordingly,

     **IT IS HEREBY ORDERED** that the "Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(b) on Behalf of Leigh Anne Wall and Walter Reed, In His Official Capacity"[214] is **GRANTED IN PART AND DENIED IN PART**.

     **IT IS FURTHER ORDERED** that the motion for summary judgment is **GRANTED** regarding Dendinger's *Monell* claims.

     **IT IS FURTHER ORDERED** that the motion for summary judgment is **DENIED** regarding Dendinger's claims for malicious prosecution and abuse of process.

     **NEW ORLEANS, LOUISIANA**, this <u>24th</u> day of May, 2016.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[214] Rec. Doc. 104.